UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-11977-alg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


GENERAL GROWTH PROPERTIES INC.,


      Debtor.


- - - - - - - - - - - - - - - - - - - -x


        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        July 22, 2009

        11:06 AM


B E F O R E:

HON. ALLAN L. GROPPER

U.S. BANKRUPTCY JUDGE

1    HEARING re Motion of Debtors for entry of an order modifying

2    the reporting requirements of Rule 2015.3 of the Federal Rules

3    of Bankruptcy Procedures on the basis that the Debtors are in

4    substantial compliance with such requirements.

5

6    HEARING re Approval of success fee for AlixParnters LLP as

7    Restructuring Advisors to the Debtors.

8

9    HEARING re Application filed by the Official Committee of

10   Unsecured Creditors for an order authorizing the employment and

11   retention of FTI Consulting, Inc. as financial advisors to the

12   Committee nunc pro tunc to April 27, 2009.

13

14   HEARING re Motion by Debtors for an order enlarging the time

15   within which to file notices of removal of related proceedings.

16

17   HEARING re Motion by Debtors for an order extending the time to

18   assume or reject unexpired leases of nonresidential real

19   property.

20

21   HEARING re Motion by Impact to compel the Debtor to assume or

22   reject its contracts with Impact or, in the alternative,

23   granting relief from the automatic stay.

24

25   Transcribed by:  Penina Wolicki

```
 1
 2    A P P E A R A N C E S :
 3    WEIL, GOTSHAL & MANGES LLP
 4          Attorneys for Debtor
 5          767 Fifth Avenue
 6          New York, NY 10153
 7
 8    BY:   GARY T. HOLTZER, ESQ.
 9          ANDREA C. SAAVEDRA, ESQ.
10          BLAIRE CAHN, ESQ.
11
12    AKIN GUMP STRAUSS HAUER & FELD LLP
13          Attorneys for Official Committee of Unsecured Creditors
14          1333 New Hampshire Avenue, N.W.
15          Washington, DC 20036
16
17    BY:   JAMES SAVIN, ESQ.
18
19
20    AKIN GUMP STRAUSS HAUER & FELD LLP
21          Attorneys for Official Committee of Unsecured Creditors
22          One Bryant Park
23          New York, NY 10036
24
25    BY:   MICHAEL S. STAMER, ESQ.
```

UNITED STATES DEPARTMENT OF JUSTICE

  Office of the U.S. Trustee

  33 Whitehall Street

  21st Floor

  New York, NY 10004


BY: GREG ZIPES, ESQ.

  LINDA RIFFKIN, ESQ.



VENABLE LLP

  Attorneys for CW Capital Asset Management, et al.

  Rockefeller Center

  1270 Avenue of the Americas

  New York, NY 10020


BY: CAROLLYNN H.G. CALLARI, ESQ.


GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

  Attorneys for 230 W. Monroe Point LLC

  437 Madison Avenue

  New York, NY 10022


BY: DOUGLAS FURTH, ESQ.

1

2  BRYAN CAVE LLP

3       Attorneys for Property loan secured lenders

4       1290 Avenue of the Americas

5       New York, NY 10104

6

7  BY:   LAWRENCE P. GOTTESMAN, ESQ.

8

9

10  GENOVESE JOBLOVE & BATTISTA, P.A.

11       Attorneys for The Gap, Old Navy and Banana Republic

12       Bank of America Tower, International Place

13       100 Southeast Second Street

14       Miami, FL 33131

15

16  BY: MONIQUE HAYES, ESQ. (TELEPHONICALLY)

17

18

19  KILPATRICK STOCKTON LLP

20       Attorneys for ING Clarion

21       1100 Peachtree Street

22       Suite 2800

23       Atlanta, GA 30309

24

25  BY: MARK A. FINK, ESQ. (TELEPHONICALLY)

1

2    ZEICHNER ELLMAN & KRAUSE, LLP

3         Attorneys for The Helios Lenders

4         575 Lexington Avenue

5         New York, New York 10022

6

7    BY:   JANTRA VAN ROY, ESQ. (TELEPHONICALLY)

8

9    ALSO PRESENT:

10        GREGORY S. RUBIN, Oak Hill Advisors (TELEPHONICALLY)

11        JIM MESTERHAM, AlixPartners, LLC (TELEPHONICALLY)

12        LAURA J. EISELE, AlixPartners, LLC (TELEPHONICALLY)

13        EPHRAIM DIAMOND, DK Partners (TELEPHONICALLY)

14        MICHAEL CHIMITRIS, General Growth Properties

15        (TELEPHONICALLY)

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  Please be seated.  General Growth

3    Properties.  I gather the telephone lines are already open?

4    Sounds like it.  All right.  I'll take appearances from those

5    in the courtroom and then on the telephone.

6          MR. HOLTZER:  Thank you, Your Honor.  Gary Holtzer,

7    for General Growth.  With me today at counsel table, Andrea

8    Saavedra from our firm as well.  Also Blaire Cahn.

9          MR. STAMER:  Good morning, Your Honor, Michael Stamer

10   and James Savin from Akin Gump Strauss Hauer & Feld on behalf

11   of the official committee.

12         MR. GOTTESMAN:  Good morning, Your Honor.  I'm

13   Lawrence Gottesman, Bryan Cave, on behalf of certain property

14   loan secured lenders.

15         MS. CALLARI:  Good morning, Your Honor.  Carollyn

16   Callari with Venable, also on behalf of certain special service

17   loans.

18         MR. FURTH:  Your Honor, Douglas Furth of Golenbock

19   Eiseman Assor Bell & Peskoe, on behalf of 230 West Monroe Point

20   LLC.

21         MR. ZIPES:  Greg Zipes and Linda Riffkin from the U.S.

22   Trustee's Office.

23         THE COURT:  Anyone else appearing?  All right, on the

24   telephone.  Anyone on the phone?

25         MS. EISELE: Good morning, Your Honor.  Laura Eisele

1    from AlixPartners.

2         THE COURT:  Anyone else on the phone who wishes to

3    note an appearance?

4         MS. VAN ROY:  Good morning, Judge.  Jantra Van Roy for

5    the lenders serviced by Helios.

6         THE COURT:  Anyone else?  All right.  Where shall we

7    start today?

8         MR. HOLTZER:  Your Honor, for the record, Gary Holtzer

9    at Weil Gotshal.  I wanted to take the opportunity, first, to

10   apologize to the Court for any inconvenience, Your Honor, with

11   the time of the hearing.

12        THE COURT:  No, no.  No inconvenience.  I thought -- I

13   had been scheduling these hearings at 11 so that my calendar at

14   10, which is usually smaller cases, can be complete.  On the

15   other hand, some of the hearings have been running over quite

16   late, and I thought perhaps in the future we should start at

17   10.  But if you'd noticed them for 11, we'll leave it at 11,

18   and everyone will just have to eat a big breakfast when they

19   come.  Maybe, actually, running over till lunch will truncate

20   the proceedings.  But I wouldn't want to be accused of doing

21   that on purpose.  So perhaps after we get through this and

22   maybe the next hearing which is scheduled for 11, we should

23   start scheduling them for 10 and just move everything else in

24   the morning.  But you can work that out with chambers.

25        MR. HOLTZER:  Okay, Your Honor.  We'll do it.  Thank

1   you very much.  For today's hearing -- hope springs eternal for

2   future ones -- but for today's hearing, I believe that we have

3   resolved everything on the calendar.

4          THE COURT:  I gather that this is going to be a

5   quick --

6          MR. HOLTZER:  I hope so, Your Honor.

7          THE COURT:  -- hearing?

8          MR. HOLTZER:  So we had filed an amended agenda which

9   we'll further adjust on the record today with respect to the

10  very last item.  But starting with the agenda, we have

11  adjourned several matters to the hearing on the 28th.

12         THE COURT:  All right.  Why don't you just state

13  what's adjourned.  The motion of MOT for relief from the

14  automatic stay is adjourned to the --

15         MR. HOLTZER:  To the 28th, Your Honor.

16         THE COURT:  -- to the 28th?

17         MR. HOLTZER:  Yes.  That's item 1.  Item 2 is the

18  application to employ Ernst & Young.  We've moved that to the

19  28th, Your Honor.

20         THE COURT:  All right.

21         MR. HOLTZER:  Item 3 on the calendar is also adjourned

22  to the 28th, and that is the application to retain Miller

23  Buckfire.

24         THE COURT:  Well part of it.  The success fee?

25         MR. HOLTZER:  Yes, Your Honor.

1    THE COURT:  All right.

2    MR. HOLTZER:  Item 4 on the record is the application

3  by the creditors' committee to retain Houlihan and Lokey.  And

4  that has been adjourned to the 28th.

5    THE COURT:  All right.

6    MR. HOLTZER:  So those are the adjourned matters.

7  With respect to the next category of items, which is the

8  resolved or withdrawn matters, Your Honor, I would like to ask

9  Ms. Saavedra to address the Court on the Rule 2015.3 matter,

10  which we've had significant discussions with the U.S. Trustee

11  on.

12    THE COURT:  All right.

13    MS. SAAVEDRA:  Good morning, Your Honor.  Andrea

14  Saavedra, Weil Gotshal on behalf of General Growth Properties.

15  Your Honor, the debtors file a motion at the beginning -- early

16  on in the case with respect to substantial compliance with Rule

17  2015.3.  After filing the motion, a bridge order was entered

18  and we began discussions with the U.S. Trustee's Office

19  regarding how we should comply with the rule.

20    As Your Honor is aware, the rule was implemented in

21  December of 2008, and there's still not that much precedent or

22  really guidance with respect to how debtors should comply with

23  the rule, especially in a case this size.  Fortunately, we were

24  able to work out with the U.S. Trustee's Office, and at their

25  request we submitted a declaration by Thomas Nolan, the

1    president and COO of General Growth Properties, showing how our

2    SEC filings were in compliance with 2015.3.  We also went back

3    and tried to, to the extent that we were able to, provide

4    separate balance sheets and income statements with respect to

5    the JV nonconsolidated entities.

6         So there's no -- the response of the U.S. Trustee has

7    been resolved, and we just respectfully submit that you enter

8    an order on the motion.

9         THE COURT:  So what are you going to be doing in the

10   future?

11        MS. SAAVEDRA:  With our SEC filings, they will provide

12   the information on a consolidated basis --

13        THE COURT:  All right.

14        MS. SAAVEDRA:  -- with respect to the nondebtor

15   subsidiaries.  And also in our MORs you can also back out the

16   information in our MORs.  And you're able to get to a number,

17   also, for the nonconsolidated entities.  And presently, our --

18        THE COURT:  So you'll be providing the information on

19   a consolidated --

20        MS. SAAVEDRA:  Right.

21        THE COURT:  -- basis?

22        MS. SAAVEDRA:  Right.

23        THE COURT:  That's the same thing you do with respect

24   to your monthly operating reports.  I gather you file your

25   monthly operating reports for the filed entities on a

1    consolidated basis?

2              MS. SAAVEDRA:  That is correct, Your Honor.

3              THE COURT:  All right.

4              MS. SAAVEDRA:  But we also have in our MORs, a line

5    that provides for any unconsolidated entities, so that people

6    can look -- creditors can look at the form and get an idea as

7    to the value of the entities.

8              THE COURT:  All right.

9              MS. SAAVEDRA:  And we walked through with the U.S.

10   Trustee's Office, and we also, as Exhibit 3 to the response

11   provides, we also provided separate balance sheets and income

12   statements with respect to the JV entities, and we'll provide

13   that whenever the U.S. Trustee --

14             THE COURT:  All right.  Thank you.

15             MS. SAAVEDRA:  -- would like to see it.

16             THE COURT:  All right.  Anything, Mr. Zipes?

17             MR. ZIPES:  No.  Your Honor, Greg Zipes from the U.S.

18   Trustee's Office.  And we have worked with the debtors.  The

19   disclosure, as reflected in the response is sufficient for our

20   purposes, and we have no objection to the order as modified.

21             THE COURT:  It would seem to me, so as to perhaps save

22   some time in the next go around on this issue, that if a debtor

23   can file monthly operating reports on a consolidated basis,

24   which in a case like this makes very good sense, a debtor ought

25   to be able to provide the additional information required by

1  this rule, also on a consolidated basis.

2         I know the rule or the form speaks of separate entity-

3  by-entity information, and therefore I understand your

4  position.  On the other hand, if you look at Section 419 of

5  BAPCPA or BAP CEPA, there's nothing in it that indicates that

6  Congress required separate filings.  They just wanted the

7  parties in a case to know what other assets a debtor had, I

8  would think.  I think that's the purpose.  So it seems to me,

9  that this works, and I'm pleased that this was able to be

10 settled.  And I'm just hoping that perhaps now that the

11 objection's on a computer, doesn't mean it has to be used

12 again.  But we'll see.  Every case stands on its own.

13         MR. ZIPES:  We'll just leave it at having been

14 resolved in this case, Your Honor.

15         THE COURT:  Thank you.  We'll leave it at that.

16         MS. SAAVEDRA:  And the debtors do really appreciate

17 the help of the U.S. Trustee in giving us guidance on how to

18 comply.

19         THE COURT:  All right.  Thank you.

20         MS. SAAVEDRA:  With Your Honor's permission, I'd like

21 to just skip ahead over the AlixPartners, which is the

22 retention application that's next resolved.

23         THE COURT:  All right.

24         MS. SAAVEDRA:  And just go to straight to the

25 uncontested matter regarding the motion for extension of

1    removal period under 9027 of the Bankruptcy Rules.

2              THE COURT:  Okay.

3              MS. SAAVEDRA:  Your Honor.  No objections were filed

4    to --

5              THE COURT:  Did you give notice to the parties to the

6    proceedings for which you're seeking an enlargement of time?

7              MS. SAAVEDRA:  We gave notice to all the parties who

8    are listed as potential parties-in-interest with respect to

9    removal.  So that included --

10             THE COURT:  To the other parties to those actions?

11             MS. SAAVEDRA:  Right.  As we did with the ADR

12   procedures motion, we requested that this was also served on

13   the same parties, because those parties are part of this, in

14   part, and they're also part of the -- there's also other

15   parties that may --

16             THE COURT:  And refresh my recollection as to what

17   date you're seeking to extend time till?

18             MS. SAAVEDRA:  Until entry of a confirmation order,

19   Your Honor.

20             THE COURT:  Okay.  Well, I never extend time till

21   entry of a confirmation order, because I never know what that

22   date will be.  I suspect that nobody knows what that date will

23   be.  So why don't we say, for these purposes, 12/31/09.  And

24   then you can come back again on notice to the same parties and

25   get a further extension if you need it?  How's that?

1          MS. SAAVEDRA:  Very well, Your Honor.

2          THE COURT:  All right.

3          MS. SAAVEDRA:  We'll come back if we need to.

4          THE COURT:  I'll make that -- you don't have to revise

5     the order.  I can make that change in the order.  All right.

6          MS. SAAVEDRA:  All right.  If there are no further

7     questions, I defer to Mr. Holtzer.

8          THE COURT:  Thank you.

9          MS. SAAVEDRA:  Thank you.

10         MR. HOLTZER:  All right, Your Honor.  Moving backwards

11    just one item, we are on the AlixPartners retention with

12    respect to their success fee.  We have had discussions with

13    both the creditors' committee and the U.S. Trustee.  There is

14    no objection to the entry of this order.  And as Your Honor I

15    think is aware, Your Honor will have the flexibility at the end

16    of the case to review this matter.  It is not a 328 matter.

17    And the matter will be reviewed by the Court, ultimately, to

18    determine whether or not the success fee is appropriate under

19    the circumstances.

20         THE COURT:  And the success fee, if I recall

21    correctly, is 2 million?

22         MR. HOLTZER:  It is 2 million, Your Honor, if there's

23    a plan confirmed or a sale within fifteen months of April 16.

24    And then there's an adjustment in the go-forward period, where

25    the fee would come down depending on when those events

1    occurred.  So for the period fifteen --

2         THE COURT:  That is in quite marked contrast to the

3    success fees that are being adjourned today.  I just --

4         MR. HOLTZER:  That's correct, Your Honor.

5         THE COURT:  -- it's pretty obvious.

6         MR. HOLTZER:  Yes.  It is in marked contrast in that

7    regard.  But you know, the engagement is structured

8    differently, because it's an hourly engagement as compared to

9    the financial advisors.  So it's simply a different model.

10         THE COURT:  Okay.  All right.  Anyone wish to be --

11    well, we're going to adjourn -- no.  Does anyone wish to be

12    heard on the issue of approving the retention on a final basis

13    under Section 327, where the success fee as well as the other

14    fees of AlixPartners would be subject to review for

15    reasonableness, or under the grounds set forth in 327 and not

16    constrained by the special provisions of 328(a)?  All right.

17    Then I'll enter that order.

18         MR. HOLTZER:  Okay, Your Honor.  Thank you very much.

19    I'll ask Mr. Stamer to handle the application for FTI, as it's

20    next on the list.

21         THE COURT:  All right.

22         MR. HOLTZER:  And then we can close out with the final

23    one, Your Honor.

24         MR. STAMER:  Good morning, again, Your Honor.  For the

25    record, Michael Stamer from Akin Gump Strauss Hauer & Feld on

behalf of the official committee.  Your Honor, this is the

committee's application to retain FTI as its financial advisor,

nunc pro tunc to April 27th.  Your Honor, the application and

supporting affidavit was filed and served on May 29th.  As Your

Honor knows, the committee is seeking to retain Houlihan Lokey

as its investment banker.  On June 9th, that application, Your

Honor, was filed and served.

Your Honor, after the filing of the two applications

the committee's representatives, FTI, Akin Gump, and Houlihan,

spent a considerable amount of time with the U.S. Trustee's

Office addressing and discussing concerns the U.S. Trustee's

Office had relating to the need to hire two financial

advisors --

THE COURT:  I would hope so.

MR. STAMER:  -- we did, Your Honor.  The need to

hire --

THE COURT:  Why -- do you want to explain to me why

you need two firms rather than one firm?

MR. STAMER:  Your Honor, I can.  Or at least I can

start the discussion, and we'll hopefully conclude the

discussion on the 28th when we talk about Houlihan Lokey.

THE COURT:  Then I should adjourn the FTI retention

until then?

MR. STAMER:  I don't think so, Your Honor.  Hopefully

I can satisfy Your Honor for purposes of this application, and

1  to the extent there are any open issues that need to be

2  resolved, we can resolve them in connection with the 28th.

3         Your Honor, Houlihan Lokey and FTI, as has been

4  evidenced by other proceedings, oftentimes work in tandem, as

5  do other more operational consultants and investment bankers in

6  other situations.  As Your Honor can appreciate, this is an

7  exceedingly complicated Chapter 11 case.  And the committee --

8  the official committee decided, based upon interviewing a

9  series of financial advisors, that the best way for them to

10 acquit their fiduciary duty to all unsecured creditors was to

11 hire FTI, based upon its expertise, and Houlihan Lokey, based

12 upon its expertise.

13        The original pleadings that were filed were less than

14 perfectly clear as to the delineation of responsibilities.  And

15 that principally was the discussion that ensued with the U.S.

16 Trustee after the two applications were filed.  Those

17 discussions resulted in, first, the supplemental affidavit

18 which was filed and served yesterday, which I believe your

19 chambers got sometime yesterday afternoon.

20        THE COURT:  Yes.

21        MR. STAMER:  Which contains an exhibits which details

22 exactly what FTI, what their mandate is going to be.  And to

23 the extent there is any inconsistency between the updated

24 pleadings and the original documents, the new pleadings will

25 govern.  There will be -- I don't believe it's been filed

1    yet -- there will be a supplemental affidavit which will be

2    filed delineating the items that Houlihan Lokey will

3    responsible for.

4         As Your Honor -- I think you can see from the

5    supplemental affidavit, the discussions we had with the Trustee

6    were on a number of different issues.  One was the need to hire

7    two financial advisors; two, the possibility of duplication of

8    effort; and three, just some additional disclosures that the

9    U.S. Trustee had asked for.  We spent a number of conference

10   calls, we spent a significant amount of time, working with the

11   U.S. Trustee, working with the individual financial advisors

12   for the committee.  And the product was, again, in the first

13   instance, the supplemental affidavit of Steve Simms (ph.) and

14   ultimately there will be one when we're done with the

15   disclosure issues, to the extent we still have them with the

16   U.S. Trustee's Office, there will be another one from Houlihan

17   Lokey.

18        Your Honor, the committee understands the need to

19   conserve resources and avoid duplication of effort.  The

20   expertise and experience that each of these financial advisors

21   bring, will be of critical importance to the committee, and its

22   ability to represent the constituency that they are required to

23   represent.  Not that this is the be-all and end-all reason or

24   justification for the two financial advisor approach, but Your

25   Honor, as you have seen, the company has also hired two

1    financial advisors, one more akin to an operational consultant

2    with certain forensic abilities, and the other being Miller

3    Buckfire, who is their investment banker, their conventional

4    investment banker.  That is not the reason the committee

5    decided to hire two financial advisors --

6             THE COURT:  I would hope not.  You're not running the

7    company.

8             MR. STAMER:  You're exactly right, Your Honor.  But

9    what goes on during this Chapter 11 case, everything from the

10   day-to-day operations to the bigger picture thinking to the

11   negotiation with the special purpose lenders at the project

12   level, is of critical importance to the unsecured creditors and

13   its representative of the committee.

14            Your Honor, there are a number of ways in which this

15   case could play out.  All indicators are pointing towards the

16   possibility of a significant equitization of the unsecured

17   debt.  No one has a crystal ball.  No one knows what's going to

18   happen as we move forward.  So it is paramount for the official

19   committee of unsecured creditors, representing the entire

20   unsecured creditor body, and representing, in all likelihood,

21   the holders of the vast majority of the common stock when they

22   emerge, to understand and be involved in -- not micromanage,

23   Judge, but to understand and be involved in both the

24   operational sides of this business and any big thinking that

25   the company and its financial advisors are doing with respect

1    to the way to exit from bankruptcy.

2          Your Honor, again, you see it in a lot of cases, and

3    I'm not arguing that it's justified based upon "it's done in

4    other cases" --

5          THE COURT:  It certainly is not justified because it's

6    done in other cases.

7          MR. STAMER:  Of course, Your Honor.  I mean, it's

8    anecdotal, in this case, Your Honor, which is the most

9    important thing.  The committee feels very strongly that the

10   investment that the company is going to make in its financial

11   advisors, which again, from their perspective, is an investment

12   they're going to make out of their recoveries, is of critical

13   importance to --

14         THE COURT:  Well, no, I recognize that it's the

15   unsecured creditors' money, or it's the equity's money that's

16   involved.  And it seems to me, though, that I have an

17   obligation to do my best to avoid duplication.  Having two of

18   anything creates some duplication, but it may be minimal.  We

19   have two firms for the debtors in this case, not that that's

20   necessarily a good example of either good case administration

21   or a reason why the committee should have two advisors rather

22   than one.

23         I would not want a committee to take the view that

24   this should be done routinely.  I am sure that someone, maybe

25   you, will stand -- maybe you won't do it, but someone will

1    stand before me someday and tell me, well, it was done in the

2    GGP case, Judge. You approved it. And that will become an

3    example, just like, I gather, Lehman and the other examples

4    that you give me. Now, every case stands on its own.

5         There is no objection. I gather the U.S. Trustee has

6    been satisfied. I'm not going to stand in the way. But I am

7    going to review some of the fee applications at the end of the

8    case. And as you say, it's the committee's money. It's the

9    unsecured creditors' money, for the most part.

10        Now, let me add to that, that although I think I have

11   an appropriate obligation to prevent duplication, since we have

12   somewhat separated the hiring of Houlihan and the hiring of

13   FTI, I can't sign an order approving the retention of FTI. As

14   some may know from the situation which has come up in many

15   other cases, I can't sign an order granting FTI's compensation

16   requests. On the other hand, if the matter is uncontested, as

17   this is, I can give the order to one of the other judges, with

18   the request that it be approved on an uncontested basis. If

19   there should be a contest at some time on an FTI fee

20   application, then we'll deal with that at the time.

21        I've had FTI in many cases, and the matter has never

22   been a problem. Or, when there was one contested matter, it

23   was referred to another judge. The reason is, is that my

24   wife's son is employed by FTI. This does not constitute a

25   disqualification under the code of ethics or the statutes

1   relating to ethics, because he's an employee.  Although I

2   always disclose it, and it's actually disclosed in the FTI

3   affidavit, and I give anyone an opportunity to tell me whether

4   they think it creates an appearance of impropriety.  And I do

5   that again today.

6        However, the Bankruptcy Rules 6000 and something, I

7   forget which number, go further, and say that I can't grant

8   compensation or employ a firm that employs a relative.  So

9   that's the reason for these extra steps that need to be taken

10  with respect to FTI.  So unless anyone wishes to be heard?  Mr.

11  Zipes?

12       MR. ZIPES:  Yes.  Just very, very briefly, Your Honor.

13  Greg Zipes from the U.S. Trustee's Office.  My office did have

14  significant conversations with the committee with respect to

15  its financial advisors/investment bankers, one being FTI and

16  the other being Houlihan.  We have not yet resolved our issues

17  with Houlihan, but the issue that you addressed of duplication

18  was a concern of our office as well.  And as this Court is

19  aware, we have objected in the past on that basis.

20       Your Honor, the order was drafted with some additions

21  to the original one, one of which is that FTI had filed a

22  supplemental declaration.  Attached to that supplemental

23  declaration is an exhibit that lists the categories of work

24  that FTI would be doing.  There's an ordered paragraph that

25  requires them to keep project billing categories.  That makes

1    it a little bit easier to track what they're doing for the

2    purposes of reviewing at the end of the case.

3         One issue here that they were able to put into their

4    applications, Houlihan and FTI, was that they have different

5    areas of expertise, and they were willing to own up to the fact

6    that their expertise lies in different areas.  And that was an

7    issue that they brought to my office's attention in connection

8    with these dual retentions.  Houlihan's, I don't think their

9    supplemental has been filed.  We have seen a draft of their

10   declaration.  And the two do go in tandem.

11        THE COURT:  All right.  Thank you.  Anything further

12   from anyone?

13        MR. STAMER:  Your Honor --

14        THE COURT:  All right.

15        MR. STAMER:  -- the only thing I have is, we have a

16   proposed form of order that's a black-lined.  I believe it's

17   been presented to the company, and they still have -- I think

18   they want to look at it a little further.  If Your Honor would

19   like, I can approach -- I can walk Your Honor through the

20   changes, or we can wait until the company has signed off --

21        THE COURT:  Let the committee -- let the company

22   review it.  If there's any issue, obviously, I can hear from

23   you.  But let the company review it and then submit a black-

24   line copy.  Unless anyone here wishes to see the order, in

25   which case you should also -- Mr. Zipes, you want to see the

1  final order as well?

2           MR. ZIPES:  Yes, we'd like to see it as well.

3           MR. STAMER:  Your Honor, if I could address one thing

4  in the order, just for the record so that we're clear.  It's

5  something that's been added.  I think --

6           THE COURT:  Sure.  Anything that you think is

7  material, you definitely should put on the record.

8           MR. STAMER:  Your Honor, you'll see, there appears to

9  be a bunch of ink on the page, but it's not necessarily

10  material.  There's just one additional paragraph that has been

11  added, and it relates to the application of a prepetition

12  retainer that FTI had and the application of that retainer.

13           As set forth in the original affidavit of Mr. Simms,

14  they did a reconciliation before -- I think it was around

15  May -- sometime in mid-May.  And they thought they had sent

16  everything that was owed to the company, any excess retainer.

17  The company --

18           THE COURT:  They had done some work for the company?

19           MR. STAMER:  I'm sorry, Your Honor.  As set forth in

20  their application --

21           THE COURT:  They did work for a --

22           MR. STAMER:  For a creditor group, Your Honor.

23           THE COURT:  -- creditor?

24           MR. STAMER:  The agent -- they were retained by

25  counsel for the 2006 bank debt, unsecured creditors who now sit

1    on the committee.  They've been released from that engagement.

2    And again --

3              THE COURT:  That's all been disclosed.

4              MR. STAMER:  -- it's all been disclosed.

5              THE COURT:  Right.

6              MR. STAMER:  But they had an excess retainer, which

7    they returned.  There's an issue as to whether or not there is

8    still additional retainer that's left over.  And what we've

9    done with this order is, to the extent there is, that money

10   will be applied to their first bill.  Again, it will -- it's

11   not a question of sending money back and then the company

12   returning it back to them.

13             THE COURT:  The company paid this money.  Is that --

14             MR. STAMER:  Correct, Your Honor.

15             THE COURT:  I see.  The company paid it by agreement

16   with the creditors' --

17             MR. STAMER:  That's exactly right.

18             THE COURT:  -- with the creditors' committee?

19             MR. STAMER:  There's also --

20             THE COURT:  Informal committee?

21             MR. STAMER:  -- yes, Your Honor.

22             THE COURT:  All right.

23             MR. STAMER:  There's also a disclosure.  There's

24   something in the order where FTI, in order to qualify as being

25   disinterested, has waived any claims it may have under that

prepetition retainer. So they're not looking for additional

monies from the company. Again, they've been released, and

they're going to walk away from that. I just want to make

sure, to the extent there is a difference of opinion with

respect to the reconciliation of the overage of the retainer,

that that waiver doesn't impact those discussions. That's all.

It may be a little belt-and-suspenders to bring it up. I don't

think this is going to be an issue. I think it's going to be

an accounting. And to the extent there's extra money, it'll be

applied to FTI's first invoice.

THE COURT: All right.

MR. STAMER: Okay. Thank you, Your Honor.

THE COURT: All right. Then when I get the order,

I'll submit it to one of the other judges.

MR. STAMER: Thank you, Judge.

THE COURT: Anything else today?

MR. HOLTZER: Yes, Your Honor. There is one last

item. It is the request to extend under 365(d) the period from

90 days -- from 120 days to an additional 90 days. The current

deadline is August 14th. We're asking that it be extended to

November 12th. We had one objection to that request. That

objecting party is here. It is a property that is an office

building in Chicago. It happens to be a situation where, now,

I believe the office building, or our space in the office

building is vacant. And I suspect strongly the direction this

1   will head.  We agreed to carve that particular item out of this

2   order, and we will make a decision on that one during the

3   relevant period now, without extension.  Other than that, we

4   had no objection.  Counsel is here today on behalf of 230 West

5   Monroe LLC, the objector, and we promised that we would so

6   state on the record.

7        The parties, of course, reserve their rights.  And if,

8   for example, we decide to assume the particular lease in

9   question, and we need a little more time than August 14th,

10  because the next omnibus hearing is August 19th, we may be back

11  in front of you, Judge, asking for a bridge so that we don't

12  suffer a rejection.  I suspect it won't go that way, but we are

13  still concluding our business decisions.  So that's the record

14  we wanted to make on that one, Your Honor.  If that's

15  acceptable to counsel?

16       MR. FURTH:  Yes, Your Honor, that is the agreement.

17  And likewise rights would be reserved to object to even the

18  limited extension.

19       THE COURT:  Even the three-day extension.  You want to

20  come back, then you're going to have to come back and charge

21  your client for the emergency hearing.  Do you want to do that,

22  Mr. Furth?

23       MR. FURTH:  Your Honor, I will convey that sentiment

24  to my client.  But it sounds like it's highly hypothetical.

25       THE COURT:  I also -- well, perhaps I should tell the

1    parties, that if the debtors decide to reject, Mr. Furth, any

2    objection to their submitting an order before the 31st of July,

3    so we don't get into an argument as to stub rent for August?

4         MR. FURTH:  We will have no objection.  All my client

5    really wants is clarity.

6         THE COURT:  They just want -- they want to know?

7    Well, I think they will know, certainly by the 14th, and if the

8    debtors, no matter how large they are, don't want to have

9    another month of rent, perhaps they should decide before the

10   31st and submit an order.  You might give Mr. Furth a copy.

11   But I don't want to -- I'd just as soon avoid another stub rent

12   issue.

13        MR. HOLTZER:  We agree, Your Honor.

14        THE COURT:  Although you have it all on your word

15   processing machine.  You can just change the caption.

16        MR. HOLTZER:  Yes, Your Honor.  And we're well aware

17   of the end of the month, and would like to resolve this by

18   then, and we may negotiate a termination as compared to a

19   rejection in this case --

20        THE COURT:  That certainly would make sense.  And an

21   orderly turnover of the keys, and no issues relating to how

22   much you owe.  And that all sounds very positive.

23        MR. HOLTZER:  So, Your Honor, with that, we do have an

24   order for this one --

25        THE COURT:  All right.

1        MR. HOLTZER:  -- which includes the language that has

2    been reviewed by counsel --

3        THE COURT:  All right.

4        MR. HOLTZER:  -- excepting them from the strictures of

5    the order.  We can hand that -- actually, we've actually handed

6    that in to your chambers.

7        THE COURT:  All right.  Anything else today?

8        MR. HOLTZER:  No, Your Honor.

9        THE COURT:  I would like to see the parties in

10   chambers in preparation for the next hearing for just five

11   minutes.  And then I'll take Journal Register.  And you can

12   give you appearances for the reporter, if you haven't already

13   done so.

14       MR. HOLTZER:  Thank you, Your Honor.

15       (Proceedings concluded at 11:38 a.m.)

16

17

18

19

20

21

22

23

24

25

1

2                          I N D E X

3

4                          RULINGS

5                                Page      Line

6    Motion of Debtors for      13        15

7    entry of an order

8    modifying the reporting

9    requirements of Rule

10   2015.3 of the Federal

11   Rules of Bankruptcy

12   Procedures Granted

13   Motion by Debtors for an  15        5

14   order enlarging the time

15   within which to file

16   notices of removal of

17   related proceedings

18   granted as modified

19   Success fee for           16        17

20   AlixParnters LLP as

21   Restructuring Advisors

22   to the Debtors, Approved

23

24

25

1    RULINGS (cont'd)

2                                    Page      Line

3    Motion by Debtors for an    30        7

4    order extending the time

5    to assume or reject

6    unexpired leases of

7    nonresidential real

8    property granted

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a
true and accurate record of the proceedings.


_____

Penina Wolicki


Veritext LLC

200 Old Country Road

Suite 580

Mineola, NY 11501


Date:  July 23, 2009