WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Marcia L. Goldstein
Gary T. Holtzer
Adam P. Strochak
Stephen A. Youngman (*admitted pro hac vice*)
Sylvia A. Mayer (*admitted pro hac vice*)

Attorneys for Debtors and
Debtors in Possession

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
James H.M. Sprayregen, P.C.
Anup Sathy, P.C. (*admitted pro hac vice*)

Co-Attorneys for Certain Subsidiary
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| **In re** : | **Chapter 11 Case No.** |
| : | |
| **GENERAL GROWTH** : | **09–11977 (ALG)** |
| **PROPERTIES, INC., et al.,** : | |
| : | |
| **Debtors.** : | **(Jointly Administered)** |

-------------------------------------------------------------x

## SECOND SUPPLEMENTAL SUBMISSION AS TO PROPOSED TRANSACTION-BASED FEES AND AMENDED ENGAGEMENT LETTER OF MILLER BUCKFIRE & CO., LLC

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

South Street Seaport Limited Partnership, its ultimate parent, General Growth

Properties, Inc. ("**GGP**"), and their debtor affiliates, as debtors and debtors in possession

(collectively, "**General Growth**" or the "**Debtors**"),[1] submit this second supplemental

submission (the "**Second Supplement**") regarding the pending request for approval by the Court

---

[1]     A list of the Debtors, along with the last four digits of each Debtor's federal tax identification
number, is filed with the Court at Docket No. 593 and is also available for free online at
www.kccllc.net/GeneralGrowth.

pursuant to section 328(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), of the Completion Fee, the Initial DIP Financing Fee and the other Financing Fees (all as defined in the Amended Engagement Letter), to be payable to Miller Buckfire & Co., LLC ("**Miller Buckfire**") in connection with its work as investment banker and financial advisor to the Debtors, and the terms and conditions of the Amended Engagement Letter (as defined below), and respectfully represent as follows:

**I.**

**PRELIMINARY STATEMENT**

1. This Second Supplement contains an amended engagement letter dated August 11, 2009 (the "**Amended Engagement Letter**") reflecting the terms and conditions specified in the Debtors' Supplemental Submission as to Proposed Transaction-Based Fees of Miller Buckfire & Co., LLC. (the "**First Supplement**"). [Docket No. 1096] The Amended Engagement Letter is annexed hereto as **Exhibit "A"**. A blackline comparing the Amended Engagement Letter to that certain letter dated December 10, 2009 between Miller Buckfire and GGP (the "**Original Engagement Letter**") is annexed hereto as **Exhibit "B"**. The terms and conditions outlined in the First Supplement, and further detailed in the Amended Engagement Letter are the result of lengthy discussions between Miller Buckfire, the Debtors, and the Official Committee of Unsecured Creditors (the "**Committee**") regarding the proposed transaction-based fees and the circumstances under which they are payable, and reflect substantial changes to the terms of the Original Engagement Letter. A proposed order is annexed hereto as **Exhibit "C"**.

2. The Application (as defined below) is currently uncontested. General Trust Company indicated that it intends to withdraw the Objection (as defined below). As of this date

no other party in interest has filed any objection to the proposed terms and conditions of Miller Buckfire's retention.

## II.

## BACKGROUND

3.    On April 16, 2009, the Debtors filed the Application Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) and 2016 for Authorization to Employ and Retain Miller Buckfire & Co., LLC as Financial Advisor and Investment Banker for the Debtors *Nunc Pro Tunc* to the Commencement Date (the "**Application**").[2]    [Docket No. 30]. A copy of the Original Engagement Letter was submitted as Exhibit B to the Application.

4.    This Court entered an Order on May 26, 2009 [Docket No. 602] which approved the Debtors' retention of Miller Buckfire, but which deferred consideration of the proposed Completion Fee, Initial DIP Financing Fee, and other Financing Fees until July 22, 2009.    The Court entered an Amended Order on July 13, 2009 [Docket No. 981] that clarified certain terms, including objection rights of the Office of the United States Trustee.

5.    The Debtors served notice of the July 22 hearing, and of the amounts and terms of the proposed Completion Fee, Initial DIP Financing Fee and other Financing Fees, by a notice dated May 29, 2009 [Docket No. 646] (the "**Notice**").    The Notice set an objection deadline of July 16, 2009 and informed recipients that if the fees were approved they could not subsequently be challenged except upon a showing that the terms were improvident in light of developments that were not capable of being anticipated at the time the terms were approved.    *Id*. at 2.    The

---

[2]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Application.

Notice was sent to a list of creditors and parties in interest agreed upon by the parties after the May 26, 2009 hearing. [Docket No. 693].

6. On July 16, 2009 General Trust Company, a holder of equity interests, filed a limited objection to the proposed approval of Miller Buckfire's Completion Fee pursuant to section 328(a) of the Bankruptcy Code (the "**Objection**"). General Trust Company did not refer to the proposed Initial DIP Financing Fee or other Financing Fees in its objection. As noted above, General Trust Company has since indicated its intention to withdraw the Objection.

7. In the period leading up to the July 22, 2009 hearing (the "**July 22 Hearing**"), the Debtors, Miller Buckfire and the Official Committee of Unsecured Creditors engaged in lengthy discussions regarding the proposed transaction-based fees and the circumstances under which they are payable and agreed on a number of changes to the terms of the Original Engagement Letter. The July 22 Hearing was adjourned to July 28, 2009 (the "**July 28 Hearing**").

8. On July 27, 2009, the Debtors filed the First Supplement which outlined the agreed upon changes to the terms and conditions of the Original Engagement Letter. The July 28 Hearing was subsequently adjourned to August 13, 2009 (the "**August 13 Hearing**").

9. In preparation for the August 13 Hearing, the Debtors are filing this Second Supplement. As noted above, an Amended Engagement Letter which specifically details the revised terms and conditions outlined in the First Supplement is attached hereto as **Exhibit "A"**.

# III.

## AMENDED ENGAGEMENT
## LETTER TERMS AND CONDITIONS

10.     The terms and conditions in the Amended Engagement Letter, reflect those outlined in the Debtors' First Supplement.    For purposes of convenience, they are set forth again below:

(a)     **Modifications to Completion Fee and Monthly Fees.**    The Completion Fee will be reduced from $22.5 million to $19.5 million.    Additionally, fifty percent (50%) of the Initial DIP Financing Fee will credited against the Completion Fee thereby further reducing the Completion Fee to $17.5 million.    The Completion Fee is subject to additional future reduction in that fifty percent (50%) of all Financing Fees as well as fifty percent (50%) of Monthly Fees paid after January 1, 2010 will also be credited against the Completion Fee.    The Monthly Fees will be increased from $300,000 to $350,000 per month, commencing on August 1, 2009.

(b)     **Cap.**    The total amount of all fees actually paid to Miller Buckfire by the Debtors (but excluding expense reimbursements) will be capped at $33 million.    For the avoidance of doubt: the amounts of the various fees first will be calculated in accordance with the terms of the Engagement Letter (including the application of the credits specified in the Engagement Letter) as modified by subparagraphs (b) through (f), below; the cap will then limit the cumulative total amount of such fees that are actually paid to Miller Buckfire.

(c)     **Modification of "Tail" Provisions.**    The "tail" provisions of the Engagement Letter will not apply to any Financing that is consummated after the consummation of a plan of reorganization, except that Financing Fees shall be payable to

Miller Buckfire in respect of any Financing that is contemplated by a confirmed plan of reorganization and consummated in connection therewith, or that is consummated pursuant to a definitive agreement or any written commitment accepted by the Company on or prior to the effective date of the plan of reorganization.

(d)     **Exclusion of Certain Underwritten Offerings.**   Miller Buckfire will not receive a Financing Fee in respect of any registered public offering or 144A Financing that is underwritten by one or more parties, _provided_ that for the avoidance of doubt the foregoing exclusion shall not apply to any Financing that is an offering of rights to one or more persons to subscribe for debt or equity securities of one or more of the Debtors (a **"Rights Offering"**) and that includes a so-called "backstop" Financing commitment from a financing source to purchase all or a portion of the securities so offered that are not taken up in the Rights Offering, _provided further_, however, that such a Financing fee be calculated solely based upon the maximum amount of the applicable "backstop" commitment.

(e)     **Further DIP Financing Fee.**   To the extent that additional DIP Financing is required by the Debtors, Miller Buckfire will only receive a fee with respect to the incremental amount of liquidity provided by such Financing over and above the Debtors' current DIP Financing facility.

(f)     **Conversion of DIP Facility.**   Miller Buckfire will not receive any Financing Fee in connection with any conversion or roll-over of the existing DIP facility.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: August 12, 2009
      New York, New York

/s/ Gary T. Holtzer
Marcia L. Goldstein
Gary T. Holtzer
Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
    and

Stephen A. Youngman (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
Telephone:  (214) 746-7700
Facsimile:   (214)  746-7777
    and

Sylvia A. Mayer (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600f
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:   (713) 224-9511

Attorneys for Debtors
and Debtors in Possession
    and

James H.M. Sprayregen, P.C.
Anup Sathy, P.C. (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

Co-Attorneys for Certain Subsidiary
Debtors and Debtors in Possession
    and

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY   10022
Telephone: (212) 909-6000
Facsimile:   (212) 909-6836
Michael E. Wiles

Attorneys for Miller Buckfire & Co., LLC

# EXHIBIT A

**Amended Engagement Letter**

 

Miller Buckfire & Co., LLC
153 East 53rd Street, 22nd Floor
New York, New York 10022
www.millerbuckfire.com

December 10, 2008
As Amended and Restated
August 11, 2009

General Growth Properties, Inc.
110 N Wacker Drive
Chicago, IL 60606
Attention: Thomas H. Nolan Jr.
President and Chief Operating Officer

Dear Mr. Nolan:

This letter agreement confirms the terms under which General Growth Properties, Inc. (the "Company") has engaged Miller Buckfire & Co., LLC ("Miller Buckfire") as its financial advisor and investment banker with respect to a possible Transaction and/or Financing (each as defined below) and with respect to such other financial matters as to which the Company and Miller Buckfire may agree in writing during the term of this engagement. For purposes hereof, the term "Company" includes affiliates of the Company and any entity that the Company or its affiliates may form or invest in to consummate a Transaction and/or Financing, and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services for the Company hereunder, and upon consent of the Company, which consent shall not be unreasonably withheld, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates. This letter agreement amends and restates in its entirety the engagement letter, dated December 10, 2008, between the Company and Miller Buckfire.

1.      Kenneth Buckfire, whom will co-lead the assignment with Ronen Bojmel, will personally lead and manage this engagement on behalf of Miller Buckfire. In case Ken Buckfire becomes incapacitated for any reason, Ronen Bojmel or another Miller Buckfire partner will assume his role. Miller Buckfire, as financial advisor and investment banker to the Company, will perform the following financial advisory and investment banking services, in each case as requested by and at the direction of the Company:

        a.      General Financial Advisory and Investment Banking Services. Miller Buckfire will:

                i.      to the extent it deems necessary, appropriate and feasible, familiarize itself with the business, operations, properties, financial condition and prospects of the Company; and

                ii.     if the Company determines to undertake a Transaction and/or Financing advise and assist the Company in structuring and effecting the financial

aspects of such a transaction or transactions, subject to the terms and conditions of this agreement.

b. <u>Restructuring and Sale Services</u>. If the Company pursues a Transaction, Miller Buckfire will, to the extent requested by the Company:

    i.    review and analyze the Company's business plans and financial projections prepared by the Company, including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

    ii.    assist in the determination of a capital structure for the Company;

    iii.    assist in the determination of a range of values for the Company on a going concern basis;

    iv.    attending meetings of the Company's Board of Directors and its committees;

    v.    provide financial advice and assistance to the Company in connection with a Sale and/or in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "<u>Plan</u>"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et.</u> <u>seq.</u> (the "<u>Bankruptcy Code</u>");

    vi.    provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

    vii.    assist the Company and/or participate in negotiations with entities or groups affected by the Plan;

    viii.    in connection with a Sale, identify potential acquirors and, at the Company's request, contact such potential acquirors;

    ix.    assist the Company and/or participate in negotiations with potential acquirors; and

    x.    participate in hearings before the bankruptcy court with respect to the matters upon which Miller Buckfire has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

For purposes of this agreement, (i) the term "<u>Transaction</u>" shall mean a Restructuring, a Sale or any combination thereof; (ii) the term "<u>Restructuring</u>" shall mean any material recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or other indebtedness, obligations or liabilities (including preferred stock, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to a

repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations; and (iii) the term "Sale" shall mean the disposition to one or more third parties in one or a series of transactions of (x) all or substantially all of the equity securities of the Company by the security holders of the Company or (y) all or substantially all of the assets (including the assignment of any executory contracts) or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction..

    c.    <u>Financing Services</u>. If the Company pursues a Financing, Miller Buckfire will:

        i.      provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

        ii.      if Miller Buckfire and the Company deem it advisable, assist the Company in developing and preparing a memorandum (with any amendments or supplements thereto, the "<u>Financing Offering Memorandum</u>") to be used in soliciting potential Investors, it being agreed that (A) the Financing Offering Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Financing Offering Memorandum, and (C) other than as contemplated by this subparagraph (c)(ii), the Financing Offering Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent;

        iii.      if requested by the Company, assist the Company and/or participate in negotiations with potential Investors; and

        iv.      if the Company pursues a Rights Offering (as defined below) which requires a so-called "backstop" Financing commitment from a financing source to purchase all or a portion of the securities so offered that are not taken up in the Rights Offering, then Miller Buckfire will assist the Company in arranging the "backstop" Financing Commitment.

For purposes of this agreement, the term "<u>Financing</u>" shall mean (i) a private issuance, sale or placement of the equity, equity-linked or debt securities (including any 144A offering), instruments or obligations of the Company with one or more lenders and/or investors except to the extent issued to existing security holders of the Company in exchange for their existing securities, or (ii) any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code or (iii) a rights offering (each such lender or investor, an "<u>Investor</u>"), provided, however, that a rollover, extension or refinancing of indebtedness at any of the Company's project level direct or indirect subsidiaries shall not constitute a Financing for purposes of this agreement.

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Miller Buckfire to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

In rendering its services to the Company hereunder, Miller Buckfire is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring, Financing, and/or Sale or other transaction, although the Company will be entitled to rely upon Miller Buckfire's advice. The Company agrees that Miller Buckfire shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

In order to coordinate effectively the Company's and Miller Buckfire's activities to effect a Restructuring, Financing or Sale, the Company will promptly inform Miller Buckfire of any discussions, negotiations or inquiries regarding a possible Restructuring, Financing or Sale (including any such discussions, negotiations or inquiries that have occurred in the six month period prior to the date of this agreement).

The Company shall make available to Miller Buckfire all reasonable and relevant information concerning the business, assets, operations, financial condition and prospects of the Company that Miller Buckfire reasonably requests in connection with the services to be performed for the Company hereunder and shall provide Miller Buckfire with reasonable access to the Company's officers, directors, employees, independent accountants and other advisors and agents as Miller Buckfire shall deem appropriate. The Company represents that all information regarding the Company furnished by it or on its behalf to Miller Buckfire (including information contained in any Financing Offering Memorandum and/or Sale Memorandum) will be accurate and complete in all material respects. The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, Miller Buckfire will be using and relying on publicly available information and on data, material and other information furnished to Miller Buckfire by the Company and other parties. It is understood that in performing under this engagement Miller Buckfire may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished.

Miller Buckfire acknowledges and agrees that this engagement does not obligate the Company to consummate any Transaction.

2.  Miller Buckfire's compensation for services rendered under this agreement will consist of the following cash fees:

    a.  A retainer of $1,250,000, which was due and paid upon the execution of the letter agreement dated December 10, 2008 (the "Retainer"). The balance of the Retainer (to

the extent not already applied against other fees) shall be credited upon consummation of a Transaction against the Completion Fee or Financing Fee(s) (as defined below). The Retainer will be applied by Miller Buckfire against the financial advisory fees payable pursuant to subparagraphs 2(b) and 2(c) and any other fees or expenses hereunder due and payable after such filing until exhausted.

b.   A financial advisory fee of $200,000, which was due and paid upon the execution of the letter agreement date December 10, 2008.

c.   A monthly financial advisory fee of $300,000, beginning on January 1, 2009 and due thereafter on the 1st day of each month for the period ending July 31, 2009. Such payments have been made by the Company for the months of January 2009 through May 2009 as of the execution date of this letter agreement.

d.   A monthly financial advisory fee of $350,000, which shall be due and paid by the Company beginning on August 1, 2009 and thereafter on the 1st day of each month during the term of this engagement. Fifty percent of the aggregate monthly advisory fees paid to Miller Buckfire following January 1, 2010 shall be credited against any Completion Fee.

e.   If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Transaction is consummated or (y)(1) a definitive agreement or Plan to effect a Transaction is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Transaction is consummated, Miller Buckfire shall be entitled to receive a completion fee (a "Completion Fee"), contingent upon the consummation of a Transaction and payable at the closing thereof, equal to $19,500,000.

f.   Miller Buckfire shall be entitled to receive a Financing Fee of 1% of the aggregate amount of the $400,000,000 commitment for a debtor-in-possession Financing (the "Initial DIP Financing"), which fee shall be due and payable upon closing of the Initial DIP Financing. To the extent that additional debtor-in-possession Financing is required by the Company, Miller Buckfire will only receive a Financing Fee with respect to the incremental amount of liquidity provided by such Financing over and above the Company's Initial DIP Financing facility. Miller Buckfire will not receive any Financing Fee pursuant to subparagraph 2(g) in connection with any conversion or roll-over of the Initial DIP Financing facility.

g.   If at any time during the Fee Period, the Company (x) consummates any Financing (other than the Initial DIP Financing) or (y)(1) the Company receives and accepts written commitments for one or more Financings (other than the Initial DIP Financing) (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Financing (other than the Initial DIP

Financing) is consummated, the Company will pay to Miller Buckfire the following (either as underwriting discounts, placement fees or other compensation) ("Financing Fees"):

i.   1% of the gross proceeds of any indebtedness issued that is secured by a first lien;

ii.  3.0% of the gross proceeds of any indebtedness issued that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated;

iii. 5.0% of the gross proceeds of any equity or equity-linked securities or obligations issued.

Notwithstanding anything to the contrary contained herein, no fee shall be payable pursuant to this subparagraph 2(g) for a Financing that involves an individual or portfolio based rollover, extension, modification or refinancing of indebtedness at any of the Company's project level direct or indirect subsidiaries.

Notwithstanding anything to the contrary contained in this agreement, Miller Buckfire will not receive a Financing Fee in respect of any registered public offering or 144A Financing that is underwritten by one or more parties, provided that for the avoidance of doubt the foregoing exclusion shall not apply to any Financing that is an offering of rights to one or more persons to subscribe for debt or equity securities of the Company or one or more of its subsidiaries (a "Rights Offering") and that includes a so-called "backstop" Financing commitment from a financing source to purchase all or a portion of the securities so offered that are not taken up in the Rights Offering, provided further, however, that such a Financing Fee be calculated based solely upon the maximum amount of the applicable "backstop" commitment.

Fifty percent (50%) of all Financing Fees paid pursuant to subparagraphs 2(f) and 2(g) shall be credited against the Completion Fee.

For purposes of this subparagraph 2(g), it is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, the aggregate proceeds to be raised in all stages of such Financing shall be deemed to have been received, and Miller Buckfire shall be entitled to the applicable compensation hereunder calculated based on such aggregate proceeds, upon the closing date of the first stage thereof.

h.   Notwithstanding anything to the contrary in this agreement, the total amount of all fees actually paid to Miller Buckfire by the Company (but excluding expense reimbursements) since the commencement of the engagement on December 10, 2008 shall not exceed $33,000,000. For the avoidance of doubt: the amounts of the various fees first will be calculated in accordance with the terms of this letter agreement (including the application of the credits specified herein) and then the aggregate limitation in this paragraph 2(h) shall limit the cumulative total amount of such fees that are actually paid to Miller Buckfire.

i.  Notwithstanding anything to the contrary in this agreement, no Financing Fees shall be payable in respect of any Financing that is consummated after the consummation of a plan of reorganization, except that Financing Fees shall be payable to Miller Buckfire in respect of any Financing that is contemplated by a confirmed plan of reorganization and consummated in connection therewith, or that is consummated pursuant to a definitive agreement or any written commitment accepted by the Company on or prior to the effective date of the plan of reorganization.

Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards. In addition, the Company and Miller Buckfire acknowledge and agree that more than one fee may be payable to Miller Buckfire under subparagraphs 2(e), 2(f) and/or 2(g) hereof in connection with any single transaction or a series of transactions, and in each case, each such fee shall be paid to Miller Buckfire.

3.  In addition to any fees payable by the Company to Miller Buckfire hereunder, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse Miller Buckfire on a monthly basis for its travel and other reasonable out-of-pocket expenses incurred in connection with, or arising out of Miller Buckfire's activities under or contemplated by this engagement or in the enforcement of Miller Buckfire's rights hereunder (including all fees, disbursements and other charges of counsel to be retained by Miller Buckfire, and of other consultants and advisors retained by Miller Buckfire with the Company's consent). The Company shall also reimburse Miller Buckfire, at such times as Miller Buckfire shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, this engagement. Such reimbursements shall be made promptly upon submission by Miller Buckfire of statements for such expenses.

4.  The Company agrees to indemnify Miller Buckfire and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement. Such Indemnification Provisions are an integral part of this agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Miller Buckfire's engagement hereunder.

5. The Company agrees that none of Miller Buckfire, its affiliates or their respective directors, officers, members, managers, agents, employees and controlling persons, or any of their respective successors or assigns ("Covered Persons") shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with this engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Covered Person; provided, however, that in no event shall the Covered Persons' aggregate liability to the Company or any person asserting claims on behalf of the Company or in the Company's right exceed the fees Miller Buckfire actually receives from the Company pursuant to its engagement hereunder, unless there is a final judicial determination of willful misconduct specified in this sentence.

6. This agreement and Miller Buckfire's engagement hereunder may be terminated by either the Company or Miller Buckfire at any time, upon prior written notice thereof to the other party; provided, however, that (a) termination of Miller Buckfire's engagement hereunder shall not affect the Company's continuing obligation to indemnify Miller Buckfire and certain related persons as provided for in this agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (b) notwithstanding any such termination by the Company, Miller Buckfire shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof, and (c) any termination of Miller Buckfire's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof.

7. Miller Buckfire has been retained under this agreement as an independent contractor with no fiduciary or agency relationship to the Company or to any other party. The advice (oral or written) rendered by Miller Buckfire pursuant to this agreement is intended solely for the benefit and use of the Board of Directors of the Company in considering the matters to which this agreement relates, and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Miller Buckfire be made by the Company, without the prior written consent of Miller Buckfire.

8. The Company agrees that following consummation of a Transaction or Financing Miller Buckfire shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder; provided that Miller Buckfire will submit a copy of any such advertisement to the Company for its approval, which approval shall not be unreasonably withheld or delayed.

9. This agreement shall be deemed to be made in New York. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Company hereby irrevocably consents to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit,

action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; provided that in the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, during any such case, any such claims may also be heard and determined in the Bankruptcy Court (as defined below). The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH MILLER BUCKFIRE'S ENGAGEMENT IS HEREBY WAIVED.

10. This agreement may be executed in counterparts, each of which together shall be considered a single document. This agreement shall be binding upon Miller Buckfire and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other than the indemnified persons referenced in the Indemnification Provisions contained herein and the Covered Persons referenced above. This agreement (including the Indemnification Provisions) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

11. The Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

12. The Company hereby acknowledges that affiliates of Miller Buckfire engage in the hedge fund and/or principal investment business, which affiliates are separated by ethical walls to prevent the improper sharing of client information. The Company hereby acknowledges and agrees that such affiliates may from time to time have a long or short position in, buy and sell or otherwise effect transactions for their own accounts or for the accounts of investment pools managed by them in the securities, loans or other obligations or instruments of the Company or those of other companies or entities so long as the personnel involved in performing such activities have not received access to the Company's confidential information from Miller Buckfire.

13. In the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall apply promptly to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this agreement and Miller Buckfire's retention by the Company under the terms of this agreement, subject only to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall supply Miller Buckfire and its counsel with a draft of such application and the proposed order authorizing Miller Buckfire's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Miller Buckfire and its counsel to review and comment thereon. Miller Buckfire shall have no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Miller Buckfire's retention under the terms of this agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Miller Buckfire in all respects. Miller Buckfire acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph 12, payment of Miller Buckfire's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Miller Buckfire's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. In the event that the Company becomes a debtor under the Bankruptcy Code and Miller Buckfire's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Miller Buckfire hereunder as promptly as practicable in accordance with the terms hereof. In so agreeing to seek Miller Buckfire's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Miller Buckfire's experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its other capabilities will inure to the benefit of the Company, that the value to the Company of Miller Buckfire's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees payable to Miller Buckfire hereunder are reasonable regardless of the number of hours to be expended by Miller Buckfire's professionals in performance of the services to be provided hereunder. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Miller Buckfire in cash.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between Miller Buckfire and the Company.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _____

Name: Kenneth A. Buckfire
Title: Managing Director

By: _____

Name: Ronen Bojmel
Title: Managing Director

Accepted and Agreed to:

GENERAL GROWTH PROPERTIES, INC.

By: _____

Name: Thomas H. Nolan Jr.
Title: President and Chief Operating Officer

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between Miller Buckfire and the Company.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _Kenneth A. Buckfire_

Name: Kenneth A. Buckfire
Title: Managing Director

By: _Ronen Bojmel_

Name: Ronen Bojmel
Title: Managing Director

Accepted and Agreed to:

GENERAL GROWTH PROPERTIES, INC.

By: _____

    Name:  Thomas H. Nolan Jr.
    Title:  President and Chief Operating Officer


## INDEMNIFICATION PROVISIONS

In connection with the engagement of Miller Buckfire & Co., LLC ("Miller Buckfire") as financial advisor to General Growth Properties, Inc., the Company hereby agrees to indemnify and hold harmless Miller Buckfire and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's direction or express consent or (B) are otherwise related to or arise out of Miller Buckfire's activities under Miller Buckfire's engagement. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of the person seeking indemnification hereunder or settled without the consent of the Company (such consent not to be unreasonably withheld or delayed) prior to a determination as to the indemnified party's gross negligence or willful misconduct. For purposes of these indemnification provisions, the term the "Company" has the meaning set forth in the engagement letter, dated as of December 10, 2008, between Miller Buckfire and General Growth Properties, Inc., of which these indemnification provisions are an integral part.

After receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure so to notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any indemnified person otherwise than under these indemnification provisions. If the Company so elects or is requested by such indemnified person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Miller Buckfire and the payment of the fees and disbursements of such counsel. In the event, however, such indemnified person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an indemnified person and the Company, and such indemnified person reasonably concludes that there may be legal defenses available to it or other indemnified persons that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such indemnified person, in either case in a timely manner, then such indemnified person may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for all indemnified persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the indemnified person will have the right to participate in such litigation and to retain its own counsel at such indemnified person's own expense. The Company further agrees that it will not, without the prior written consent of Miller Buckfire, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each other indemnified person hereunder from all liability arising out of such

claim, action, suit or proceeding.

The Company agrees that if any indemnification sought by an indemnified person pursuant to these indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Miller Buckfire is the indemnified person), the Company and Miller Buckfire will contribute to the losses, claims, damages, liabilities and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, in connection with Miller Buckfire's engagement referred to above, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Company, on the one hand, and Miller Buckfire, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all indemnified persons, including Miller Buckfire, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Miller Buckfire from the Company pursuant to Miller Buckfire's engagement referred to above. It is hereby agreed that for purposes of this paragraph, the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, with respect to Miller Buckfire's engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Company or the Company's stockholders, claims holders or contract parties, as the case may be, pursuant to the transaction, whether or not consummated, for which Miller Buckfire is engaged to render financial advisory services, bears to (ii) the fee paid or proposed to be paid to Miller Buckfire in connection with such engagement. It is agreed that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

The Company further agrees that it will promptly reimburse Miller Buckfire and any other indemnified person hereunder for all reasonable expenses (including fees and disbursements of counsel) as they are incurred by Miller Buckfire or such other indemnified person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened action, claim, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is a party) and in enforcing these indemnification provisions.

The Company's indemnity, contribution, reimbursement and other obligations under these indemnification provisions shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns.

Solely for purposes of enforcing these indemnification provisions, the Company hereby consents to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these indemnification provisions is brought against Miller Buckfire or any other indemnified person.

These indemnification provisions shall apply to the above-mentioned engagement, activities relating to the engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Miller Buckfire's engagement.

# EXHIBIT B

**Blackline Engagement Letter**



December 10, 2008
As Amended and Restated
August 11, 2009

General Growth Properties, Inc.
110 N Wacker Drive
Chicago, IL 60606
Attention: ~~Adam Metz~~ Thomas H. Nolan Jr.
~~Interim~~President and Chief ~~Executive~~Operating Officer

Dear Mr. ~~Metz~~Nolan:

This letter agreement confirms the terms under which General Growth Properties, Inc. (the "Company") has engaged Miller Buckfire & Co., LLC ("Miller Buckfire") as its financial advisor and investment banker with respect to a possible Transaction and/or Financing (each as defined below) and with respect to such other financial matters as to which the Company and Miller Buckfire may agree in writing during the term of this engagement. For purposes hereof, the term "Company" includes affiliates of the Company and any entity that the Company or its affiliates may form or invest in to consummate a Transaction and/or Financing, and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services for the Company hereunder, and upon consent of the Company, which consent shall not be unreasonably withheld, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates. This letter agreement amends and restates in its entirety the engagement letter, dated December 10, 2008, between the Company and Miller Buckfire.

1.  Kenneth Buckfire, whom will co-lead the assignment with Ronen Bojmel, will personally lead and manage this engagement on behalf of Miller Buckfire. In case Ken Buckfire becomes incapacitated for any reason, Ronen Bojmel or another Miller Buckfire partner will assume his role. Miller Buckfire, as financial advisor and investment banker to the Company, will perform the following financial advisory and investment banking services, in each case as requested by and at the direction of the Company:

    a.  General Financial Advisory and Investment Banking Services. Miller Buckfire will:

        i.  to the extent it deems necessary, appropriate and feasible, familiarize itself with the business, operations, properties, financial condition and prospects of the Company; and

ii.    if the Company determines to undertake a Transaction and/or Financing advise and assist the Company in structuring and effecting the financial aspects of such a transaction or transactions, subject to the terms and conditions of this agreement.

b.    <u>Restructuring and Sale Services</u>.    If the Company pursues a Transaction, Miller Buckfire will, to the extent requested by the Company:

i.    review and analyze the Company's business plans and financial projections prepared by the Company, including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

ii.    ~~ii.~~ assist in the determination of a capital structure for the Company;

iii.    ~~iii.~~ assist in the determination of a range of values for the Company on a going concern basis;

iv.    ~~iv.~~ attending meetings of the Company's Board of Directors and its committees;

v.    provide financial advice and assistance to the Company in connection with a Sale and/or in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "<u>Plan</u>"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et.</u> <u>seq.</u> (the "<u>Bankruptcy Code</u>");

vi.    provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

vii.    assist the Company and/or participate in negotiations with entities or groups affected by the Plan;

viii.    in connection with a Sale, identify potential acquirors and, at the Company's request, contact such potential acquirors;

ix.    assist the Company and/or participate in negotiations with potential acquirors; and

x.    participate in hearings before the bankruptcy court with respect to the matters upon which Miller Buckfire has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

For purposes of this agreement, (i) the term "<u>Transaction</u>" shall mean a Restructuring, a Sale or any combination thereof; (ii) the term "<u>Restructuring</u>" shall mean any material recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or other

indebtedness, obligations or liabilities (including preferred stock, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations; and (iii) the term "Sale" shall mean the disposition to one or more third parties in one or a series of transactions of (x) all or substantially all of the equity securities of the Company by the security holders of the Company or (y) all or substantially all of the assets (including the assignment of any executory contracts) or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction..

c.  <u>Financing Services</u>.  If the Company pursues a Financing, Miller Buckfire will:

i.  provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

ii.  if Miller Buckfire and the Company deem it advisable, assist the Company in developing and preparing a memorandum (with any amendments or supplements thereto, the "<u>Financing Offering Memorandum</u>") to be used in soliciting potential Investors, it being agreed that (A) the Financing Offering Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Financing Offering Memorandum, and (C) other than as contemplated by this subparagraph (c)(ii), the Financing Offering Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent; and

iii.  if requested by the Company, assist the Company and/or participate in negotiations with potential Investors; and

iv.  if the Company pursues a Rights Offering (as defined below) which requires a so-called "backstop" Financing commitment from a financing source to purchase all or a portion of the securities so offered that are not taken up in the Rights Offering, then Miller Buckfire will assist the Company in arranging the "backstop" Financing Commitment.

For purposes of this agreement, the term "<u>Financing</u>" shall mean (i) a private issuance, sale or placement of the equity, equity-linked or debt securities (including any 144A offering), instruments or obligations of the Company with one or more lenders and/or investors except to the extent issued to existing security holders of the Company in exchange for their existing securities, or (ii) any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code or (iii) a rights offering (each such lender or investor, an "<u>Investor</u>"), provided, however, that a rollover, extension or refinancing of indebtedness at any of the Company's project level direct or indirect subsidiaries shall not constitute a Financing for purposes of this agreement.

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Miller Buckfire to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

In rendering its services to the Company hereunder, Miller Buckfire is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring, Financing, and/or Sale or other transaction, although the Company will be entitled to rely upon Miller Buckfire's advice. The Company agrees that Miller Buckfire shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

In order to coordinate effectively the Company's and Miller Buckfire's activities to effect a Restructuring, Financing or Sale, the Company will promptly inform Miller Buckfire of any discussions, negotiations or inquiries regarding a possible Restructuring, Financing or Sale (including any such discussions, negotiations or inquiries that have occurred in the six month period prior to the date of this agreement).

The Company shall make available to Miller Buckfire all reasonable and relevant information concerning the business, assets, operations, financial condition and prospects of the Company that Miller Buckfire reasonably requests in connection with the services to be performed for the Company hereunder and shall provide Miller Buckfire with reasonable access to the Company's officers, directors, employees, independent accountants and other advisors and agents as Miller Buckfire shall deem appropriate. The Company represents that all information regarding the Company furnished by it or on its behalf to Miller Buckfire (including information contained in any Financing Offering Memorandum and/or Sale Memorandum) will be accurate and complete in all material respects. The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, Miller Buckfire will be using and relying on publicly available information and on data, material and other information furnished to Miller Buckfire by the Company and other parties. It is understood that in performing under this engagement Miller Buckfire may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished.

Miller Buckfire acknowledges and agrees that this engagement does not obligate the Company to consummate any Transaction.

2. Miller Buckfire's compensation for services rendered under this agreement will consist of the following cash fees:

   a. A retainer of $1,250,000, which ~~shall be~~was due and paid upon ~~this~~the execution of the letter agreement dated December 10, 2008 (the "Retainer"). The balance of the Retainer (to the extent not already applied against other fees) shall be credited

upon consummation of a Transaction against the Completion Fee or Financing ~~fee(s) payable to Miller Buckfire pursuant to subparagraphs 2(e) or 2(f) below, provided that if the Company files a Chapter 11 case, then the~~Fee(s) (as defined below). The Retainer will be applied by Miller Buckfire against the financial advisory fees payable pursuant to subparagraphs 2(b) and 2(c) and any other fees or expenses hereunder due and payable after such filing until exhausted.

b. A financial advisory fee of $200,000, which ~~shall be~~was due and paid ~~by the Company~~ upon the execution of ~~this~~the letter agreement~~.~~ date December 10, 2008.

c. A monthly financial advisory fee of $300,000, beginning on January 1, 2009 and due thereafter on the 1st day of each month for the period ending July 31, 2009. Such payments have been made by the Company for the months of January 2009 through May 2009 as of the execution date of this letter agreement.

d. ~~c. A monthly financial advisory fee of $300,000,~~A monthly financial advisory fee of $350,000, which shall be due and paid by the Company beginning on ~~January~~August 1, 2009 and thereafter on the 1st day of each month during the term of this engagement. Fifty percent of the aggregate monthly advisory fees paid to Miller Buckfire following January 1, 2010 shall be credited against any Completion Fee.

e. ~~d.~~If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Transaction is consummated or (y)(1) a definitive agreement or Plan to effect a Transaction is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Transaction is consummated, Miller Buckfire shall be entitled to receive a completion fee (a "Completion Fee"), contingent upon the consummation of a Transaction and payable at the closing thereof, equal to $~~22,500,000.~~19,500,000.

f. ~~e. If at any time during the Fee Period, the Company obtains a~~Miller Buckfire shall be entitled to receive a Financing Fee of 1% of the aggregate amount of the $400,000,000 commitment for a debtor-in-possession Financing ~~at the commencement of a bankruptcy case (such Financing,~~ (the "Initial DIP Financing"), ~~Miller Buckfire shall be entitled to receive a Financing fee of 1% of the aggregate amount of such commitment,~~ which fee shall be due and payable upon closing of the Initial DIP Financing. To the extent that additional debtor-in-possession Financing is required by the Company, Miller Buckfire will only receive a Financing Fee with respect to the incremental amount of liquidity provided by such Financing over and above the Company's Initial DIP Financing facility. Miller Buckfire will not receive any Financing Fee pursuant to subparagraph 2(g) in connection with any conversion or roll-over of the Initial DIP Financing facility.

g. ~~f.~~If at any time during the Fee Period, the Company (x) consummates any Financing (other than the Initial DIP Financing) or (y)(1) the Company receives and accepts written commitments for one or more Financings (other than the Initial DIP Financing) (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive

documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Financing (other than the Initial DIP Financing) is consummated, the Company will pay to Miller Buckfire the following (either as underwriting discounts, placement fees or other compensation) ("Financing Fees"):

ii.     1% of the gross proceeds of any indebtedness issued that is secured by a first lien;

iii.     3.0% of the gross proceeds of any indebtedness issued that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated;

iv.     5.0% of the gross proceeds of any equity or equity-linked securities or obligations issued.

Notwithstanding anything to the contrary contained herein, no fee shall be payable pursuant to this subparagraph 2(fg) for a Financing that involves an individual or portfolio based rollover, extension, modification or refinancing of indebtedness at any of the Company's project level direct or indirect subsidiaries.

Notwithstanding anything to the contrary contained in this agreement, Miller Buckfire will not receive a Financing Fee in respect of any registered public offering or 144A Financing that is underwritten by one or more parties, provided that for the avoidance of doubt the foregoing exclusion shall not apply to any Financing that is an offering of rights to one or more persons to subscribe for debt or equity securities of the Company or one or more of its subsidiaries (a "Rights Offering") and that includes a so-called "backstop" Financing commitment from a financing source to purchase all or a portion of the securities so offered that are not taken up in the Rights Offering, provided further, however, that such a Financing Fee be calculated based solely upon the maximum amount of the applicable "backstop" commitment.

Fifty percent (50%) of all Financing feesFees paid pursuant to this subparagraphs 2(ef) and 2(fg) shall be credited against the Completion Fee.

For purposes of this subparagraph 2(fg), it is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, the aggregate proceeds to be raised in all stages of such Financing shall be deemed to have been received, and Miller Buckfire shall be entitled to the applicable compensation hereunder calculated based on such aggregate proceeds, upon the closing date of the first stage thereof.

h.     Notwithstanding anything to the contrary in this agreement, the total amount of all fees actually paid to Miller Buckfire by the Company (but excluding expense reimbursements) since the commencement of the engagement on December 10, 2008 shall not exceed $33,000,000. For the avoidance of doubt: the amounts of the various fees first will be calculated in accordance with the terms of this letter agreement (including the application of the credits specified herein) and then the aggregate

limitation in this paragraph 2(h) shall limit the cumulative total amount of such fees that are actually paid to Miller Buckfire.

i. Notwithstanding anything to the contrary in this agreement, no Financing Fees shall be payable in respect of any Financing that is consummated after the consummation of a plan of reorganization, except that Financing Fees shall be payable to Miller Buckfire in respect of any Financing that is contemplated by a confirmed plan of reorganization and consummated in connection therewith, or that is consummated pursuant to a definitive agreement or any written commitment accepted by the Company on or prior to the effective date of the plan of reorganization.

Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards. In addition, the Company and Miller Buckfire acknowledge and agree that more than one fee may be payable to Miller Buckfire under subparagraphs 2(dc), 2(ef) and/or 2(fg) hereof in connection with any single transaction or a series of transactions, and in each case, each such fee shall be paid to Miller Buckfire.

3. In addition to any fees payable by the Company to Miller Buckfire hereunder, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse Miller Buckfire on a monthly basis for its travel and other reasonable out-of-pocket expenses incurred in connection with, or arising out of Miller Buckfire's activities under or contemplated by this engagement or in the enforcement of Miller Buckfire's rights hereunder (including all fees, disbursements and other charges of counsel to be retained by Miller Buckfire, and of other consultants and advisors retained by Miller Buckfire with the Company's consent). The Company shall also reimburse Miller Buckfire, at such times as Miller Buckfire shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, this engagement. Such reimbursements shall be made promptly upon submission by Miller Buckfire of statements for such expenses.

4. The Company agrees to indemnify Miller Buckfire and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement. Such Indemnification Provisions are an integral part of this agreement, and the

terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Miller Buckfire's engagement hereunder.

5. The Company agrees that none of Miller Buckfire, its affiliates or their respective directors, officers, members, managers, agents, employees and controlling persons, or any of their respective successors or assigns ("Covered Persons") shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with this engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Covered Person; provided, however, that in no event shall the Covered Persons' aggregate liability to the Company or any person asserting claims on behalf of the Company or in the Company's right exceed the fees Miller Buckfire actually receives from the Company pursuant to its engagement hereunder, unless there is a final judicial determination of willful misconduct specified in this sentence.

6. This agreement and Miller Buckfire's engagement hereunder may be terminated by either the Company or Miller Buckfire at any time, upon prior written notice thereof to the other party; provided, however, that (a) termination of Miller Buckfire's engagement hereunder shall not affect the Company's continuing obligation to indemnify Miller Buckfire and certain related persons as provided for in this agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (b) notwithstanding any such termination by the Company, Miller Buckfire shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof, and (c) any termination of Miller Buckfire's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof.

7. Miller Buckfire has been retained under this agreement as an independent contractor with no fiduciary or agency relationship to the Company or to any other party. The advice (oral or written) rendered by Miller Buckfire pursuant to this agreement is intended solely for the benefit and use of the Board of Directors of the Company in considering the matters to which this agreement relates, and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Miller Buckfire be made by the Company, without the prior written consent of Miller Buckfire.

8. The Company agrees that following consummation of a Transaction or Financing Miller Buckfire shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder; provided that Miller Buckfire will submit a copy of any such advertisement to the Company for its approval, which approval shall not be unreasonably withheld or delayed.

9. This agreement shall be deemed to be made in New York. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Company hereby irrevocably consents to personal jurisdiction in

the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; provided that in the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, during any such case, any such claims may also be heard and determined in the Bankruptcy Court (as defined below). The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH MILLER BUCKFIRE'S ENGAGEMENT IS HEREBY WAIVED.

10. This agreement may be executed in counterparts, each of which together shall be considered a single document. This agreement shall be binding upon Miller Buckfire and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other than the indemnified persons referenced in the Indemnification Provisions contained herein and the Covered Persons referenced above. This agreement (including the Indemnification Provisions) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

11. The Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

12. The Company hereby acknowledges that affiliates of Miller Buckfire engage in the hedge fund and/or principal investment business, which affiliates are separated by ethical walls to prevent the improper sharing of client information. The Company hereby acknowledges and agrees that such affiliates may from time to time have a long or short position in, buy and sell or otherwise effect transactions for their own accounts or for the accounts of investment pools managed by them in the securities, loans or other obligations or instruments of the Company or those of other companies or entities so long as the personnel involved in performing such activities have not received access to the Company's confidential information from Miller Buckfire.

13.  In the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall apply promptly to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this agreement and Miller Buckfire's retention by the Company under the terms of this agreement, subject only to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use its best efforts to obtain Bankruptcy Court authorization thereof.  The Company shall supply Miller Buckfire and its counsel with a draft of such application and the proposed order authorizing Miller Buckfire's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Miller Buckfire and its counsel to review and comment thereon.  Miller Buckfire shall have no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Miller Buckfire's retention under the terms of this agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Miller Buckfire in all respects.  Miller Buckfire acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph 12, payment of Miller Buckfire's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Miller Buckfire's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. In the event that the Company becomes a debtor under the Bankruptcy Code and Miller Buckfire's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Miller Buckfire hereunder as promptly as practicable in accordance with the terms hereof.  <u>In so agreeing to seek Miller Buckfire's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Miller Buckfire's experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its other capabilities will inure to the benefit of the Company, that the value to the Company of Miller Buckfire's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees payable to Miller Buckfire hereunder are reasonable regardless of the number of hours to be expended by Miller Buckfire's professionals in performance of the services to be provided hereunder.</u>  Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Miller Buckfire in cash.

We are pleased to accept this engagement and look forward to working with the Company.  Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between Miller Buckfire and the Company.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _____

Name: Kenneth A. Buckfire
Title: Managing Director

By: _____

Name: Ronen Bojmel
Title: Managing Director

Accepted and Agreed to:

GENERAL GROWTH PROPERTIES, INC.

By: _____

Name: ~~Adam Metz~~ Thomas H. Nolan Jr.
Title: ~~Interim~~ President and Chief ~~Executive~~ Operating Officer

# MILLER BUCKFIRE

## INDEMNIFICATION PROVISIONS

In connection with the engagement of Miller Buckfire & Co., LLC ("Miller Buckfire") as financial advisor to General Growth Properties, Inc., the Company hereby agrees to indemnify and hold harmless Miller Buckfire and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's direction or express consent or (B) are otherwise related to or arise out of Miller Buckfire's activities under Miller Buckfire's engagement. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of the person seeking indemnification hereunder or settled without the consent of the Company (such consent not to be unreasonably withheld or delayed) prior to a determination as to the indemnified party's gross negligence or willful misconduct. For purposes of these indemnification provisions, the term the "Company" has the meaning set forth in the engagement letter, dated as of December 10, 2008, between Miller Buckfire and General Growth Properties, Inc., of which these indemnification provisions are an integral part.

After receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure to notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any indemnified person otherwise than under these indemnification provisions. If the Company so elects or is requested by such indemnified person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Miller Buckfire and the payment of the fees and disbursements of such counsel. In the event, however, such indemnified person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an indemnified person and the Company, and such indemnified person reasonably concludes that there may be legal defenses available to it or other indemnified persons that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such indemnified person, in either case in a timely manner, then such indemnified person may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for all indemnified persons in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the indemnified person will have the right to participate in such litigation and to retain its own counsel at such indemnified person's own expense. The Company further agrees that it will not, without the prior written consent of Miller Buckfire, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each other indemnified person hereunder from all liability arising out of such claim, action, suit or proceeding.

The Company agrees that if any indemnification sought by an indemnified person pursuant to these

indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Miller Buckfire is the indemnified person), the Company and Miller Buckfire will contribute to the losses, claims, damages, liabilities and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, in connection with Miller Buckfire's engagement referred to above, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Company, on the one hand, and Miller Buckfire, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all indemnified persons, including Miller Buckfire, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Miller Buckfire from the Company pursuant to Miller Buckfire's engagement referred to above. It is hereby agreed that for purposes of this paragraph, the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, with respect to Miller Buckfire's engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Company or the Company's stockholders, claims holders or contract parties, as the case may be, pursuant to the transaction, whether or not consummated, for which Miller Buckfire is engaged to render financial advisory services, bears to (ii) the fee paid or proposed to be paid to Miller Buckfire in connection with such engagement. It is agreed that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

The Company further agrees that it will promptly reimburse Miller Buckfire and any other indemnified person hereunder for all reasonable expenses (including fees and disbursements of counsel) as they are incurred by Miller Buckfire or such other indemnified person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened action, claim, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is a party) and in enforcing these indemnification provisions.

The Company's indemnity, contribution, reimbursement and other obligations under these indemnification provisions shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns.

Solely for purposes of enforcing these indemnification provisions, the Company hereby consents to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these indemnification provisions is brought against Miller Buckfire or any other indemnified person.

These indemnification provisions shall apply to the above-mentioned engagement, activities relating to the engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Miller Buckfire's engagement.

# EXHIBIT C

## Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                      :
In re                                 :        Chapter 11 Case No.
                                      :
GENERAL GROWTH                        :        09 – 11977 (ALG)
PROPERTIES, INC., et al.,             :
                                      :        (Jointly Administered)
              Debtors.                :
------------------------------------------------------------x
```

### ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN MILLER BUCKFIRE& CO., LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER APPROVING THE <u>TRANSACTION FEES AND THE AMENDED ENGAGEMENT LETTER</u>

Upon the application, dated April 16, 2009 (the "**Application**")[1] of South Street

Seaport Limited Partnership, its ultimate parent, General Growth Properties, Inc. ("**GGP**"), and

their debtor affiliates, as debtors and debtors in possession (collectively, "**General Growth**" or

the "**Debtors**"), and the terms and conditions contained in that certain letter dated as of

December 10, 2008 between Miller Buckfire & Co., LLC ("**Miller Buckfire**") and GGP, and

amended as of August 11, 2009 (collectively, the "**Engagement Letter**"), pursuant to sections

327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules

2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure, requesting authorization to

employ and retain Miller Buckfire, all as more fully described in the Application; and this Court

having entered an order on July 13, 2009 approving the Application, provided, however, that the

Court hold a hearing to consider the approval of the Completion Fee, the Initial DIP Financing

Fee, and other Financing Fees on July 22, 2009, which hearing was subsequently adjourned until

---

[1]      Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Application.

August 13, 2009 (the "**Supplemental Hearing**"); and the Court having jurisdiction to consider

the Application and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334 and

the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Application being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors

having provided notice of the Application to: (i) the Office of the United States Trustee for the

Southern District of New York (Attn: Greg M. Zipes); (ii) the Securities and Exchange

Commission; (iii) the Internal Revenue Service; (iv) EuroHypo AG, New York Branch,

administrative agent for the lenders to certain of the Debtors under (a) the Second Amended and

Restated Credit Agreement dated as of February 24, 2006 and (b) the Loan Agreement, dated as

of July 11, 2008, as amended; (v) Deutsche Bank Trust Company Americas, as administrative

agent for the lenders to certain of the Debtors under certain Loan Agreements, dated as of

January 2, 2008 and February 29, 2009, respectively; (vi) Goldman Sachs Mortgage Company,

as administrative agent for the lenders to certain of the Debtors under the Amended and Restated

Credit Agreement, dated as of November 3, 2008; (vii) Wilmington Trust, FSB, as indenture

trustee under (a) that certain Indenture, dated as of May 5, 2006, and (b) that certain Indenture,

dated as of April 16, 2007; (viii) LaSalle Bank National Association and Wilmington Trust,

FSB,[2] as indenture trustee under that certain Junior Subordinated Indenture, dated as of February

24, 2006; (ix) The Bank of New York Mellon Corporation, as indenture trustee under that certain

---

[2]     Wilmington Trust, FSB recently entered into an agreement pursuant to which it will assume the indenture trustee assignments of LaSalle Bank National Association. As of the Commencement Date, the trustee assignment with respect to this indenture has not yet been transferred to Wilmington Trust, FSB; however, Wilmington Trust, FSB will succeed LaSalle Bank National Association as indenture trustee for this series of notes upon the transfer of the trustee assignment.

23015631v3

Indenture, dated as of February 24, 1995; and (x) those creditors holding the 100 largest

unsecured claims against the Debtors' estates (on a consolidated basis); and the Debtors having

provided further notice of the proposed Completion Fee, Initial DIP Financing Fee and other

Financing Fees to the persons listed in the Certificate of Service filed as docket number 693; and

the Court having considered the Limited Objection of General Trust Company to the proposed

relief; and the Court having also considered the Supplemental Submission by the Debtors and

Miller Buckfire as to the Proposed Transaction-Based Fees, filed July 27, 2009 as well as Second

Supplemental Submission by the Debtors and Miller Buckfire as to the Proposed Transaction-

Based Fees, filed August 11, 2009; and the Court having held the Supplemental Hearing on

August 13, 2009 to consider the requested relief; and upon the Declarations, the record of the

Supplemental Hearing, and all of the proceedings before the Court, the Court finds and

determines that the requested relief is in the best interests of the Debtors, their estates, creditors,

and all parties in interest; the Debtors have provided due and proper notice of the Application

and the Supplemental Hearing and no further notice is necessary; the legal and factual bases set

forth in the Application establish just and sufficient cause to grant the requested relief herein;

and therefor, it is

ORDERED that the Application as modified by the Engagement Letter is

approved, subject to the provisions of this Order; and it is further

ORDERED that the Debtors are authorized to retain and employ Miller Buckfire

as their financial advisor and investment banker, *nunc pro tunc* to the Commencement Date,

pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, on the terms and conditions set

forth in the Engagement Letter; and it is further

23015631v3

ORDERED that Miller Buckfire will file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, any applicable Bankruptcy Rules, Local Rules of the Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), any orders of this Court and any procedures as may be fixed by order of this Court; and it is further

ORDERED, notwithstanding the prior paragraph, that all fees payable to Miller Buckfire pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, and it is further

ORDERED, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any orders of this Court or any guidelines regarding submission and approvals of fee applications, Miller Buckfire and its professionals (i) shall only be required to maintain time records for services rendered post-petition, in half-hour increments and (ii) shall not be required to provide or conform to any schedule of hourly rates; and it is further

ORDERED that the United States Trustee retains all rights to object to Miller Buckfire's monthly statements (including the monthly financial advisory fees), interim fee applications, final fee applications, and any other fee applications (including, but not limited to, expense reimbursement and the Completion Fee, the Initial DIP Financing Fee, and other Financing Fees) on all grounds including but not limited to the reasonableness standard provided for in section 330 of the Bankruptcy Code; and it is further.

ORDERED that the Debtors shall indemnify and hold harmless Miller Buckfire and other Indemnified Persons, as that term is defined in the Engagement Letter, pursuant to the

23015631v3

indemnification provisions of the Engagement Letter and, during the pendency of these chapter 11 proceedings, subject to the following conditions:

(a)     all requests of Indemnified Persons for payment of indemnity, contribution, or otherwise pursuant to the indemnification provisions of the Engagement Letter shall be made by means of a final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other orders of this Court and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an Indemnified Persons be indemnified or receive contribution to the extent that any claim arose or expense has resulted for any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct of Indemnified Persons;

(b)     in no event shall Indemnified Persons be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Letter if the Debtors or a representative of the Debtors' estate asserts a claim for, and a court determines by a final order that such claims primarily arose out of, such person's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct of Indemnified Person; and

(c)     in the event an Indemnified Person seeks reimbursement of attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be attached to Miller Buckfire's own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee guidelines for

23015631v3

compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that to the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: August __, 2009
     New York, New York

_____
THE HONORABLE ALAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE