| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------- x<br>In re:<br>GENERAL GROWTH<br>PROPERTIES, INC., *et al.*,<br>          Debtors.<br>-------------------------------------------------------- x | Hearing Date: December 15, 2009<br>Hearing Time: 2:30 a.m.<br><br>Chapter 11<br>Case No. 09-11977 (ALG)<br><br>Jointly Administered |

## OBJECTION OF THE UNITED STATES TRUSTEE TO
## THE PLAN DEBTORS' JOINT PLAN OF REORGANIZATION

TO: THE HONORABLE ALLAN L. GROPPER,
   UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee for Region 2 (the "United States Trustee") respectfully submits this Objection to the Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") filed in these jointly administered cases on December 1, 2009. See Docket No. 3660. In support of her objection, the United States Trustee alleges as follows:

### Introduction

The Plan and Disclosure Statement (as defined below) contain broad non-debtor release provision which fall outside the boundaries established by Second Circuit case law in Metromedia. Accordingly, the proposed clauses exceed the limitations of 11 U.S.C. §524(e) and render the Plan unconfirmable under 11 U.S.C. §1129(a)(1). Moreover, the United States Trustee objects to the limited governmental carve-out proposed in the Plan as it only excludes from the releases and injunctions proposed to be granted environmental liabilities.

### Background

**General Background**

1.  Commencing on April 16, 2009 (the "Petition Date") and continuing thereafter, South Street Seaport Limited Partnership, its ultimate parent General Growth Properties, Inc. ("GGP"), and their debtor affiliates, as debtors and debtors-in-possession (the "Debtors") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. By Order dated April 17, 2009, the Debtors' cases are being jointly administered. See Docket No. 35.

2.  The Debtors continue to operate and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.  The Debtors comprise one of the largest shopping center real estate investment trusts (REIT) in the United States, owning and managing about 200 shopping centers and other properties in 44 states. See Declaration of James A. Mesterharm Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions, dated April 16, 2009. See Docket No. 13. GGP also owns commercial office buildings and master planned communities in the United States. Id.

4.  No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

5.  On April 24, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"), pursuant to Section 1102(a)(1) of the Bankruptcy Code. See Docket No. 136. On May 6, 2009, the United States Trustee amended the Committee appointment to add two members. See Docket No. 390.

6.  On September 8, 2009, the United States Trustee appointed the official Committee of Equity Security Holders (the "Equity Committee"). See Docket No. 2302. The composition of the Equity Committee was subsequently amended on September 21 and September 24, 2009, respectively. See Docket Nos. 2494 and 2922.

7. On November 23, 2009, certain of the Debtors (the "Plan Debtors")[1] filed a motion seeking, among other things, (a) the preliminary approval of the Disclosure Statement for Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"), (b) the approval of the form of the notices to be sent to various parties; (c) the approval of the solicitation material, including the form ballot, to be sent to the voting class, (d) the establishment of various deadlines, including the voting deadline and the deadline to object to the Disclosure Statement and confirmation of the Plan, and (e) the shortening certain notice periods and establishing confirmation deadlines (the "Solicitation Procedure Motion"). See Docket No. 3620. In essence, the Solicitation Procedure Motion sought the establishment of a "fast-track" process through which the Court would hold a combined hearing on the approval of the Disclosure Statement and confirmation of the Plan.

8. On December 1, 2009, the Court entered an order granting the relief sought in the Solicitation Procedure Motion. See Docket No. 3658.

9. On December 1, 2009, the Plan Debtors filed their Disclosure Statement and Plan. See Docket Nos. 3659 and 3660.

**The Plan and Disclosure Statement**

10. The Plan categorizes holders of allowed claims and interests into the following seven classes: (a) Class A - Priority Non-Tax Claims, (b) Class B - Secured Debt Claims, (c) Class C - Mechanics' Liens Claims, (d) Class D - Other Secured Claims, (e) Class E - General Unsecured Claims, (f) Class F - Intercompany Obligations, and (g) Class G - Interests. See Plan at Arts. 3 and 4, Disclosure Statement at Art. II.D.

---

[1] The Plan Debtors are listed on Exhibit A to the Plan and Exhibit C to the Disclosure Statement.

11. All classes, with the exception of Class B (Secured Debt Claims) are deemed unimpaired under the Plan; accordingly, they are deemed to have accepted the plan pursuant to section 1126(f) of the Bankruptcy Code.

12. The lenders with respect to the project-level loans, which constitute Class B, are the only claimants entitled to vote on the Plan. The form Ballot for Accepting or Rejecting the Debtor's Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code approved by the Court explicitly states that "a vote to accept the plan shall constitute your acceptance and consent to the releases provided by Article 10 of the Plan. Please see Article 10 of the Plan for Information Regarding the Releases." See Docket No. 3658, Exhibit F.

**Non-Debtor Releases and Exculpation Clauses**

13. Section 10.7 of the Plan exculpates various non-debtor parties, including the Plan Debtors, the Secured Debt Holders,[2] the Special Servicers, the Master Servicers, the Equity Committee, the Creditors' Committee and their respective officers, directors, members, employees and professionals for any claim, cause of action or other assertion of liability for any act taken or omitted arising out of the Plan Debtors' chapter 11 cases or the formulation, negotiation, and confirmation of the Plan (the "Exculpation Clause"). See Plan §10.7, Disclosure Statement Art. VI.H.7. The Exculpation Clause has a carve-out for any act which constitutes willful misconduct or gross negligence and for any liability that arises from professional malpractice. See Plan §10.7, Disclosure Statement Art. VI.H.7. The Exculpation Clause has been replicated in its entirety in Exhibit A, attached hereto.

14. Section 10.8 of the Plan provides for releases of certain claims against non-

---

[2] Unless otherwise defined herein, capitalized terms shall have the meaning assigned to them in the Plan or the Disclosure Statement.

debtors (the "Non-Debtor Releases"). See Plan §10.8, Disclosure Statement Art. VI.H.8. The Non-Debtor Releases provision in the Plan has been replicated in its entirety in Exhibit A, attached hereto. More specifically, the Non-Debtor Releases release the following parties: (a) present and former directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives (and their respective affiliates) of or to the Plan Debtors and (b) the Secured Debt Holders, the Special Servicers, the Master Servicers, the Equity Committee, the Creditors' Committee, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives, all in their capacities as such.

15. The Non-Debtor Releases are given by (a) the Plan Debtors, (b) holders of claims that have voted to accept the Plan, (c) holders of claims or interests that are deemed to have accepted the plan, and (d) holders of claims that do not vote to accept the plan. See Plan §10.8, Disclosure Statement Art. VI.H.8.

16. The Non-Debtor Releases release any claim, cause of action, and liability, whether liquidated or unliquidated, known or unknown, matured or unmatured, foreseen or unforeseen, or thereafter arising that arises at any time prior to the effective date of the Plan – including prior to the Petition Date. See Plan §10.8, Disclosure Statement Art. VI.H.8. The only claims that are carved-out from the Non-Debtor Releases, similarly to the Exculpation Clause, are for acts that constitute willful misconduct or gross negligence and for any liability that arises from professional malpractice.

17. Lastly, section 10.9 of the Plan provides a limited governmental carve-out, which only excludes from the releases and injunctions environmental liabilities. See Plan §10.9,

Disclosure Statement Art. VI.H.9. The language from the governmental carve-out has been replicated in its entirety in Exhibit A, attached hereto.

## ARGUMENT

In a chapter 11 case, the debtor receives its discharge as to all of its debts upon entry of an order of confirmation. 11 U.S.C. §1141(d)(1). The provisions of the confirmed plan in turn bind all creditors whether or not a particular creditor has voted to accept the plan. 11 U.S.C. §1141(a). Section 524(e) of the Bankruptcy Code, however, acts as a limitation on the effect of this discharge. More specifically, that section provides, in relevant part, that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. §524(e). The Second Circuit has held that a court may enjoin a creditor from suing a third party only in very limited circumstances. See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005) ("Metromedia") ("No case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique."); see also SEC v. Drexel Burnham Labert Group, Inc. (In re Drexel Burnham Labert Group, Inc.), 960 F.2d 285, 293 (2d Circ. 1992) ("In bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan."). The circumstances presented in these cases, however, do not support the breadth of the Non-Debtor Releases and the Exculpation Clause.

Pursuant to section 1129(a)(1), a plan of reorganization can only be confirmed if it "complies with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. §1129(a)(1). Because the Non-Debtor Releases and the Exculpation Clause exceed the boundaries imposed by

the Court in <u>Metromedia</u>, and thus violate section 524(e) of the Bankruptcy Code, the United States Trustee objects to their inclusion in the Plan as they render it unconfirmable.

**Applicable Case-Law**

In accordance with the ruling of the United States Court of Appeals for the Second Circuit, non-debtor releases and injunctions do not pass muster merely by virtue of the fact that they appear in a plan. The Plan Debtors must demonstrate that the facts justify the release being sought – a rare circumstance. <u>Metromedia</u>, 416 F.3d at pp. 141-43.

In <u>Metromedia</u>, the Second Circuit expressed its dissatisfaction with the frequency in which non-debtor releases are included in plans. These releases were identified by the Court as "a bankruptcy discharge arranged without a filing and without the safeguards of the Code." <u>Id.</u> at p. 142. Therefore, non-debtor releases are appropriate only in rare cases, and a non-debtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. <u>See id.</u>. at pp. 141-143.

The Second Circuit has approved of non-debtor releases in "unique" circumstances. More particularly, the Court in <u>Metromedia</u> noted that non-debtor releases have been approved when: (1) the estate received substantial consideration, <u>see</u> <u>Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d at 292 (2d Cir. 1992) (multi-billion dollar settlement including a payment of over a billion dollars into fund by Michael Milken and other co-liable Drexel personnel); (2) the enjoined claims were "channeled" to a settlement fund rather than extinguished, <u>see</u> <u>MacArthur Co. v. Johns-Manville Corp.</u> (<u>In re Johns-Manville Corp.</u>), 837 F.2d 89, 93-94 (2d Cir. 1988); (3) the enjoined claims would indirectly impact the debtor's reorganization "by way of indemnity or

contribution," see Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 701 (4th Cir. 1989); (4) the plan otherwise provided for the full payment of the enjoined claims; and (5) the affected creditors consented. See Metromedia, 416 F.3d at 142; In re Oneida, 351 B.R. 79, 94 (Bankr.

Recent cases further clarify the Metromedia requirements. In In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006), the Court, with an eye on Metromedia and following the Second Circuit's narrow standard, found that the case before it was "the rare case" involving unusual facts that justified the release of certain non-debtor parties, including the Plan funders and an affiliated company. Id. at 55.

The Court in Karta determined that the non-debtor release provisions were "important" to the Debtor's plan of reorganization for the following reasons: the released parties agreed to make a substantial financial contribution to fund the plan **only** if they would be released from Creditors' claims. Id. If the releases were not approved, the released parties would not fund the plan. Without funding, the proposed plan would fail, therefore the releases could not be excised from the plan. Id. However, the Court noted that it would be an abuse of process simply to allow the release of a non-debtor in return for its financial contribution. Something else was therefore needed in order to make a case "unique." Id. The Court framed the issue as follows: "whether a significant non-debtor financial contribution plus other unusual factors render a situation so 'unique' that non-debtor releases are appropriate." Id.[3]

---

[3] See also In re Adelphia, 368 B.R. 140, 266-270 (Bankr. S.D.N.Y. 2007) (three categories of third party releases are acceptable under Metromedia: (1) persons indemnified by the estate under by-laws, employment contracts, or loan agreements; (2) persons involved in unique transactions, such as a party who makes a substantial financial contribution to the estate; and (3) persons who consent to the releases); In re Oneida Ltd., 351 B.R. 79 (Bankr. S.D.N.Y. 2006) (the Equity Committee had raised, but then abandoned, an objection to the validity of the

**Applicability of Case Law to the Proposed Non-Debtor Releases and Exculpation Clause**

The Non-Debtor Releases and Exculpation Clause release and enjoin various non-debtor entities from bringing causes of action arising prior to the Petition Date and at any time up to the Effective Date. The facts of these cases do not meet the requirements for "uniqueness" set forth in Metromedia or its progeny and the few exceptions under which the approval of such clauses would be justified are not applicable in these cases. Accordingly, the United States Trustee objects to the Non-Debtor Releases and the Exculpation Clause in its present form as they are too broad and not justified under Second Circuit law.

(a) Substantial Consideration

As set forth above, courts in the Second Circuit have sometimes approved non-debtor releases when the debtor's estate receives substantial consideration from the party being released. In the Disclosure Statements, the Debtors argue that the Non-Debtor Releases are justified because the non-Debtors receiving the benefits of the Non-Debtor Releases have provided the required substantial consideration. To bolster that statement, however, the Debtors offer little support. They simply state that the released parties provided the following contributions: (a) the Plan Debtors' present and former officers, director, financial advisors, restructuring advisors, attorneys and others affiliates parties charted a course into and out of chapter 11 for the Plan Debtors and negotiated the settlements that will result in the restructuring

---

Non-Debtor releases. In dicta, the Court stated that the releases were acceptable because all of the affected creditors had consented: they affirmatively checked a box on the Plan solicitation ballots indicating their willingness to grant releases); In re Spiegel Inc., 2006 WL 2577825, *7 (Bankr. S.D.N.Y. Aug. 16, 2006) (No. 03-11540 BRL) (Plan's third-party releases and injunctions were critical components of the Settlement that played a "vital part in the plan" and were "necessary to the proposed reorganization of the Debtors and the successful administration of their estates").

of the loans, (b) the GGP Group is furnishing substantial consideration by continuing to provide cash management and other integrated management services, funding the payments required under the Plan, and providing post-emergence funding to the Plan Debtors as necessary, (c) the Secured Debt Holders and the Special Servicers, and the releasees affiliated with them, facilitated the successful financial rehabilitation of the Plan Debtors, and (d) the Creditors' Committee and the Equity Committee, and their releasee affiliates, have provided consideration to the estates by facilitating the settlements and the early emergence of the Plan Debtors.  See Disclosure Statement at Art. VII.D.

In essence, the Debtors claim that the released parties have provided substantial contribution by simply carrying out their duties.  While all parties may have worked hard over the past few months to reach the result embedded in the Plan presently before the Court, such contributions – which do not involve any infusion of funds into the Plan – cannot be deemed sufficient to trigger the right to the extensive releases.  See, e.g. In re Adelphia Communications Corp., 368 B.R. at 267-68 ("[M]any players in the bankruptcy process provide benefits to the case.  DIP lenders are certainly in this category, and so are professionals to the estate or its fiduciaries.  But they get interest and fees for their services.  Their delivery of services is not unique."); In re Karta, 342 B.R. at 55 ("Anyone can devise a plan that involves contributions from non-debtors who (not surprisingly) would condition their participation on being shielded from their creditors. . . .  So it would be all too easy to bring many cases in under what the Second Circuit has said should be the very small Metromedia umbrella – which would make a plan facet that is supposed to be an exception swallow the rule against non-debtor releases.)

    (b)    "Channeling" of Enjoined Claims to Settlement Fund or Payment in Full of Enjoined Claims

This is not a case where the enjoined claims are being channeled to a settlement trust or fund. The Debtors, however, claim that "there is no need to do so because all Creditors of the Plan Debtors, except the Secured Debt Holders, will be unimpaired by the Plan and will be paid in full on any claim or cause of action that might be recovered." See Disclosure Statement at Art. VII.D. It is unexplainable, however, why such broad releases and exculpations clauses are needed if, as the Plan Debtors claim, the non-debtor releasees are paid in full through the plan.

While, as the Debtors argue, all claims – with the exception of Class B Secured Debt Claims – are deemed to be unimpaired and will receive full payment under the Plan, the language of the proposed releases and exculpation is sufficiently broad to encompass claims that possibly may not receive full payment under the Plan. The Exculpation Clause, in fact, exculpates the non-Debtor parties from any and all post-petition claims or causes of action arising out of the Chapter 11 cases. More broadly, the Non-Debtor Releases release the same parties from any and all present and future claims and causes of actions whatsoever in any way relating to the Plan Debtors or the Chapter 11 Cases. While all classes, with the exception of one, are unimpaired, the claims that will be paid through the plan are only "Allowed" claims. See Plan at §1.6. Accordingly, there is a possibility that a claimant has a cause of action against a released party based on breach of fiduciary duty, on securities violations, or other causes of action that may not necessarily receive payment through the Plan. While presently there is no concrete cause of action or claim that fits that category, the Debtors and non-Debtor releasees are certainly envisioning such a possibility and are in essence seeking a "comfort" order to grant releases beyond what is acceptable under the statutes and case law. See In re Adelphia Communications Corp., 368 B.R. at 268.

(c) The Impact of Enjoined Claims on Plan Debtors by Way of Indemnity or Contribution

To the extent that the Plan Debtors would be liable for any liability imposed on persons who are indemnified by the Plan Debtors' estates with respect to their services, the releases as to these indemnified persons may be consistent with Metromedia. But the Non-Debtor Release and Exculpation Clause go beyond that and the releases also provide a safe-harbor to parties that would not be subject to indemnification or contribution claims against the Plan Debtors.

(d) Consent to Non-Debtor Releases and Exculpation Clause

The Non-Debtor Releases propose to release parties who have voted in favor of the Plan. The United States Trustee does not object to those releases in view of the fact that the plan solicitation ballot contains a clause that explicitly advises voting creditors that to the extent they vote in favor of the plan, they will be deemed to have accepted the releases. The Non-Debtor Releases, however, also attempt to bind unimpaired creditors who have deemed to have accepted the Plan by virtue of their payments under the Plan. However, the payment in full under a Plan does not render a "deemed" acceptance an affirmative acceptance of the releases proposed under the Plan.

As courts have held, there needs to be an affirmative action taken in order for the release to be deemed consensual. See In re Zenith Elec. Corp., 341 B.R. 92, 111 (Bankr. D. Del. 1999) (holding that a release of a third party's claims "cannot be accomplished without the affirmative agreement of the creditor affected."); see also In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir. 1993) ("Unlike the injunction created by the discharge of a debt, a consensual release does not inevitably bind individual creditors. It binds only those creditors voting in favor of the plan of reorganization. As a consequence, a creditor who votes to reject the Plan or abstains from

voting may still pursue any claims against third-party nondebtors."); In re Oneida Ltd., 351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006) (holding that the third-party release in the Plan falls directly into the final Metromedia category because it provided for releases only of creditors who affirmatively indicated their willingness to grant such releases by "checking a box" on the plan solicitation ballot); In re Arrowmill Dev. Corp., 211 B.R. 497, 506 (Bankr. D.N.J. 1997) (holding that "validity of the releases hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order.").

Accordingly, to the extent that the Non-Debtor Releases are upheld, they should only release parties who voted in favor of the Plan.

**Carve-Out Of Governmental Claims**

Finally, the Plan also fails to include the appropriate language carving out government claims from the proposed releases. The governmental carve-out set forth in section 10.9 of the Plan is limited to environmental claims and is not sufficiently extensive. The United States Trustee requests that the Debtors add the following language to their release provisions:

> Nothing in the Confirmation order or the Amended Plan of Reorganization shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan of Reorganization enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the released parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Amended Plan of Reorganization exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

## **Conclusion**

WHEREFORE, the United States Trustee respectfully requests that the Court decline to approve the Exculpation Clause and the Non-Debtor Releases in its present form and grant such other relief as the Court deems just and proper.

Dated: New York, New York
      December 11, 2009

                            Respectfully submitted,

                            DIANA G. ADAMS
                            UNITED STATES TRUSTEE

By:          */s/ Elisabetta G. Gasparini*
               Elisabetta G. Gasparini
               Trial Attorney
               33 Whitehall Street, 21st Floor
               New York, New York 10004
               Tel. No. (212) 510-0500