| WEIL, GOTSHAL & MANGES LLP | KIRKLAND & ELLIS LLP |
|---|---|
| 767 Fifth Avenue | 300 North LaSalle |
| New York, New York 10153 | Chicago, Illinois 60654 |
| Telephone: (212) 310-8000 | Telephone: (312) 862-2000 |
| Facsimile: (212) 310-8007 | Facsimile: (312) 862-2200 |
| Marcia L. Goldstein | James H.M. Sprayregen, P.C. |
| Gary T. Holtzer | Anup Sathy, P.C. (*admitted pro hac vice*) |
| Penny P. Reid | |
| Adam P. Strochak | |
| Stephen A. Youngman (*admitted pro hac vice*) | |
| Melanie Gray (*admitted pro hac vice*) | |
| Sylvia A. Mayer (*admitted pro hac vice*) | |
| | Co-Attorneys for Certain Subsidiary Debtors |
| Attorneys for Debtors and | and Debtors in Possession |
| Debtors in Possession | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
GENERAL GROWTH                            :      09–11977 (ALG)
PROPERTIES, INC., et al.,                 :
                                          :      (Jointly Administered)
            Debtors.                      :
-------------------------------------------------------------x
```

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**CONFIRMING THE PLAN DEBTORS' JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The *Plan Debtors'*[1] *Joint Plan of Reorganization Under Chapter 11 of the*

*Bankruptcy Code* (as may be further modified, the "**Plan**") having been filed with this

---

[1] This Confirmation Order applies to the Plan Debtors identified in **Exhibit A** attached hereto. The Debtors identified in **Exhibit B** were previously identified as Plan Debtors, but the Confirmation hearing has been adjourned as to those Debtors pursuant to numbered paragraph 3 below. Accordingly, this Confirmation Order does not confirm the Plan as to those Debtors identified on Exhibit B. With respect to the Debtors identified in Exhibit B, the Plan Debtors shall have the right to revoke or withdraw the Plan, in whole or in part, prior to the Confirmation Date and such revocation or

Court by certain subsidiary debtors of General Growth Properties, Inc. and its affiliated

debtors in the above-referenced Chapter 11 Cases,[2] as debtors and debtors in possession,

on December 1, 2009; and the supplements to the Plan (as the documents contained

therein may be further amended or supplemented, the "**Plan Supplement**");[3] and the

Court having entered, pursuant to sections 105(a), 502, 1123(a), 1124, 1125, 1126, and

---

withdrawal shall be deemed null and void with respect to such Debtor identified in Exhibit B. In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against such Debtor listed in Exhibit B or any other Person or to prejudice in any manner the rights of the Debtors listed in Exhibit B or any Person in any further proceedings involving the Debtors. Notwithstanding any references to the Debtors in Exhibit B in the Plan, Disclosure Statement, or Plan Supplement, this Confirmation Order does not confirm or approve the Plan, the Disclosure Statement, or the Plan Supplement with respect to the Debtors in Exhibit B. Such Debtors' have reserved their right to seek confirmation and approval at a later date.

[2] All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Plan.

[3] The Plan Supplements include the *Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 3700) filed on December 4, 2009, the *Notice of Amendment of Plan Adding Subsequent Plan Debtors in Advance of Disclosure Statement Hearing* (Docket No. 3720) filed on December 8, 2009, the *Second Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 3748) filed on December 9, 2009, the *Third Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 3752) filed on December 9, 2009, the *Fourth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 3774) filed on December 10, 2009, and the *Fifth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 3776) filed on December 11, 2009. The supplements to the Disclosure Statement include the *Supplement to Disclosure Statement for Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 3723) filed on December 8, 2009; the *Second Supplement to Disclosure Statement for Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 3740) filed on December 9, 2009, and the *Third Supplement to Disclosure Statement for Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 3772) filed on December 10, 2009

1128 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules

2002(a)(2), 3003, 3016, 3017, 3018, 3020, and 9006(c) of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 3017-1, 3018-1, and 3020-1

of the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

**Rules**"), an *Order (A) Preliminarily Approving the Disclosure Statement; (B) Approving*

*the Form of Notice of Combined Hearing on the Approval of the Disclosure Statement*

*and Confirmation of the Plan and Distribution thereof; (C) Approving Solicitation*

*Packages and Procedures for the Distribution Thereof; (D) Approving the Form of Ballot*

*and Distribution Thereof, Setting the Record Date, Setting the Voting Deadline, and*

*Establishing Procedures for Vote Tabulation; (E) Establishing Procedures for Filing*

*Objections to the Disclosure Statement and Confirmation of the Plan;(F) Authorizing the*

*Plan Debtors to Make Certain Non-Substantive Changes to the Plan, Disclosure*

*Statement, and Related Documents; and (G) Shortening Various Notice Periods and*

*Establishing a Confirmation Timeline* (Docket No. 3658) (the "**Disclosure Statement**

**Order**"), dated December 1, 2009, which preliminarily approved the proposed

Disclosure Statement, approved the expedited notice, objection, solicitation, voting and

tabulation procedures related to the proposed Disclosure Statement and the proposed

Plan, and scheduled a hearing for final approval of the Disclosure Statement and

confirmation of the Plan Debtors' proposed Plan (the "**Joint Disclosure Statement and**

**Confirmation Hearing"**); and the Disclosure Statement and Plan having been distributed

to holders of claims against and interests in the Plan Debtors and other parties in interest

as provided in the Disclosure Statement Order; and the Joint Disclosure Statement and

Confirmation Hearing having been held before the Court on December 15, 2009; and due

notice of the Plan and the Joint Disclosure Statement and Confirmation Hearing having

been provided to holders of claims against and interests in the Plan Debtors and other

parties in interest, as established by the affidavits of service, mailing and/or publication

filed with the Court (the "**Notice Affidavits**"), and such notice being sufficient under the

circumstances and no further or other notice being required; and after full consideration

of (i) the Plan Debtors' memorandum of law in support of confirmation of the Plan, dated

December 14, 2009 (Docket No. 3847) (the "**Confirmation Brief**"); (ii) the Certification

of Travis K. Vandell of Kurtzman Carson Consultants LLC, the Debtors' Solicitation

Agent, dated December 14, 2009, regarding the tabulation of the Ballots and voting

results with respect to the Plan (Docket No. 3870) (the "**KCC Voting Certification**");

(iii) the testimony of Thomas H. Nolan, Jr. and James A. Mesterharm dated December

14, 2009, each sworn to and filed in support of confirmation of the Plan (Docket Nos.

3843 and 3837, respectively);  and (iv) each of the objections to confirmation of the Plan

(the "**Confirmation Objections**"); and (v) the Plan Debtors' omnibus responses

contained in the Confirmation Brief; and all Confirmation Objections having been

withdrawn, resolved, or otherwise overruled as set forth herein; and upon all of the

proceedings had before the Court and upon the arguments of counsel and all of the

evidence adduced at the Joint Disclosure Statement and Confirmation Hearing; and the

Court having determined based upon all of the foregoing that the Plan should be

confirmed, as reflected by the Court's rulings made herein and on the record at the Joint

Disclosure Statement and Confirmation Hearing; and the Court having reviewed and

considered the final form of the Disclosure Statement, Plan, and Plan Supplements;[4] and after due deliberation and sufficient cause appearing therefore, the Court hereby

## FINDS, DETERMINES AND CONCLUDES THAT:

A. <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## Jurisdiction and Venue

B. <u>Exclusive Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. The Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto. The Plan Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Chapter 11 Cases

C. <u>Commencement of the Chapter 11 Cases</u>. Commencing on April 16, 2009 (the "**Commencement Date**") and continuing thereafter, the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are

---

[4] The final form of the Disclosure Statement and Plan are attached hereto as **Exhibit C**, **Exhibit D**, respectively.

being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The

Debtors have been operating their businesses and have been managing their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No

trustee has been appointed in these Chapter 11 Cases.

D.     <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the

Debtors' Chapter 11 Cases maintained by the Clerk of the Court, including, without

limitation, all pleadings and other documents filed, all orders entered, and all evidence

and arguments made, proffered, or adduced at the hearings held before the Court during

the pendency of the Chapter 11 Cases.

<b><u>Solicitation and Notice</u></b>

E.     <u>Solicitation and Notice</u>. On December 1, 2009, the Court entered the

Disclosure Statement Order, which among other things, (i) preliminarily approved the

Disclosure Statement, (ii) approved the expedited notice, objection, solicitation, voting

and tabulation procedures related to the Disclosure Statement and the proposed Plan, (iii)

scheduled the Joint Disclosure Statement and Confirmation Hearing, and (iv) established

procedures and deadlines for filing objections to the Disclosure Statement and

confirmation of the Plan. The Disclosure Statement with exhibits, the Plan, the

Disclosure Statement Order (excluding the exhibits thereto, except a copy of the

Solicitation Procedures), the Ballots (together with detailed voting instructions), the

notices of Confirmation Hearing and the Disclosure Statement Order, and form of letter

("**<u>Cover Letter</u>**") (collectively, the "**<u>Solicitation Package</u>**") were served on the parties

set forth in the Disclosure Statement Order. As described in the KCC Declaration and the

Notice Affidavits, (i) service of the Solicitation Packages was adequate and sufficient

under the circumstances of these Chapter 11 Cases, and (ii) adequate and sufficient notice of the Joint Disclosure Statement and Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order has been provided.

F.     <u>Voting</u>.  Votes on the Plan were solicited after disclosure to holders of Claims and Interests of "adequate information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the KCC Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

G.     <u>Plan Supplement</u>.  The Plan Debtors filed the Plan Supplement on December 4, 2009, and continuing thereafter in accordance with the terms set forth in the Plan, which includes the following documents: (a) Property-Specific Exhibit "B" to the Plan, (b) executory contract and property document assumption schedules, (c) executory contract and property document rejection schedules, (d) executory contract and property document expired schedules, (e) Forms of Restated Charters, Restated Bylaws, Partnerships, Operating Agreements, or Trust Agreements, as applicable to each Plan Debtor, (f) an exhibit detailing the Plan Debtors' directors and officers following the Effective Date, (g) an exhibit detailing insiders to be employed by the Plan Debtors after the Effective Date and their employment terms, and (h) disputed mechanics' lien schedules.  All such materials comply with the terms of the Plan, and the filing and notice of such documents was adequate, proper and in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**Final Approval of Disclosure Statement**

H.       The Disclosure Statement, as amended, is hereby approved pursuant to section 1125 of the Bankruptcy Code, as providing Holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

I.       The Disclosure Statement (including all applicable exhibits thereto), as amended, provides Holders of Claims, Holders of Interests and other parties in interest with sufficient notice of the release, exculpation and injunction provisions contained in Article 10 of the Plan (including the third-party releases set forth in Article 10.9 of the Plan), in satisfaction of the requirements of Bankruptcy Rule 3016(c).

**Plan's Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

J.       <u>Burden of Proof</u>.  The Plan Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard in this Court.

K.       <u>Bankruptcy Rule 3016(a)</u>.  The Plan is dated and identifies the Plan Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

L.       <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a) of the Bankruptcy Code.

1.       <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  As required by section 1123(a)(1), in addition to Administrative Expense Claims, Priority Tax Claims, Secured Tax Claims and GGP Administrative Expense Claims,

which need not be classified, Article 3 of the Plan designates seven (7) Classes of Claims and Interests. As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2. <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Articles 3 and 4 of the Plan specify that Classes A, C, D, E, F and G are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

3. <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Articles 3 and 4 of the Plan designate that Class B is impaired and Article 4 of the Plan sets forth the treatment of such impaired Class, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

4. <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. Article 4 of the Plan provides for the same treatment by the Plan Debtors for each Claim or Interest in each respective Class except to the extent that a holder of a particular Claim or Interest has agreed to a different treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

5. <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the various documents included in the Plan Supplement provide adequate and proper means for implementation of the Plan, including, without limitation: (i) the

merger, consolidation, conversion or dissolution of certain Plan Debtor entities prior to or substantially contemporaneous with the Effective Date; (ii) the merger of any or all of the Plan Debtors into one or more of the Plan Debtors or non-Debtor Affiliates, or dissolution, consolidation or conversion of any or all of the Plan Debtors into one or more of the Plan Debtors or non-Debtor Affiliates following the Effective Date, without any further Court approval; (iii) the transfer of assets between or among the Plan Debtors and/or non-Debtor Affiliates; (iv) the taking of any actions necessary to effectuate any transactions relating to the Special Consideration Properties contemplated pursuant to the Plan, the Plan Supplement, and the exhibits or schedules thereto; and/or (v) the engagement in any other transaction in furtherance of the Plan, as described in further detail in the Disclosure Statement or any other and further action in furtherance of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.  The Plan Debtors shall not be deemed to authorize or permit any merger, dissolution, consolidation or other transaction in violation of the terms, conditions, and limitations set forth in Exhibit B to the Plan or the Secured Debt Loan Documents.

6.      Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  While 1123(a)(6) may not apply to the Plan Debtors because they are not issuing securities under the Plan to third parties, the applicable document for each Plan Debtor, as set forth in the Plan Supplement, prohibits the issuance of nonvoting equity securities. As such, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

7.     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan Debtors' initial directors and officers have been or will be selected as set forth in the Plan Supplement.  Such procedures are consistent with the interests of creditors and equity holders and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

M.     Additional Plan Provisions (11 U.S.C. § 1123(b)).  The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

1.     Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1)).  Pursuant to the Plan, Classes A, C, D, E, F and G are unimpaired and Class B is impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

2.     Assumption and Rejection of Executory Contracts and Unexpired Property Documents (11 U.S.C. § 1123(b)(2)).  Article 8 of the Plan provides for the assumption of the Plan Debtors' executory contracts and unexpired Property Documents as of the Effective Date, unless an executory contract or unexpired Property Document: (i) is identified as part of the Executory Contract and Property Document Rejection Schedule as an agreement being rejected pursuant to the Plan, subject to the provisions of Section 8.1(b) of the Plan; (ii) is identified as part of the Executory Contract and Property Document Expired Schedule as an agreement that has expired or terminated by operation of law or contract; (iii) is the subject of a motion to reject filed on or before the Effective Date; or (iv) is deemed rejected pursuant to a prior order of this Court.  Notwithstanding anything in the Plan

or this Confirmation Order to the contrary, unless otherwise agreed by each of the

parties to an assumed executory contract or unexpired Property Document and except

with respect to the cure and subsequent discharge of defaults, as of the Effective

Date: (1) all executory contracts and unexpired Property Documents that are assumed

shall remain in full force and effect for the benefit of each of the parties to the

assumed Executory Contracts and unexpired Property Documents, and (2) nothing in

the Plan shall modify or limit any right, Claim, defense, or obligation, or release or

discharge any right, Claim, defense, liability or obligation, in favor of such parties

that are contained in the assumed executory contracts and unexpired Property

Documents and under applicable law; provided, however, that nothing herein shall

suspend or negate the provisions of Section 8.1(c) of the Plan.  Notwithstanding the

foregoing, unless the applicable Secured Debt Holder provides express prior written

consent therefor, (i) no ground lease or reciprocal easement agreement shall in any

event be included in the Executory Contract and Property Document Rejection

Schedule or be the subject of a motion to reject and (ii) no other Executory Contract

or Property Document shall be included in the Executory Contract and Property

Document Rejection Schedule if the Secured Debt Holder has the right to consent to

or approve the termination of such other Executory Contract or Property Document

under the Secured Debt Loan Documents or if the material breach of such Executory

Contract or Property Document would be a default or event of default under the

Secured Debt Loan Documents.  In the event a Plan Debtor requests a Secured Debt

Holder's consent to include on an Executory Contract or Property Document

Rejection Schedule a document listed in sections (i) or (ii) of the preceding sentence,

such Secured Debt Holder shall notify the Plan Debtor of its decision during the time period specified in the applicable Secured Debt Loan Documents or if no such time period is specified, within five (5) Business Days after receipt of written request for consent.  For the avoidance of doubt, unless otherwise specified in Section 8.1(a) of the Plan, all executory contracts and unexpired Property Documents between the Plan Debtors and the counterparties to such executory contracts and unexpired Property Documents will be assumed by the Plan Debtors regardless of whether such executory contracts and unexpired Property Documents are listed on the Executory Contract and Property Document Assumption Schedule.  Unless otherwise specified on an Executory Contract and Property Document Schedule, each executory contract or unexpired Property Document listed on such schedule shall include all exhibits, schedules, riders, modifications, amendments, supplements, attachments, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that, in any manner, affects such executory contract or unexpired Property Document, without regard to whether such agreement, instrument or other document is listed on such schedule.

3.     Other Appropriate Provisions (11 U.S.C. § 1123(b)(2)).  The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including without limitation, provisions for (a) distributions to holders of Claims and Interests, (b) objections to Claims, (c) procedures for resolving Disputed, Contingent and Unliquidated Claims (d) cure obligations, (e) procedures governing disputes, (f) indemnification obligations, (g) amending Property Document Schedules, (h) establishing the Rejection Damage Claims Bar

Date, (i) performing Intercompany Contracts, (j) procedures for Insurance Policies,

(k) Procedures for Benefit Plans, (l) procedures for Surety Bonds, and (m) procedures

for Worker's Compensation Claims.

N.    Cure of Defaults (11 U.S.C. § 1123(d)).  Section 8.2 of the Plan provides

for the satisfaction of default claims associated with each executory contract and

unexpired Property Document to be assumed in accordance with section 365(b)(1) of the

Bankruptcy Code.  The cure amounts identified in the Executory Contract and Property

Document Assumption Schedule and any amendments thereto, as applicable, represent

the amount, if any, that the Plan Debtors propose to pay in full and complete satisfaction

of such default claims.  Any disputed cure amounts will be determined in accordance

with the procedures set forth in Section 8.4 of the Plan, and applicable bankruptcy and

nonbankruptcy law.  As such, the Plan provides that the Plan Debtors will cure, or

provide adequate assurance that the Plan Debtors will promptly cure, defaults with

executory contracts and unexpired leases in compliance with section 365(b)(1) of the

Bankritpcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

O.    The Plan Debtors' Compliance with the Bankruptcy Code (11 U.S.C.
§ 1129(a)(2)).  The Plan Debtors have complied with the applicable provisions of the

Bankruptcy Code.  Specifically:

a.    Each of the Plan Debtors is an eligible debtor under section
109 of the Bankruptcy Code;

b.    The Plan Debtors have complied with applicable provisions
of the Bankruptcy Code, except as otherwise provided or
permitted by orders of the Court; and

c.    The Plan Debtors have complied with the applicable
provisions of the Bankruptcy Code, the Bankruptcy Rules

and the Local Rules in transmitting the Plan, Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

P.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan Debtors have proposed the Plan (including the Plan Supplement and all other documents necessary to effectuate the Plan) in good faith and not by any means forbidden by the law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases and the formulation of the Plan.  The Plan Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement and the record of the Joint Disclosure Statement and Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Plan Debtors' estates and to effectuate a successful reorganization of the Plan Debtors.  The Plan was the product of extensive negotiations conducted at arms' length among representatives of the Plan Debtors, the Creditors' Committee, the Equity Committee, the DIP Lenders, and the Secured Debt Holders, through the Special Servicers.  Further, the Plan's classification, indemnification, exculpation, release and injunction provisions have been negotiated in good faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Plan Debtors' successful reorganization.

Q.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by the Plan Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection

with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11

Cases, has been approved by, or is subject to the approval of, the Court as reasonable,

thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

R.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Plan

Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity

and affiliations of each proposed initial director, officer, or voting trustee of the Plan

Debtors (and, to the extent such Person is an insider of the Plan Debtors, the nature of

any compensation of such Person, as well as the related terms) shall be those described in

the Plan Supplement.  As described in the Plan Supplement, the directors and officers that

are employees and insiders receive no additional compensation and receive certain

indemnities.  The appointment to, or continuance in, such offices of such persons is

consistent with the interests of holders of Claims and Interests and with public policy.

S.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the

Bankruptcy Code is satisfied because the Plan does not provide for any rate changes over

which a governmental regulatory commission has jurisdiction.

T.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code.  The "best interest" test is applicable only if

Class B votes to reject the Plan.  Only Class B is impaired under the Plan, and each

holder of a Claim in Class B has accepted the Plan.  A traditional liquidation analysis

with respect to the Plan Debtors is unnecessary in light of the fact that all holders of

Claims or Interests are being paid in full or reinstated on the Effective Date.  Thus, even

under a chapter 7 liquidation, the holders of Claims or Interests would not be able to

recover more than the amount that such holders will recover under the Plan on account of

such Claims and Interests.  Given the following considerations, it is unlikely that the

holders of Claims and Interests would receive a 100% recovery in a chapter 7 liquidation:

(i) the increased costs and expenses of a chapter 7 liquidation, including the appointment

of a trustee, the trustee's employment of attorneys and other professionals, and additional

administrative and priority claims that may result from the termination of the Plan

Debtors' businesses; (ii) the expected delay in distributions to holders of Claims and

Interests; (iii) the potential that certain Claims and Interests would be subjected to

contractual or equitable subordination; and (iv) the likelihood that assets may need to be

sold or otherwise disposed of in a less orderly fashion.  Based on the testimony and

documentary evidence presented at the Joint Disclosure Statement and Confirmation

Hearing, the Court finds that the holders of Claims and Interests in all Classes will

receive at least as much under the Plan as they would have under a chapter 7 liquidation.

Accordingly, the Plan satisfies the "best interest of creditors" test under section

1129(a)(7) of the Bankruptcy Code.

   U.  <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Classes A, C, D,

E, F and G are unimpaired by the Plan and, accordingly, holders of Claims in such

Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f)

of the Bankruptcy Code.  Class B is impaired by the Plan.  The full amount of the

Secured Debt Claims held by holders of claims in Class B have voted to accept the Plan,

as established by the KCC Declaration, in accordance with 1126(d) of the Bankruptcy

Code.  To the extent the holder of an Interest would be deemed impaired as a result of

any action taken in connection with Section 5.1 of the Plan, the holder of such Interest

shall be deemed classified in a separate class.  Further, in light of such holder's consent to

the filing of the Plan (either in its capacity as a Plan Debtor and proponent of the Plan or as the holder of Interests in a Plan Debtor) and approval of the treatment afforded to holders of Interests hereunder, such holder of Interests shall be deemed to have consented to such treatment.

V.     Treatment of Administrative Expense Claims, Priority Tax Claims, Secured Tax Claims, GGP Administrative Expense Claims and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Expense Claims, Priority Tax Claims, Secured Tax Claims, GGP Administrative Expense Claims and Priority Non-Tax Claims pursuant to Articles 2 and 4 of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

W.     Acceptance By Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). Class B is the only Class of Claims impaired by the Plan.  All holders of Claims in Class B have voted to accept the Plan, as established by the KCC Declaration, in accordance with section 1126(d) of the Bankruptcy Code.  Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

X.     Feasibility (11 U.S.C. § 1129(a)(11)).  The evidence proffered or adduced at the Joint Disclosure Statement and Confirmation Hearing and set forth in supporting declarations (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Plan Debtors being able to meet their financial obligations under the Plan and their businesses in the ordinary course, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the

Plan Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Y.      Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees due and payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing in accordance with the Bankruptcy Code, will be paid on the Effective Date pursuant to section 13.6 of the Plan by the Plan Debtors, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Z.      Continuation of Benefit Plans (11 U.S.C. § 1129(a)(13)).  Section 8.9 of the Plan provides that on and after the Effective Date, except as provided in Section 8.9(b) of the Plan or otherwise provided in this paragraph, all Benefit Plans, if any, entered into or modified before or after the Commencement Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are assumed.  The Plan Debtors' obligations under such plans and programs shall survive confirmation of the Plan, except for (a) executory contracts or Benefit Plans rejected pursuant to the Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (b) executory contracts or employee Benefit Plans that have previously been rejected, are the subject of a motion to reject pending as of the Confirmation Date or have been specifically waived by the beneficiaries of any employee Benefit Plan or contract.  Except as otherwise provided herein, the Plan Debtors shall continue to comply with all Benefit Plans, if any, for the duration of the period for which the Plan Debtors had obligated themselves to provide such benefits and subject to the right of the Plan Debtors to modify or terminate such

Benefit Plans in accordance with the terms thereof.  The DB Pension Plans are ongoing, and will continue after the Effective Date in accordance with their terms.  The Plan Debtors shall (i) satisfy the minimum funding standards prescribed by 29 U.S.C. § 1082 and 26 U.S.C. § 412, (ii) be liable for the payment of any PBGC premiums prescribed by 29 U.S.C. §§ 1306 and 1307, subject to any and all applicable rights and defenses of the Plan Debtors, and (iii) administer the DB Plans in accordance with the provisions of ERISA and the Tax Code.  The foregoing shall not operate to modify or waive the Secured Debt Loan Documents.  Notwithstanding anything in the Plan or anything else in this Confirmation Order, no claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities whatsoever against any entity with respect to the DB Pension Plans shall be released, exculpated, discharged, enjoined, or otherwise affected by the Plan, nor shall the entry of this Confirmation Order constitute the approval of any release, exculpation, discharge, injunction or other impairment of any claims, obligations, suits, judgments, damages, demands, debts, rights, cause of action or liabilities whatsoever against any Person with respect to the DB Pension Plans.

AA.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Plan Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.     The Plan Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Plan Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

CC.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Plan Debtors are each moneyed, business, or commercial corporations, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

DD.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Class B, the only impaired Class under the Plan, has voted to accept the Plan.  Accordingly, section 1129(b) is inapplicable in these Chapter 11 Cases.

EE.     Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan filed in these Chapter 11 Cases for the Plan Debtors, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

FF.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

GG.     Not Small Business Cases (11 U.S.C. § 1129(e)).  These are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**Compliance with Section 1125 of the Bankruptcy Code**

HH.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Court in these Chapter 11 Cases, the Plan Debtors, the Secured Debt Holders, the Creditors' Committee and the Equity Committee, their respective members, directors, officers, employees, representatives, attorneys, financial advisors, investment bankers, agents, restructuring advisors and other professionals, and all other persons involved in

the solicitation process, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code to the greatest extent permissible by law.

## Plan Implementation

II.     The terms of the Plan, including the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications thereof (collectively, the "**Plan Documents**") constitute an integral part of this Confirmation Order.

JJ.     The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, on and after the Confirmation Date, shall bind any holder of a Claim or Interest and such holder's respective successors and assigns, whether or not the Claim or Interest, including any Interest of such holder, is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.  The Plan and the Plan Documents constitute legal, valid, binding and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.

KK.    Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents will apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.  The Plan Debtors, the Creditors' Committee and the Equity Committee, the DIP Lender, the Secured Debt Holders, and all of their respective members, officers, directors, agents, financial advisors, investment bankers, attorneys, employees, equity holders, partners, affiliates, and representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Confirmation Order.

## Executory Contracts and Unexpired Property Documents

LL.    The Plan Debtors have exercised sound business judgment in determining whether to assume or reject each of their executory contracts and unexpired Property Documents pursuant to Article 8 of the Plan.

MM.    The Plan Debtors have cured or provided adequate assurances that the Plan Debtors will cure defaults (if any) under or relating to each of the executory contracts and unexpired Property Documents being assumed under the Plan.

## Exculpations, Injunctions and Releases

NN.    The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation, injunctions and releases set forth in Article 10 of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases set forth in Article 10 of the Plan, if, as has been established here, such provisions (i) are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer material

benefits on the Plan Debtors' estates, (iii) are fair and reasonable and (iv) are in the best interests of the Plan Debtors, their estates and holders of Claims and Interests. Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Joint Disclosure Statement and Confirmation Hearing, this Court finds that the exculpation, injunction and releases set forth in Article 10 of the Plan are consistent with the Bankruptcy Code and applicable law.

## Other Findings

OO.     <u>Intercompany Obligations</u>.  Nothing in this Order or in the provisions for treatment of Intercompany Obligations in the Plan shall be deemed an admission by the Plan Debtors, Other Debtors, Creditors' Committee, Equity Committee or any other party-in-interest with respect to the characterization, validity, priority, enforceability, amount, resolution or satisfaction of the Intercompany Obligations or a determination by this Court of the characterization, validity, priority, enforceability, amount, resolution or satisfaction of the Intercompany Obligations.  Except as set forth in the Secured Debt Loan Documents, all defenses, challenges, offsets, claims, counterclaims and causes of action with respect to the Intercompany Obligations are expressly preserved and unaffected by the Plan.

PP.     <u>Additional Secured Debt Holder Protections</u>.  The Secured Debt Holders have given significant and material consideration to the Plan Debtors in exchange for the terms and conditions of Exhibit B of the Plan with respect to additional Secured Debt Holder protections, which consideration, among other things, made possible the confirmation of a consensual Chapter 11 plan of reorganization under which (i) all other

Creditors of the Plan Debtors are to be paid in full on the Effective Date, and (ii) Interests are reinstated and unaltered.

QQ.     Financial Information.  The financial information, provided in Article VII of the Disclosure Statement, as amended, including the financial projections, contains adequate information, is reasonable, and demonstrates the feasibility of the Plan.

RR.     Retention of Jurisdiction.  The Court may properly retain jurisdiction over the matters set forth in Article 11 of the Plan and section 1142 of the Bankruptcy Code.

SS.     Objections.  All parties have had a full and fair opportunity to litigate all issues raised by objections to confirmation of the Plan, or which might have been raised, and the objections to confirmation have been fully and fairly litigated.

TT.     Rule 54(b) Judgment.  To the extent Rule 54(b) of the Federal Rules of Civil Procedure (as incorporated by Bankruptcy Rule 7054 made applicable to this proceeding pursuant to Bankruptcy Rule 9014) is or may be applicable, there is no just reason for delay of entry of a separate and final judgment confirming the Plan pursuant to section 1129 of the Bankruptcy Code with respect to each of the Plan Debtors.

**The Plan Satisfies Confirmation Requirements**

UU.     Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      Solicitation and Notice.  Notice of the Joint Disclosure Statement and Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Plan Debtors' Chapter 11 Cases and was in compliance with the

provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The

solicitation of votes on the Plan complied with the solicitation procedures in the

Disclosure Statement Order, were appropriate and satisfactory based upon the

circumstances of the Plan Debtors' Chapter 11 Cases, and were in compliance with

the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

2. <u>Confirmation</u>.  The Plan and each of its provisions shall be, and

hereby are, confirmed under section 1129 of the Bankruptcy Code.

3. <u>Adjournment</u>.  The Joint Disclosure Statement and

Confirmation Hearing is adjourned with respect to the Debtors listed in Exhibit B to

this Confirmation Order.

4. <u>Construction</u>.  The rules of construction contained in section

102 of the Bankruptcy Code shall apply to the construction of this Confirmation

Order.

5. <u>Objections</u>.  All objections, responses, statements and

comments in opposition to the Plan, other than those withdrawn with prejudice in

their entirety prior to the Joint Disclosure Statement and Confirmation Hearing or

otherwise resolved on the record of the Joint Disclosure Statement and Confirmation

Hearing and/or herein are overruled for the reasons stated on the record.

6. <u>Binding Effect</u>.  Except as otherwise provided in section

1141(d)(3) of the Bankruptcy Code, on or after entry of this Confirmation Order and

subject to the occurrence of the Effective Date, the provisions of the Plan shall bind

any holder of a Claim or Interest and such holder's respective successors and assigns,

whether or not such Claim or Interest of such holder is impaired under the Plan,

whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

7.      <u>Exhibit B Modification</u>.  The below language shall be added to the <u>Exhibit Bs</u> to the Plan of the Plan Debtors Boise Towne  Plaza L.L.C.; Boulevard Associates; Eden Prairie Mall, LLC; GGP-Knollwood Mall  LP; GGP-Mall of Louisiana, LP; GGP-North Point Inc.; GGP-UC L.L.C.; Gateway Crossing, LLC; Hulen Mall, LLC; Oglethorpe Mall, LLC; Peachtree Mall, LLC; Sikes  Senter, LLC; Southland Mall LP, and Woodbridge Center Property LLC:

(a)      "On or before the later of (a) one hundred twenty (120) days after the Effective Date or (b) the TopCo Emergence: (x) Plan Debtor and Secured Debt Holder shall execute and deliver amendments to the Amended Credit Documents as enumerated in <u>Exhibit 3</u>, in the forms agreed upon in writing by the Plan Debtor and the Secured Debt Holder prior to Confirmation Date, as necessary to (i) modify the Amended Credit Documents so that the "<u>Cash Management System</u>" (as defined in the Loan Modification Agreement) will serve as the Cash Management System under the Amended Credit Documents from and after TopCo Emergence and require the Plan Debtor to deliver periodic reporting and such other information as may be reasonably requested by the Secured Debt Holder with respect to such Cash Management System; (ii) modify the reserve requirements set forth in the Loan Modification Agreement to the extent necessary to permit the use of such Cash Management System and to implement the requirement for the Plan Debtor to fund a new "Dark Anchor Reserve" from and after TopCo Emergence in accordance with the terms and conditions set forth in <u>Exhibit C</u> of the Loan Modification Agreement; and (iii) clarify that in calculating the "<u>Debt Service Coverage Ratio</u>" (as defined in the Loan Modification Agreement), any new or increased amortization payable by the Plan Debtor pursuant to the Amended Note shall be included and no loan constant shall be assumed; and (y) the Plan Debtor shall cause one or more Qualified Guarantors who control the funds on deposit in the concentration accounts

of the Cash Management System to issue a non-recourse carveout guaranty, substantially in the form to be agreed upon by the Plan Debtor and the Secured Debt Holder prior to the Effective Date, for cash sent up to concentration accounts and not applied toward payment of costs and expenses incurred by or on behalf of the Plan Debtor in connection with the ownership, operation, development, use, alteration, repair, improvement, leasing, maintenance and management of the Property, including real estate taxes, insurance premiums, ground lease payments, capital contributions made to or for the benefit of the Plan Debtor, or the Property (collectively, "Property Expenses") by the controlling entity of such concentration accounts at a time when there is sufficient cash flow from the Property for such purpose, provided that such guaranty shall be limited to any accrued and unpaid Property Expenses.

(b)     A "Qualified Guarantor" shall mean any Affiliate (as defined in the Amended Credit Documents) of the Plan Debtor having a minimum net worth of $250 million as calculated immediately after the date that such Affiliate emerges from bankruptcy."

8.     Merger/Dissolution/Consolidation.  Prior to or substantially contemporaneous with the Effective Date, subject to Exhibit B to the Plan and to the Secured Debt Loan Documents, the Plan Debtors may merge, consolidate, convert or dissolve certain Plan Debtor entities.  Following the Effective Date, and without the need for any further Court approval, the Plan Debtors may (a) cause any or all of the Plan Debtors to be merged into or contributed to one or more of the Plan Debtors or non-Debtor Affiliates, dissolved or otherwise consolidated or converted, (b) cause the transfer of assets between or among the Plan Debtors and/or non-Debtor Affiliates, (c) take any actions necessary to effectuate any transactions relating to the Special Consideration Properties (including the transfer thereof) contemplated pursuant to the Plan, the Plan Supplement, and the exhibits or schedules thereto and/or (d) engage in

any other transaction in furtherance of the Plan, as described in further detail in the Disclosure Statement, or take any other and further action in furtherance of the Plan; *provided, however,* that the Plan Debtors shall not cause or engage in any merger, dissolution, consolidation or other transaction in violation of the terms, conditions and limitations set forth in Exhibit B to the Plan or the Secured Debt Loan Documents.

9.      <u>Revesting of Assets (11 U.S.C. § 1141(b), (c))</u>.  As set forth in Section 10.1 of the Plan, as of the Effective Date, all property of the Estates shall revest in the Plan Debtors free and clear of all Claims, Liens, encumbrances or other Interests, including, without limitation, the Mechanics' Lien Claims described in **<u>Exhibit E</u>**, attached hereto and made a part hereof, except as otherwise provided in the Plan or in this Confirmation Order.  From and after the Effective Date, the Plan Debtors may operate their businesses and use, acquire, dispose of property and settle and compromise Claims or Interests without supervision by the Bankruptcy Court and free of any restrictions in the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

10.      <u>Intercompany Obligations</u>.  The treatment of Intercompany Obligations in Section 4.6 of the Plan is approved in its entirety.

11.      <u>Retained Assets</u>.  To the extent that the succession to assets of the Plan Debtors by the Plan Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to the Plan Debtors (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the Plan Debtors with good title to such property, free and clear of all liens, charges, Claims,

encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject the Plan Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including by laws affecting successor or transferee liability.

12.     <u>Objections to Claims</u>.

a.     <u>General</u>.  From and after the Effective Date, objections to, and requests for estimation of, Administrative Expense Claims and Claims against the Plan Debtors may be interposed and prosecuted only by the Plan Debtors; *provided that* only with respect to the Plan Debtors who own the Special Consideration Properties, the respective Secured Debt Holders shall be entitled to request that the Plan Debtors interpose and prosecute an objection against a Claim or Claims asserted against such Plan Debtors and if, after reasonable consultation with the Plan Debtors, the Plan Debtors determine not to interpose and/or prosecute such objection, the respective Secured Debt Holders shall have standing to interpose and/or prosecute such objection. Objections and requests for estimation shall be served on the holders of the Claims against whom such objections or requests for estimation are interposed and with the Bankruptcy Court on or before the Claims Objection Deadline; *provided, however,* the Claims Objection Deadline shall not apply to Intercompany Obligations.  Until the expiration of the Claims Objection Deadline, unless a Claim is expressly Allowed in accordance with the provisions of the Plan (including in Exhibit B), no Claim shall be deemed Allowed; *provided, however,* nothing in the Plan shall prevent the Plan Debtors

from settling or resolving Claims and Administrative Expense Claims in accordance with the procedures set forth in the Plan.

        b.     <u>Existing Litigation Claims</u>.  Pursuant to Section 7.2(b) of the Plan, all Existing Litigation Claims are hereby deemed Disputed Claims unless and until they are liquidated.  Any Existing Litigation Claim that has not been liquidated prior to the date of the Plan and as to which a proof of Claim was timely filed in the Chapter 11 Cases shall be determined and liquidated in the administrative or judicial tribunal in which it is pending on the Confirmation Date or in any administrative or judicial tribunal of appropriate jurisdiction.  Any Existing Litigation Claim determined and liquidated (i) pursuant to a judgment obtained in accordance with Section 7.2(b) and applicable nonbankruptcy law that is a Final Order or (ii) in the alternative dispute resolution or similar proceeding approved by order of the Bankruptcy Court shall be deemed, to the extent applicable an Allowed General Unsecured Claim in such liquidated amount; *provided, however,* subject to Sections 7.7(b) and 7.7(c) of the Plan, for Insured Claims, such amount shall not exceed the liquidated amount of the Claim less the amount paid by the insurer.  Nothing contained herein shall constitute or be deemed a waiver of any Claim, right, or cause of action that the Plan Debtors may have against any Person in connection with, or arising out of, any Existing Litigation Claim, including any rights under section 157(b) of title 28 of the United States Code.

        c.     <u>Mechanics' Lien Claims</u>.  Pursuant to Section 7.2(c) of the Plan, Mechanics' Lien Claims are hereby deemed Disputed Claims if (i) the party primarily obligated on the claim is a third party (including Tenants and sublessees), (ii)

the Mechanics' Lien or Mechanics' Lien Claim is in litigation pending prior to the

Commencement Date or (iii) the Mechanics' Lien or Mechanics' Lien Claim is

identified on the Disputed Mechanics Liens and Claims Schedule.  Pending resolution

of any Disputed Mechanics' Lien Claim by the Court or the satisfaction of the condition

precedent referenced in Section 1.47(ii) of the Plan by the holder of the Mechanics'

Lien Claim, as applicable, the Plan Debtors are hereby entitled to cash collateralize,

cause a title company to insure over or otherwise bond over the Disputed Mechanics'

Lien (whether through a surety bond existing as of the Commencement Date or through

a bond issued after the Commencement Date) in an amount equal to the asserted

Mechanics' Lien Claim (*provided that* with respect to any Disputed Mechanics' Lien

Claim shown on the  Mechanics' Liens and Claims Schedule filed in accordance with

Section 1.47(ii) of the Plan, the amount cash collateralized, insured, or otherwise

bonded shall be the amount agreed between the Plan Debtors and the holder of the

applicable Mechanics' Lien or Mechanics' Lien Claims, as such amount may be

memorialized in a settlement agreement between such Parties) and the Mechanics' Lien

shall be deemed released and the property relating thereto shall be deemed free and clear

of such Mechanics' Lien; *provided that* the interests held by a holder of a Disputed

Mechanics' Lien Claim shall attach to the Mechanics' Lien Cash Collateral or the

Mechanics' Lien Bond with the same validity, extent and priority that existed

immediately prior to the Effective Date or to the extent applicable, the holder of the

Disputed Mechanics' Lien Claim shall be named the beneficiary of any deposit made

with any title insurance company providing title insurance over the Disputed

Mechanics' Lien.  The Plan Debtors shall retain a reversionary interest in any cash

collateral escrow account, insurance deposit, or bond established in accordance with this Section 7.2(c) and shall be entitled to keep any excess funds with respect thereto subject to the rights of the Secured Debt Holder with respect to the applicable Plan Debtor's interest therein, if any. Nothing contained in the Plan shall constitute or be deemed a waiver of any Claim, right, or cause of action that the Plan Debtors may have against any Person in connection with, or arising out of, any Mechanics' Lien Claim, including any rights under section 157(b) of title 28 of the United States Code.

        d. <u>Disputed Priority Tax Claims and Disputed Secured Tax Claims</u>. Disputed Priority Tax Claims and Disputed Secured Tax Claims that become Allowed Priority Tax Claims or Allowed Secured Tax Claims following the Effective Date shall receive the present value of the Allowed Priority Tax Claim or Secured Tax Claim, as applicable, as of the Effective Date plus, from and after the Effective Date, postpetition interest at the rate of interest in the amount prescribed by section 511 of the Bankruptcy Code.

        e. <u>Howard County Claims</u>: Howard County, Maryland timely filed Proof of Claim No. 9128 against Gateway Overlook II Business Trust and Proof of Claim No. 9129 against Gateway Overlook Business Trust (collectively, the "**Howard Co. Claims**"). The Howard Co. Claims are hereby allowed in the aggregate amount of $275,000.00 as a priority tax claim and in the aggregate amount of $330.00 as a general unsecured claim to be paid pursuant to the terms of the Plan. For avoidance of doubt, the $275,000.00 and $330.00 Allowed Howard Co. Claims shall be allocated between Gateway Overlook Business Trust and Gateway Overlook II Business Trust.

f.      <u>Claims Involving Particular Tenants</u>.  Solely with respect to Sterling, Inc., Sterling Jewelers, Inc. and Sterling Jewelers LLC, if no portion of an Administrative Expense Claim or Claim is Disputed between Sterling, Inc., Sterling Jewelers, Inc. or Sterling Jewelers LLC and a specific Plan Debtor, such Plan Debtor shall make a payment or distribution on account of such Administrative Expense Claim or Claim pursuant to the Plan  notwithstanding the fact that another Plan Debtor may dispute another Claim or Administrative Expense Claim of Sterling, Inc., Sterling Jewelers, Inc. or Sterling Jewelers LLC.

g.      Solely with respect to TSA Stores, Inc., if no portion of an Administrative Expense Claim or Claim is Disputed between TSA Stores, Inc. and a specific Plan Debtor, such Plan Debtor shall pay such Administrative Expense Claim or Claim on the Effective Date pursuant to the Plan.  Nothing in  the Plan relieves the Plan Debtors of their obligations under Section 365(d)(3) of the Bankruptcy Code or adversely affects TSA Stores, Inc.'s rights to obtain payment of Administrative Expense Claims and enforce obligations of the Plan Debtors in accordance with Section 365(d)(3) of the Bankruptcy Code

h.      Solely with respect to Limited Stores, LLC and Express, LLC, if no portion of an Administrative Expense Claim or Claim is Disputed between Limited Stores, LLC and a specific Plan Debtor or Express, LLC and a specific Plan Debtor, no dispute with Limited Stores, LLC having any impact upon Express, LLC and vice versa, such Plan Debtor shall make a payment or distribution on account of such Administrative Expense Claim or Claim in accordance with the Plan.

i.    <u>Surety Company Claims</u>.  The Plan Debtors acknowledge that Travelers Casualty and Surety Company of America, Safeco Insurance Company of America, Continental Casualty Company and Hartford Fire Insurance Company (collectively the "**<u>Surety Companies</u>**") are, or may be, holders of Other Secured Claims under the Plan to the extent of the value of their collateral or other rights, including but not limited to those of equitable subrogation, or otherwise as the holders of claims, General Unsecured and otherwise. The Plan shall not and does not prejudice, impair, waive, limit or otherwise affect the respective rights, claims and defenses of the Surety Companies regarding  any bonds, indemnity agreements and the collateral, if any, that secures their claims.  The Plan does not release, compromise, or otherwise affect in any way, the Surety Companies' rights against any indemnitor or third party, whether arising under contract, under statute or by way of assignment or subrogation, equitable or otherwise. The Plan reserves all of the Surety Companies' rights and defenses (including by way of subrogation or any other surety rights or defenses available in law or equity) against any entity or person with respect to any claim arising under the bonds. Similarly, the Plan does not release, compromise, or otherwise affect in any way, the Plan Debtors' right, if any, against the Surety Companies and reserves all of the Plan Debtors' rights and defenses against the Surety Companies.

j.    <u>All Other Claims</u>.  On and after the Effective Date, but until the emergence of the Other Debtors or unless otherwise ordered by this Court, Objections to Claims against the Plan Debtors (other than Administrative Expense Claims) shall be served and filed pursuant to the Court's *Order Pursuant to Bankruptcy Code Section 105 and Bankruptcy Rules 3007 Approving (I) Claim Objection*

*Procedures and (II) Schedule Amendment Procedures* (Docket No. 3582) dated November 19, 2009.

     k.   <u>Resolution of Administrative Expense Claims and Claims</u>. On and after the Effective Date, but until the emergence of the Other Debtors or unless otherwise ordered by this Court, the Plan Debtors shall continue to be bound, and shall abide, by the Claims Objection Procedures Order and shall compromise, settle, otherwise resolve or withdraw any objections to Administrative Expense Claims and Claims against the Plan Debtors and to compromise, settle or otherwise resolve any Disputed Administrative Expense Claims and Disputed Claims against the Plan Debtors subject to either approval of the Bankruptcy Court or any Omnibus Claims Settlement Procedures Order then in effect.

     l.   <u>Estimation of Claims</u>.  The Plan Debtors may at any time request that the Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim asserted against the Plan Debtors pursuant to section 502(c) of the Bankruptcy Code regardless of whether any of the Plan Debtors previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim asserted against a Plan Debtor, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Debtors may pursue supplementary

proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims against the Plan Debtors may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court including an Omnibus Claims Settlement Procedures Order.

13. <u>Record Date for Claim Distributions</u>. The Plan Debtors are hereby entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

14. <u>Unclaimed Distributions</u>. At the expiration of one year from the Effective Date, all unclaimed property or interest in property shall be returned by the Disbursing Agent to the Plan Debtors and shall revert to Plan Debtors, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

15. <u>Assumption or Rejection of Executory Contracts and Unexpired Property Documents</u>.

a. <u>General</u>. Pursuant to Section 8.1 of the Plan, on the Effective Date, and to the extent permitted by applicable law, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all of the Plan Debtors' executory contracts and unexpired Property Documents will be assumed by the Plan Debtors *unless* an executory contract or unexpired Property Document: (i) is identified as part of the Executory Contract and Property Document Rejection Schedule as an agreement being rejected pursuant to the Plan, subject to the provisions of Section 8.1(b) of the

Plan; (ii) is identified as part of the Executory Contract and Property Document Expired Schedule as an agreement that has expired or terminated by operation of law or contract; (iii) is the subject of a motion to reject filed on or before the Effective Date; or (iv) is deemed rejected pursuant to a prior order of the Court. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, unless otherwise agreed by each of the parties to an assumed Executory Contract or unexpired Property Document and except with respect to the cure and subsequent discharge of defaults, as of the Effective Date: (1) all Executory Contracts and unexpired Property Documents that are assumed shall remain in full force and effect for the benefit of each of the parties to the assumed Executory Contracts and unexpired Property Documents, and (2) nothing in the Plan shall modify or limit any right, Claim, defense, or obligation, or release or discharge any right, claim, defense, liability or obligation, in favor of such parties that are contained in the assumed Executory Contracts and unexpired Property Documents and under applicable law; provided, however, that nothing herein shall suspend or negate the provisions of Section 8.1(c) of the Plan or applicable law.

b.       Notwithstanding the foregoing, unless the applicable Secured Debt Holder provides express prior written consent therefor, (i) no ground lease or reciprocal easement agreement shall in any event be included in the Executory Contract and Property Document Rejection Schedule or be the subject of a motion to reject and (ii) no other Executory Contract or Property Document shall be included in the Executory Contract and Property Document Rejection Schedule if the Secured Debt Holder has the right to consent to or approve the termination of such other Executory Contract or Property Document under the Secured Debt Loan Documents or if the

material breach of such Executory Contract or Property Document would be a default or event of default under the Secured Debt Loan Documents.  In the event a Plan Debtor requests a Secured Debt Holder's consent to include on an Executory Contract or Property Document Rejection Schedule a document listed in sections (i) or (ii) of the preceding sentence, such Secured Debt Holder shall notify the Plan Debtor of its decision during the time period specified in the applicable Secured Debt Loan Documents or if no such time period is specified, within five (5) Business Days after receipt of written request for consent.  For the avoidance of doubt, unless otherwise specified in the Section 8.1(a) of the Plan, all executory contracts and unexpired Property Documents between the Plan Debtors and the counterparties to such executory contracts and unexpired Property Documents will be assumed by the Plan Debtors regardless of whether such executory contracts and unexpired Property Documents are listed on the Executory Contract and Property Document Assumption Schedule

      c.     Unless otherwise specified on an Executory Contract and Property Document Schedule, each executory contract or unexpired Property Document listed on such schedule shall include all exhibits, schedules, riders, modifications, amendments, supplements, attachments, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that, in any manner, affects such executory contract or unexpired Property Document, without regard to whether such agreement, instrument or other document is listed on such schedule.

      d.     Nothing in the Plan shall suspend or affect the obligations of the Plan Debtors to cure all defaults as required by section 365(b) of the Bankruptcy Code, and as provided for in Sections 8.2 and 8.4 of the Plan, and in the event of any

inconsistency between the provisions of this paragraph 15(d) of this Confirmation Order and anything in the Plan or this Confirmation Order, this paragraph shall control.

e.   <u>Claims Relating to Executory Contracts and Unexpired Property Documents Rejected Pursuant to the Plan and Bar Date for Rejection Damage Claims</u>.  Proofs of Claim for damages arising from the rejection of an executory contract or unexpired Property Document must be filed with the Bankruptcy Court and served upon the attorneys for the Plan Debtors on a date that is (i) fixed by the Court in the applicable order approving such rejection, or if no such date is specified, thirty (30) days after notice of such rejection, if the executory contract or unexpired Property Document was deemed rejected pursuant to a Final Order of the Court other than this Confirmation Order or (ii) if the executory contract or unexpired Property Document is deemed rejected pursuant to this Confirmation Order, thirty (30) days after the Effective Date and notice of the rejection of the applicable executory contract or unexpired Property Document.  In the event that the rejection of an executory contract or unexpired lease by the Plan Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Plan Debtors, or their properties or interests in property as agents, successors or assigns.

f.   <u>Objection Deadline</u>.  Any counterparty to any agreement identified on an Executory Contract and Property Document Schedule must file any and all objections relating to such schedule, including the proposed cure amount(s) listed in the Executory Contract and Property Document Assumption Schedule (if applicable), on or before 30 days after service of individualized notice of such proposed cure amount or

such counterparty shall be forever barred from asserting and otherwise prosecuting its objection concerning such schedule against any Plan Debtor.

g.      Cure of Defaults and Disputes Related to Cure Amounts. Pursuant to Section 8.2 of the Plan, any monetary amounts required as cure payments on each executory contract or unexpired Property Document to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, (a) by payment of the cure amount in Cash on the Effective Date (or as soon as reasonably practicable thereafter), (b) upon such other terms and dates as the parties to such executory contracts or unexpired Property Documents may agree or as may be provided in a Final Order of the Bankruptcy Court or (c) such other later date as the Bankruptcy Court may order.  Any non-monetary cure required by the Bankruptcy Court to be undertaken by a Plan Debtor shall commence (i) within thirty (30) days following the entry of a Final Order of the Bankruptcy Court, (ii) such other later date as the Plan Debtors and their non-Debtor counterparties may agree or (iii) such other later date as the Bankruptcy Court may order, and the Plan Debtors shall continue pursuit until completion of any non-monetary cure obligations commenced in accordance with subsections (i), (ii), (iii) above. Nothing in Section 8.2 of the Plan shall relieve a Plan Debtor from obtaining the consent of the applicable Secured Debt Holder or Secured Debt Holders to perform a cure in connection with the Plan *provided that* (x) the performance of such cure would otherwise require the Plan Debtor to obtain such Secured Debt Holder's consent under the applicable Secured Debt Loan Documents and (y) notwithstanding the standard of consent set forth in the Secured Debt Loan Documents, the Secured Debt Holder may not unreasonably withhold, condition or

delay such consent unless such cure would have a material adverse effect on such

Secured Debt Holder in which case the Secured Debt Holder may withhold consent in

its sole and absolute discretion.  Any request for consent required pursuant to Section

8.2 of the Plan shall be deemed made upon the filing of, and service to, the applicable

Secured Debt Holder of the Executory Contract and Property Document Assumption

Schedule listing the Executory Contract or Property Document for which consent is

required to be obtained.  Any consent of a Secured Debt Holder required pursuant to

Section 8.2 of the Plan shall be deemed provided unless, on or prior to the Executory

Contract and Property Document Assumption/Rejection Objection Deadline, the

Secured Debt Holder notifies the Plan Debtors in writing of its refusal to provide

consent.  Upon such event, the Plan Debtors shall be entitled to resolve the Secured

Debt Holder's opposition consensually or seek resolution of such matter by this Court.

        h.    <u>Procedures Governing Disputes</u>. Any dispute regarding, or

objection to, (i) the amount of any cure payment or any nonmonetary cure obligations,

(ii) the ability of the Plan Debtors or any assignee to provide "adequate assurance of

future performance" (within the meaning of section 365 of the Bankruptcy Code) under

the agreement to be assumed, (iii) the inclusion of any agreement in any Executory

Contract and Property Document Assumption Schedule, or (iv) any other matter

pertaining to assumption or rejection, shall be subject to the jurisdiction of the

Bankruptcy Court.  The Plan Debtors and the non-Debtor counterparties shall promptly

confer to attempt to resolve any such dispute consensually.  If the parties are unable to

resolve such objection consensually, the Court shall hold a hearing on a date to be set by

the Court.

16.    <u>General Authorization</u>.  On or before the Effective Date, subject to Section 9.1(f) of the Plan, and without any further order or authority, the Plan Debtors and all other Debtors are hereby authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and to take such other actions as may be necessary to effectuate and further evidence the terms and conditions of the Plan, including, but not limited to, filing a notice of discharge of lien or any other affidavits or documents in the applicable property records (with a copy of this Confirmation Order attached and such other information necessary to identify the lien).  The Plan Debtors, all other Debtors, and their respective directors, officers, members, agents, attorneys, financial advisors and investment bankers are authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable state laws (i) to grant, issue, execute, deliver, file, or record any agreement, document, or security, and the documents contained in the Plan Supplement, as modified, amended, and supplemented, in substantially the form included therein, (ii) to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, and (iii) to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, <u>including</u>, without limitation, any action required by the stockholders or directors of the Plan Debtors, <u>including</u>, among other things, (a) all transfers of assets that are to occur pursuant to

the Plan, (b) the incurrence of all obligations contemplated by the Plan and the

making of all distributions under the Plan, (c) the implementation of all settlements

and compromises as set forth in or contemplated by the Plan, (d) taking of all actions

to preserve and provide for the prosecution of the Avoidance Actions as contemplated

by Section 10.10 of the Plan and of all other causes of action, and      (e) entering into

any and all transactions, contracts, leases, instruments, releases, and other documents

and arrangements permitted by applicable law, order, rule or regulation.  The

approvals and authorizations specifically set forth in this Confirmation Order are

nonexclusive and are not intended to limit the authority of any Plan Debtor or other

Debtors or any officer thereof to take any and all actions necessary or appropriate to

implement, effectuate, and consummate any and all documents or transactions

contemplated by the Plan or this Confirmation Order pursuant to section 1142(b) of

the Bankruptcy Code.  Pursuant to section 1142 of the Bankruptcy Code, to the extent

that, under applicable nonbankruptcy law or the rules of any stock exchange, any of

the foregoing actions that would otherwise require approval of the equity holders or

directors (or any equivalent body) of one or more of the Plan Debtors or other

Debtors, such approval shall be deemed to have occurred and shall be in effect from

and after the Effective Date pursuant to the applicable law of the jurisdiction of

incorporation or formation without any requirement of further action by the equity

holders or directors (or any equivalent body) of the Plan Debtors.  On the Effective

Date, or as soon thereafter as is practicable, the Plan Debtors and other Debtors shall,

if required, file any documents required to be filed in such states so as to effectuate

the provisions of the Plan.  Any or all documents contemplated herein shall be

accepted by each of the respective state filing offices and recorded, if required, in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

17.    Plan Supplement.  The documents contained in the Plan Supplement and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Plan Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referenced therein), and the execution, delivery, and performance thereof by the Plan Debtors are authorized and approved.  Without need for further order or authorization of this Court, the Plan Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan.

18.    Directors and Officers of Reorganized Plan Debtors.  The appointment of the initial directors (including the Independent Directors to be selected as provided in Exhibit B to the Plan) of the Reorganized Plan Debtors as disclosed at or prior to the Joint Disclosure Statement and Confirmation Hearing is hereby approved without the necessity for consent or approval of the stockholders, as of and immediately following the Effective Date.  The initial directors of the Reorganized Plan Debtors shall be considered to have taken office at a point in time immediately following the Effective Date.

19.    Exemption from Transfer Taxes.  In accordance with section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity

securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan (including transactions associated with the transfer of any Special Consideration Properties) shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

20. <u>Payment of Statutory Fees</u>. All fees payable pursuant to Section 1930 of title 28 of the United States Code due and payable through the Effective Date shall be paid by or on behalf of a Plan Debtor on or before the Effective Date, and amounts due thereafter shall be paid by or on behalf of the Plan Debtor in the ordinary course of business until the entry of a final decree closing the respective Plan Debtor's Chapter 11 Case. The Administrative Expense Bar Date or any other deadline for filing Claims in these Chapter 11 Cases shall not apply to fees payable by each respective Plan Debtor pursuant to section 1930 of title 28 of the United States Code.

21. <u>Default of Tax Claims</u>. Upon a Plan Debtor's default in making any payment on account of a Priority Tax Claim or Secured Tax Claim, and upon a Government Authority, with written notice and an opportunity to cure such default within 60 days of such notice, the applicable Government Authority may institute a collection action and may pursue all available remedies without further

leave of the Court; provided however, nothing herein shall be deemed to override the jurisdiction of this Court, if any, over such action pursuant to Article 11 of the Plan.

22.     <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

23.     <u>Filing and Recording</u>.  This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under applicable the uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order (including transactions associated with the transfer of any Special Consideration Properties) without payment

of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

24.     <u>Release of Adequate Protection Liens</u>.     From and after the Effective Date, to the extent a holder of a Claim against a Plan Debtor also holds an Adequate Protection Lien, such Adequate Protection Lien shall be deemed to have been released, discharged, waived, and the holder shall have no other claim, cause of action, or other rights with respect thereto, except as provided herein.

25.     In accordance with section 6.7 of the Plan, all Cash currently held in the Main Operating Account attributable to a particular Plan Debtor shall be used to satisfy the Transaction Claims and Emergence Claims against such Plan Debtor.  To the extent of any shortfall in the payment of Emergence Claims, GGP LP shall provide an amount, in Cash, equal to such shortfall, either directly or indirectly, to the applicable Plan Debtor to be distributed to holders of Emergence Claims against such Plan Debtor, which amount shall be offset against any Administrative Expense Claim held by the Plan Debtor against GGP LP and GGP LP shall retain a post-emergence claim against the Applicable Plan Debtor for any amount remitted by GGP LP to or on behalf of the applicable Plan Debtor exceeding any amount offset; <u>provided</u>, <u>however</u>, that with respect to any shortfall in payment of the Transaction Claims, GGP LP may provide an amount, in Cash, equal to such shortfall, either directly or indirectly, to the applicable Plan Debtor to be distributed to holders of the Transaction Claims against such Plan Debtor, which amount shall be offset against any Administrative Expense Claim held by the Plan Debtor against GGP LP and GGP LP shall retain a post-emergence claim against the Applicable Plan Debtor for any

amount remitted by GGP LP to or on behalf of the applicable Plan Debtor exceeding any amount offset.

26.     From the Effective Date to TopCo Emergence, each Plan Debtor shall have an Administrative Expense Claim against GGP LP for (a) any positive balance of its post-petition intercompany account, after offset of all payments made by GGP LP on behalf of that Plan Debtor for Emergence Claims and Transaction Claims pursuant to the Plan or otherwise, plus (b) cash sent up to concentration accounts and not applied toward payment of costs and expenses incurred by or on behalf of the Plan Debtor in connection with the ownership, operation, development, use, alteration, repair, improvement, leasing, maintenance and management of the Property, including real estate taxes, insurance premiums, ground lease payments, reserves, and capital contributions made to or for the benefit of the Plan Debtor, or the Property (collectively, "**Property Expenses**") by the controlling entity of such concentration accounts at a time when there is sufficient cash flow from the Property for such purpose, provided that such Administrative Expense Claim shall be limited to any accrued and unpaid Property Expenses.  Such Administrative Expense Claim shall be treated in accordance with the requirements of sections 503, 507, and 1129(a)(9) in the chapter 11 case of GGP LP.  In accordance with the Loan Documents, each Secured Debt Holder shall have a first priority lien on the Administrative Expense Claim of its respective Plan Debtor.  From and after the Effective Date, GGP LP shall have a post-reorganization claim against the applicable Plan Debtor for any positive balance of GGP LP's post-petition intercompany

account, including any post-reorganization claim created as a result of a shortfall as described in paragraph 26.

27.     <u>Authorization for Debtor Guarantors</u>.  The Debtor Guarantors are authorized, to the extent necessary, to consent to and acknowledge the modifications of the Loan Documents and the obligations thereunder as set forth in the Plan (including Exhibit B); <u>provided</u>, <u>however</u>, that the execution and delivery of any such consent and acknowledgement shall not elevate or alter the status or priority of any claims of the Secured Debt Holders under any Existing Credit Enhancements within the context of the Debtor Guarantors' Chapter 11 Cases.

28.     <u>Discharge of Claims</u>.  Pursuant to Section 10.3 of the Plan, except as provided in the Plan (including in Exhibit B to the Plan) and other than the guarantees issued and related security interests granted pursuant to the DIP Credit Agreement, the rights afforded in and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Plan Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Plan Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims shall be precluded and enjoined from asserting against the Plan Debtors, their successors or assignees or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such

holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

29. <u>Discharge of Plan Debtors</u>. Pursuant to Section 10.4 of the Plan, except as otherwise expressly provided in the Plan (including Exhibit B to the Plan), upon the Effective Date, in consideration of the distributions to be made under the Plan, each holder of a Claim or Interest and any Affiliate of such holder are hereby deemed to have forever waived, released and discharged the Plan Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Plan Debtors.

30. <u>Terms of Injunctions or Stays</u>. Pursuant to Section 10.5 of the Plan, unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

31. <u>Injunction Against Interference With Plan</u>. Pursuant to Section 10.6 of the Plan, upon entry of this Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation and Consummation of the Plan.

32.     The Court finds that the non-debtor releases contained in sections 10.7 and 10.8 of the Plan are justified under the unique circumstances of these Chapter 11 Cases and supported by evidence adduced at the Confirmation Hearing.  The Plan is the result of settlements between the Secured Debt Holders and the Plan Debtors.  The Secured Debt Holders conditioned their willingness to settle on third-party releases of potential claims against them relating to the Chapter 11 Cases and prepetition circumstances relating to the filing of the Chapter 11 Cases and the restructuring of the Secured Debt.  The Plan Debtors likewise conditioned their participation in the settlements on reciprocal third-party releases.

33.     The third-party releases contained in sections 10.7 and 10.8 of the Plan are supported by consideration.  The Plan Debtors are providing consideration by agreeing to pay in full all creditors other than the Secured Debt Holders.  The Secured Debt Holders are providing consideration by agreeing to accept less than payment in full on their claims, allowing full payment of unsecured creditors and leaving equity interests intact.  The GGP Group is providing consideration by providing continued centralized management services and funding distributions and post-emergence cash needs of the Plan Debtors, and furnishing certain guarantees.

34.     The Secured Debt Holders have consented to the releases by voting in favor of the Plan.  Under the unique circumstances of these cases where all other creditors were unimpaired by the Plan and were presumed to accept the Plan, approval of the releases without consent by individual creditors is warranted.

35.     <u>Exculpation</u>.  Pursuant to Section 10.7 of the Plan, as of the
Effective Date, none of the Plan Debtors, the Secured Debt Holders, the Special
Servicers, the Master Servicers, the Equity Committee, the Creditors' Committee, the
DIP Lender, and their respective officers, directors, members, employees,
accountants, financial advisors, investment bankers, agents, restructuring advisors and
attorneys and representatives (but, in each case, solely in their capacities as such)
shall have or incur any liability for any Claim, cause of action or other assertion of
liability for any act taken or omitted to be taken in connection with, or arising out of,
the Plan Debtors' Chapter 11 Cases (including the commencement of the Plan
Debtors' Chapter 11 Cases, the preparation therefor, prepetition negotiations relating
thereto, and any prepetition restructuring work relating thereto), the formulation,
negotiation, dissemination, confirmation, Consummation thereof, administration of
the Plan, property to be distributed under the Plan or any other act or omission in
connection with the Plan Debtors' Chapter 11 Cases, the Plan, the Disclosure
Statement or any contract, instrument, document or other agreement entered into
pursuant thereto through and including the Effective Date; *provided, however*, that
the foregoing shall not affect the liability of any person that otherwise would result
from any such act or omission to the extent such act or omission is determined by a
Final Order to have constituted willful misconduct or gross negligence.  Nothing in
Section 10.7 of the Plan shall limit the liability of the professionals of the Plan
Debtors, the Equity Committee, or the Creditors' Committee, to their respective
clients pursuant to DR 6-102 of the Code of Professional Responsibility, N.Y. Comp.
Codes R. & Regs. tit. 22 section 1120.8 Rule 1.8(h)(l) (2009), and any other statutes,

rules or regulations dealing with professional conduct to which such professionals are subject.

36. <u>Releases.</u> Pursuant to Section 10.8 of the Plan, effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services of, and/or as an integral part of the settlements provided by (a) the present and former directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives of or to the Plan Debtors who acted in such capacities after the Commencement Date; (b) the Creditors' Committee, (c) the Equity Committee, (d) the Master Servicers, (e) the Special Servicers, and (f) the Secured Debt Holders; (x) the Plan Debtors, (y) each direct or indirect holder of a Claim that votes to accept the Plan (or is deemed to accept the Plan) and (z) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each direct or indirect holder of a Claim that does not vote to accept the Plan, and all those claiming by or through any of the foregoing, shall release unconditionally and forever each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Plan Debtors who acted in such capacity after the Commencement Date, the Secured Debt Holders, the Special Servicers, the Master Servicers, the Creditors' Committee, and the Equity Committee, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives (but, in each case, solely in their capacities as such) from any and all Claims, suits, judgments,

demands, debts, rights, causes of action and liabilities whatsoever (other than the rights to enforce the Plan and the contracts, instruments, releases, or other agreements or documents assumed, passed through or delivered in connection with such Plan), whether liquidated or unliquidated, fixed or contingent, known or unknown, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date (including prior to the Initial Commencement Date), relating to the Plan Debtors' Chapter 11 Cases (including the commencement of the Plan Debtors' Chapter 11 Cases, the preparation therefor, prepetition negotiations relating thereto and any prepetition restructuring work relating thereto, pursuit of confirmation of the Plan, Consummation thereof, administration of the Plan, or property to be distributed under the Plan); *provided, however*, that the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence. Nothing in Section 10.8 of the Plan shall limit the liability of the professionals of the Plan Debtors, the Equity Committee, or the Creditors' Committee, to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility, N.Y. Comp. Codes R. & Regs. tit. 22 section 1120.8 Rule 1.8(h)(l) (2009), and any other statutes, rules or regulations dealing with professional conduct to which such professionals are subject. Nothing in Section 10.8 of the Plan shall have any impact on Intercompany Obligations or any other claim or transaction between a Plan Debtor and an Affiliate of the Plan Debtor.

37. <u>Government Releases</u>.  Pursuant to Section 10.9 of the Plan, nothing in the Plan or this Confirmation Order shall effect a release of any claim by any Government Authority of any claim arising under the Tax Code, the environmental laws or any criminal laws of a Government Authority against any Person other than the Plan Debtors; nor shall anything in this Confirmation Order or the Plan enjoin a Government Authority from bringing any claim, suit, action or other proceedings against any Person other than the Plan Debtors for any liability or claim arising under the Tax Code, the environmental laws or any criminal laws of a Government Authority; nor shall anything in this Confirmation Order or the Plan exculpate any Person other than the Plan Debtors from any liabilities arising under the Tax Code, the environmental laws or any criminal laws of a Government Authority.  Nothing in the Plan discharges, releases, precludes, or enjoins (i) environmental liability to any Government Authority that is not a Claim or (ii) any environmental claim of any Government Authority arising on or after the Effective Date; provided that, the Plan Debtors shall have the right to assert that any environmental liability is a Claim that arose on or prior to the Confirmation Date and that such Claim has been discharged and/or released under sections 524 and 1141 of the Bankruptcy Code.  In addition, nothing in the Plan discharges, releases, precludes or enjoins any environmental liability to any Government Authority that any Person would be subject to as the owner or operator of property after the Effective Date. Notwithstanding anything to the contrary contained in the Plan, nothing in the Plan is intended to impair the ability of any Government Authority to assert setoff rights, if any, pursuant to section 553 of the Bankruptcy Code.

38. <u>Retention of Causes of Action/Reservation of Rights</u>. Pursuant to Section 10.10(a), unless otherwise expressly set forth in the Plan (including Exhibit B to the Plan), nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Plan Debtors may have or which the Plan Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Plan Debtors, their officers, directors, or representatives, and (ii) the turnover of any property of the Plan Debtors' estates.

39. <u>Retention of Avoidance Actions</u>. Pursuant to Section 10.10(b) of the Plan and to the extent of applicable law other than any releases granted in the Plan (including those granted in Exhibit B to the Plan), by this Confirmation Order or by a Final Order, as applicable, from and after the Effective Date, the Plan Debtors shall have the right to prosecute any and all avoidance actions, recovery causes of action and objections to Claims under sections 105, 502, 510, 542 through 546, 548 through 551, and 553 of the Bankruptcy Code that belong to the Plan Debtors and any and all avoidance actions, recovery causes of action and objections to Claims under section 547 of the Bankruptcy Code that belong to the Plan Debtors.

40. <u>Reservation of Rights</u>. Pursuant to Section 10.10(c) of the Plan, unless otherwise expressly set forth in the Plan (including Exhibit B to the Plan), nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal

or equitable defense which the Plan Debtors had immediately prior to the Commencement Date, against or with respect to any Claim asserted against a Plan Debtor.  Except as otherwise set forth in the Plan (including Exhibit B to the Plan), the Plan Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of actions, rights of setoff, and other legal or equitable defenses that they had immediately prior to the Commencement Date fully as if the Chapter 11 Cases had not been commenced, and all of the Plan Debtors' legal and equitable rights respecting any such Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

41.     Setoff Rights.  Nothing in the Plan or this Confirmation Order alters in any way a claimant's or the Plan Debtors' valid right to (a) setoff under the Bankruptcy Code or (b) recoupment.

42.     Notice of Entry of Confirmation Order and Occurrence of the Effective Date.  On or before the date that is ten (10) days after occurrence of the Effective Date, the Plan Debtors shall file with the Court and serve by first class mail or overnight delivery service, a notice of the entry of this Confirmation Order and occurrence of the Effective Date, in substantially the form annexed hereto as **Exhibit F** (the "**Confirmation Notice**"), on each of the following at their respective addresses last known to the Plan Debtors:  (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the Committees; (iii) counsel to the Plan Debtors' prepetition secured lenders; (iv) counsel to the Plan Debtors' postpetition lenders; (v) all parties on the Master Service List filed with this Court; (vi) all persons or entities listed in the Plan Debtors' schedules of assets and

liabilities, or any amendments thereto; and (vii) any other known holders of Claims or Interests (collectively, the "**Notice Parties**"); *provided, however*, that the Confirmation Notice shall not be served upon any person or entity to whom the Plan Debtors have mailed other notices during these Chapter 11 Cases that have been returned as undelivered, unless the Plan Debtors have been informed in writing by such person or entity of that person or entity's new address. Such service shall constitute adequate and sufficient notice pursuant to Bankruptcy Rule 2002(f)(7), 2002(i)-(l) and 3020(c) of the confirmation of the Plan, the entry of this Confirmation Order and occurrence of the Effective Date. Within fifteen (15) days after occurrence of the Effective Date, the Plan Debtors shall also publish the Confirmation Notice, with any modifications necessary for publication, once in the national edition of *The Wall Street Journal*.

43. <u>Disbursing Agent</u>. Pursuant to section 6.3 of the Plan, all distributions under the Plan shall be made by a Plan Debtor or Other Debtor as Disbursing Agent or such other entity designated as a Disbursing Agent by the Plan Debtors on or after the Effective Date. A Plan Debtor or Other Debtor acting as Disbursing Agent shall not be required to give any bond, surety, or any other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. If a Disbursing Agent is not one of the Plan Debtors or an Other Debtor, such Person shall obtain a bond or surety for the performance of its duties, and all costs and expenses incurred to obtain the bond or surety shall be borne by the Plan Debtors. Furthermore, the Disbursing Agent shall notify this Court and the U.S. Trustee in writing before terminating any bond or surety that is obtained in connection with

Section I.UU.42 of the Plan.  The Plan Debtors shall inform the U.S. Trustee in writing of any changes to the identity of the Disbursing Agent.

   44. <u>Conditions to Effective Date</u>.  The Effective Date shall not occur, and the Plan shall not become effective, unless and until the conditions set forth in Section 9.1 of the Plan have been satisfied or waived pursuant to Section 9.2 of the Plan.

   45. For purposes of this Confirmation Order, the Secured Debt Holders shall have the right to render the terms and conditions of the Plan null and void in their sole discretion (i) at any time after December 31, 2009, if the Secured Debt Holders satisfy the Performance Condition, but the applicable Plan Debtors do not satisfy the Performance Conditions, and (ii) at any time after January 31, 2010, if the Effective Date has not occurred (the "**<u>Effective Date Deadline</u>**").  The Plan Debtors shall have the right to render the terms and conditions of the Plan null and void in their sole discretion at any time after January 31, 2010, if the Effective Date has not occurred.  As used in this paragraph, the term "Performance Condition" shall mean that the applicable party is ready, willing and able to consummate the transactions contemplated by the Plan.

   46. <u>Authorization to Consummate Plan</u>.  Notwithstanding Bankruptcy Rule 3020(e), and subject to Article 13 of the Plan, the Plan Debtors are authorized to consummate the Plan upon entry of this Confirmation Order.  The Plan Debtors are authorized to execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to them as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

The Plan Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

47.     <u>Effect of Failure of Conditions to Effective Date</u>.  In the event that one or more of the conditions specified in Section 9.1 of the Plan have not occurred or otherwise been waived pursuant to Section 9.2 of the Plan with respect to a particular Plan Debtor, (a) this Confirmation Order as to such Plan Debtor shall be vacated, (b) the Plan Debtor and all holders of Claims and Interests against such Plan Debtor shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (c) the Plan Debtor's obligations with respect to such Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Plan Debtor or any other Person or to prejudice in any manner the rights of the Plan Debtor or any Person in any further proceedings involving the Plan Debtor.

48.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

49.     <u>Amendments and Modifications</u>.  Pursuant to Section 13.4 of the Plan, after the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Plan Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in this Court to

remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or orders of the Court. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder; *provided, however,* that any alterations, amendments or modifications with respect to the treatment of a Secured Debt Holder pursuant to the Plan shall be subject to the consent thereof, which consent shall not be unreasonably withheld if such alteration, amendment or modification does not materially and adversely change the treatment of such Secured Debtor Holder. For the avoidance of doubt, the foregoing shall not effect a waiver of any rights that any party may have with respect to modification of the Plan under section 1127 of the Bankruptcy Code.

50.     <u>Judicial Notice of Docket</u>.  The Court takes judicial notice of, and deems admitted into evidence, the pleadings, declarations, affidavits and documents filed on the docket maintained in the Chapter 11 Cases, including Docket Nos. 3700, 3719, 3720, 3726, 3727, 3731, 3740, 3748, 3751, 3752, 3769, 3772, 3773, 3774, 3775, 3776, 3823, 3824, 3825, 3826, 3829, 3830, 3832, 3837, and including any exhibits, schedules, or addendums attached thereto, and deems such pleadings, declarations, affidavits and documents admitted into evidence.

51. <u>Closing Report</u>.  Pursuant to Local Rule 3022-1, within 14 days following substantial consummation of the Plan, the Plan Debtors shall file and serve upon the U.S. Trustee a closing report.

52. <u>Retention of Jurisdiction</u>.  Upon the Effective Date, this Court shall retain jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Cases, as set forth in Article 11 of the Plan , Exhibit B to the Plan, and section 1142 of the Bankruptcy Code.

53. <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its principles of conflict of laws.

54. <u>Severability</u>.  This Confirmation Order shall constitute a judicial determination and provides that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable in accordance with its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Plan Debtor and its Secured Debt Holder, and (c) non-severable and mutually dependent.

55. <u>Stay of Confirmation Order</u>.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order is hereby waived.  This Confirmation Order shall

take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062.

    56.    <u>Separate Confirmation Orders</u>.  This Confirmation Order is and shall be deemed a separate and final Confirmation Order with respect to each of the Plan Debtors in each Plan Debtor's separate Chapter 11 Case for all purposes.  The Clerk of the Court is directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the Plan Debtors.


Dated: <u>December 15, 2009</u>
       New York, New York

                                        <u>/s/ Allan L. Gropper</u>
                                        THE HONORABLE ALLAN L. GROPPER
                                        UNITED STATES BANKRUPTCY JUDGE