**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**IN RE GENERAL GROWTH PROPERTIES,**
**INC., ET AL.,**                                    **09 Civ. 5508 (JGK)**
                          Debtors.

                                                     **OPINION AND ORDER**
────────────────────────────────

**A&K ENDOWMENT, INC.,**

                          **Appellant,**

            **- against -**

**GENERAL GROWTH PROPERTIES, INC., ET**
**AL.,**

                          **Appellees.**


────────────────────────────────

**JOHN G. KOELTL, District Judge:**

        The appellant, A&K Endowment, Inc. (the "Endowment"),

appeals from an order of the United States Bankruptcy Court for

the Southern District of New York (Allan L. Gropper, J.)

granting a lien to the debtor-in-possession ("DIP") lender to

General Growth Properties, Inc. ("GGP") for certain property in

which the Endowment has a contingent interest.  See In re Gen.

Growth Props., Inc., 412 B.R. 122 (Bankr. S.D.N.Y. 2009).

**I.**

When reviewing an order of the Bankruptcy Court, this Court acts as an appellate court. Accordingly, the Court reviews the Bankruptcy Court's conclusions of law <u>de novo</u> but accepts that court's findings of fact unless they are "clearly erroneous." <u>See</u> Fed. R. Bankr. P. 8013; <u>see also</u> <u>In re Halstead Energy Corp.</u>, 367 F.3d 110, 114 (2d Cir. 2004); <u>Taunton Mun. Lighting Plant v. Enron Corp. (In re Enron Corp.)</u>, 354 B.R. 652, 654 (S.D.N.Y. 2006).

**II.**

On April 16, 2009, GGP, and a number of its debtor affiliates, including The Howard Hughes Corporation and Howard Hughes Properties, Inc. which collectively own the Summerlin master planned community land ("Summerlin"), (collectively, the "Debtors"), filed petitions for bankruptcy under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The individual cases were consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. GGP is the ultimate parent company of approximately 750 Debtor and non-debtor subsidiaries and

affiliates, which own or manage over 200 shopping centers. (Decl. of James A. Mesterharm Pursuant to Local Bankruptcy Rule 1007-2 in Supp. of First Day Motions ¶ 1, Apr. 16, 2009 ("Mesterharm Decl.").)  In addition to the core shopping center business, the Debtors own and develop large-scale master planned communities, including the Summerlin property.  (Mesterharm Decl. ¶ 1.)

The Debtors operate their businesses on an integrated basis with centralized administration, leasing, and management functions to promote operating efficiencies.  (Mesterharm Decl. ¶ 16-18.)  "Accounting, business development, construction, contracting, design, finance, forecasting, human resources and employee benefits, insurance and risk management, property services, marketing, leasing, legal, tax, treasury, and other services are provided or administered centrally for all properties under [GGP's] ownership and management." (Mesterharm Decl. ¶ 17.)

The appellant, A&K Endowment, is a holder of certain equity interests arising under a Contingent Stock Agreement (the "CSA") executed at the time of a merger between The Rouse Company LP, a Debtor, and the assets of the Estate of Howard R. Hughes Jr., which consisted of developed and undeveloped properties, including Summerlin.  (Objection to Entry of Final Order ("Objection") at 2-3.)  GGP acquired The Rouse Company in

November 2004, assuming the obligations to perform all of The
Rouse Company's obligations under the CSA.  (Objection at 3.)

Beginning in January 2009, the Debtors "engaged in a broad,
active and aggressive marketing effort to secure DIP financing
on the most favorable terms available in the current market."
(Hr'g Tr. 76, May 13, 2009 ("Tr.").)  On April 16, 2009, the
Debtors filed a motion seeking approval of debtor-in-possession
financing (the "DIP motion").  In re Gen. Growth Props., 412
B.R. at 123.  The DIP loan was necessary "to assure that [GGP]
can continue to provide integrated leasing, management and
operating services to the properties, pay employees, satisfy
post-petition obligations, and pay the administrative costs of
these chapter 11 cases."  (Mesterharm Decl. ¶ 64.)

On May 7, 2009, the appellant filed an objection to the
Debtor's motion, in which the appellant requested that the
Summerlin property be carved out from the collateral to be
provided to the DIP lender and that, should the DIP motion be
granted, adequate protection be provided to the Endowment.
(Objection at 5.)

At the initial hearing, on May 8, 2009, the Debtors
presented an improved DIP loan, spurring another round of
negotiations and an informal competitive auction where all
interested lenders presented their best and final DIP proposals
to the Debtors, their advisors, the official committee of

unsecured creditors and its advisors, as well as secured

property lenders.  (Tr. 78-79.)

On May 13, 2009, a hearing was held on the Debtor's DIP

motion.  The Debtors advised the Bankruptcy Court that a new DIP

lender, providing different and more favorable financing terms,

had been selected.  (Tr. 28-30.)  The appellant had an

opportunity to present its objections to the proposed DIP loan

and voiced concerns about the interaction of the DIP financing

with the fiduciary obligations set forth in the CSA agreement,

arguing that, under the CSA, "no lien[] can be put on []

Summerlin . . . unless those funds are to be used expressly for

the improvement of that property" and with a reservation of

rights provision.  (Tr. 68-69.)

The Bankruptcy Judge commended the Debtors' efforts to

obtain better financing terms for the DIP loan and stated, "I

appreciate very much that the debtors and the lenders have made

heroic efforts to resolve objections.  A process was undertaken

where the debtors obtained [] the benefits of a better DIP loan

from a business perspective . . . ."  (Tr. 148.)  All remaining

objections, including the appellant's, were heard and overruled.

(Tr. at 147-154.)  With respect to the arguments made by the

appellant at the hearing, the Bankruptcy Court expressly stated,

"[a]s to the position of those creditors who are interested in

the Summerlin properties, obviously they do not have a security

interest.  They are not entitled to adequate protection per se,
and their interests are not being adversely affected in the
bankruptcy sense by the lien being granted to the DIP lender."
(Tr. 154.)

On May 14, 2009, the Bankruptcy Court entered the Final DIP
Order Authorizing Debtors to (A) Obtain Postpetition Secured
Financing Pursuant to Bankruptcy Code Sections 105(a), 362, and
364, (B) Use Cash Collateral and Grant Adequate Protection
Pursuant to Bankruptcy Code Sections 361 and 363[,] and (C)
Repay in Full Amounts Owed Under Certain Prepetition Secured
Loan Agreement (the "Final DIP Order").  See In re Gen. Growth
Props., 412 B.R. at 123.  The court made the following detailed
findings: (i) the Debtors were unable to obtain alternative
financing; (ii) the DIP loan was necessary to preserve the value
of the Debtors' estates; (iii) the DIP loan was necessary to
avoid immediate harm to the Debtors' estates; and (iv) the terms
and conditions of the DIP loan had been negotiated in good faith
and at arms' length between the Debtors and the DIP lender.  Id.
at 125-26.  The DIP loan authorized pursuant to the Bankruptcy
Court's Final DIP Order is a $400 million dollar facility, (Tr.
31), and is secured by, among other things, a first lien on the
properties that previously secured a prepetition bridge loan
made by Goldman Sachs Group, Inc. (the "Goldman Facility").  See
In re Gen. Growth Props., 412 B.R. at 128-34.  After the

Bankruptcy Court entered the Final DIP Order on May 14, 2009, the appellant did not seek or obtain a stay of the order.

The appellees represent that on May 15, 2009, the Debtors closed on the DIP loan. On that date, the DIP lender funded the loan, the Debtors granted liens contemplated by the loan documents and approved by the Bankruptcy Court, and the Goldman Facility was satisfied in full. At oral argument of the appeal, the appellant forthrightly conceded that it had no basis to contest the accuracy of the representation and did not ask the Court to require any further support for the representation. The Court therefore accepts the representation for purposes of this appeal.

The appellant filed a notice of appeal from the Bankruptcy Court's Final DIP Order on May 26, 2009.

### III.

#### A

The appellant, A&K Endowment, Inc., appeals from the Bankruptcy Court's Final DIP Order, entered on May 14, 2009. The appellant objects to a lien being placed on the Summerlin property. As a threshold issue, the appellees argue that the appellant's appeal is moot.

This Court has the power to decide live controversies, "not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Mills v. Green, 159 U.S. 651, 653 (1895). Accordingly, "Article III requires that '[when] an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed.'" Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.), 68 F.3d 26, 30 (2d Cir. 1995) (citing Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)).

Section 364(e) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith . . . unless such authorization . . . [was] stayed pending appeal." 11 U.S.C. § 364(e). Section 364(e) does not expressly require the dismissal of an appeal on the ground of mootness. However, it makes clear that if the statutory requirements are met, any appeal does not affect the validity of the loan or the lien created. In this case, that is precisely the remedy that is sought, namely, invalidating the lien on the Summerlin

property.  Because the relief sought on this appeal cannot be granted, the appeal is moot and should be dismissed.  <u>See Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group, Inc.)</u>, 16 F.3d 552, 562-63 (3d Cir. 1994) (en banc) (appeal from a bankruptcy court order authorizing a post-petition loan to the debtor should be dismissed as moot where the proceeds of the loan have been fully disbursed, although order authorizing another loan was not moot where all the proceeds were not disbursed).

This Court should dismiss an appeal from the Bankruptcy Court as moot "[w]here a lender extended credit in good faith under Section 364, and the authorization appealed from has not been stayed."  <u>White Rose Food v. Gen. Trading Co. (In re Clinton St. Food Corp.)</u>, 170 B.R. 216, 220 (S.D.N.Y. 1994) (citation omitted); <u>see also</u> <u>In re Swedeland</u>, 16 F.3d at 562-63; <u>Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.)</u>, 92 B.R. 38, 51-52 (S.D.N.Y. 1988).  The purpose of § 364(e) "is to overcome parties' reluctance to lend to a bankrupt firm by assuring them that, so long as they are relying in good faith on a bankruptcy judge's approval of the transaction, they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge."  <u>In re Clinton St. Food Corp.</u>, 170 B.R. at 220.

An express finding of good faith by the Bankruptcy Court is required before the protection afforded by Section 364(e) is applicable. In this case, the Bankruptcy Court specifically found that the terms and conditions of the DIP documents were negotiated in good faith, and further found that the terms and conditions of the DIP documents were subject to the protections contemplated in § 364(e) of the Bankruptcy Code. 412 B.R. at 126, 138-39. The Bankruptcy Court's findings that GGP acted in good faith are findings of fact. In re Pan Am Corp., 1992 WL 154200, at *2. As such, they must be accepted unless clearly erroneous. Id. (citing Truck Drivers Local 807 v. Carey Transp., Inc., 816 F.2d 82, 88 (2d Cir. 1987)). "Good faith," as used in 11 U.S.C. § 364(e), is not a defined term. In In re Pan Am Corp., Judge McKenna wrote that "the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." In re Pan Am Corp., 1992 WL 154200, at *4 (citing In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).

Pursuant to this statute, the appellees correctly argue that the appellant's appeal is moot because the appellant did not seek a stay of the Final DIP Order, the Order was entered in good faith, and the proceeds of the DIP loan have been disbursed

and the lien has attached to the Summerlin property.  The Final

DIP Order was authorized pursuant to 11 U.S.C. § 364(c).  The

lien that was granted cannot be affected unless the

authorization has been stayed pending appeal.  11 U.S.C. §

364(e).  The appellant did not seek a stay of the order appealed

from, nor has it advanced any persuasive reason why it could not

have done so.

The appellant has argued that the Summerlin property

constituted a very small proportion of the collateral that was

used to secure the DIP loan and that it would have been

prohibitively expensive to obtain a bond.  However, there is no

such exception in the statute.  Moreover, this argument, if

accepted, would be an invitation to abuse.  It would allow a

party with only a very small interest in property subject to a

lien approved by the Bankruptcy Court to maintain a cloud over a

huge court-approved loan, simply because the appellant's

interest was so small.

In any event, the appellant's argument cannot excuse its

failure even to seek a stay with an appropriate bond before the

Bankruptcy Court.  The parties agreed at the oral argument that

there was nothing that prevented the appellant from seeking a

limited bond before the Bankruptcy Court commensurate with the

limited relief it was allegedly seeking--namely, removing the

lien solely from the Summerlin property.  While the appellees

would have opposed such a stay, there is no reason that the appellant should not at least have sought such a stay and limited bond.

There was a sufficient evidentiary record for the Bankruptcy Court's finding that the DIP loan was entered into in good faith. See In re Gen. Growth Props., 412 B.R. at 126. The testimony of Kenneth A. Buckfire, proffered at the hearing on the Final DIP Order, stated that the terms of the DIP loan were "vigorously negotiated at arm's length and in good faith." (Tr. 81.) The appellant did not examine Mr. Buckfire when given the opportunity to do so by the Bankruptcy Judge. (Tr. 81-82.) Moreover, the appellant does not contend in this appeal that the DIP lender acted in bad faith in connection with the negotiation of the DIP loan or entry of the Final DIP Order. Because the lender extended credit in good faith under § 364 of the Bankruptcy Code, and authorization of such financing by the Bankruptcy Court has not been stayed, under § 364(e), any appeal does not affect the validity of the DIP loan or the lien that was granted. Therefore, because the appellant seeks to remove the lien from the Summerlin property, relief which is unavailable under the statute, the proper course is to dismiss the appeal as moot. Thus, the appellant's appeal must be dismissed. See, e.g., Swedeland, 16 F.3d at 562-63; In re Clinton St. Food Corp., 170 B.R. at 220.

The appellant argues that the appeal is not moot because this Court could provide effective relief by voiding the lien placed on the Summerlin property in the Final DIP Order. That specific relief is barred by the Code. The appellant candidly admitted at the argument of the appeal that it is aware of no case that has created an exception to the specific prohibition in § 364(e) that prohibits affecting a lien with regard to a post-petition loan that has been properly authorized.

The appellant has suggested no form of effective relief other than lifting the lien on the Summerlin property, which is barred by the statute. In any event, equitable principles further bar this appeal. See In re Texaco, 92 B.R. at 45 (finding it inequitable to hear merits of case where appellants failed to pursue available remedies to obtain stay of Confirmation Order and thereby permitted comprehensive change of circumstances to occur). The Court of Appeals for the Second Circuit has held that, in bankruptcy cases, "an appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 143 (2d Cir. 2005). There is a "common-sense notion" with regard to changing a complex bankruptcy court order "that [] piecemeal dismantling . . . in subsequent appeals of individual

transactions is, in practical terms if nothing else, a virtually impossible task." In re Texaco, 92 B.R. at 46.

The Court of Appeals has recognized that bankruptcy appeals may be equitably moot in two situations: when an unstayed order has resulted in a "comprehensive change in circumstances," and when a reorganization is "substantially consummated." Kenton County Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.), 374 B.R. 516, 522 (S.D.N.Y. 2007) (citing Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994)), aff'd, 309 Fed. App'x 455 (2d Cir. 2009); see also Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.), 988 F.2d 322, 325 (2d Cir. 1993) ("Chateaugay I"), and Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 952 (2d Cir. 1993) ("Chateaugay II")). The Court of Appeals has not expressly formulated a test for when a "comprehensive change of circumstances" renders it inequitable to hear an appeal; however, courts have applied the five equitable considerations that can defeat a claim of mootness in the context of "substantial consummation" to be instructive as well in the context of a "comprehensive change of circumstances." See, e.g., Kassover v. Gibson, 02 Civ. 7978, 2003 WL 21222341, at *2 (S.D.N.Y. May 27, 2003), aff'd, 98 Fed.

App'x 30 (2d Cir. 2004); <u>Allstate</u>, 174 B.R. at 889. Those five

circumstances are:

> (a) the court can still order some effective relief; (b)
> such relief will not affect the re-emergence of the debtor
> as a revitalized corporate entity; (c) such relief will not
> unravel intricate transactions so as to knock the props out
> from under the authorization for every transaction that has
> taken place and create an unmanageable, uncontrollable
> situation for the Bankruptcy Court; (d) the parties who
> would be adversely affected by the modification have notice
> of the appeal and an opportunity to participate in the
> proceedings; and (e) the appellant pursue[d] with diligence
> all available remedies to obtain a stay of execution of the
> objectionable order . . . if the failure to do so creates a
> situation rendering it inequitable to reverse the orders
> appealed from.

<u>Chateaugay II</u>, 10 F.3d at 952-53 (alteration in original)

(internal quotation marks and citations omitted); <u>see also</u>

<u>Allstate</u>, 174 B.R. at 889.

This approach "is rooted firmly in sound notions of public

policy, and promotes the orderly administration of estates by

affording finality to the judgments of the bankruptcy court," <u>In</u>

<u>re Texaco</u>, 92 B.R. at 45-46; moreover, it is "especially

pertinent in bankruptcy proceedings, where the ability to

achieve finality is essential to the fashioning of effective

remedies." <u>Chateaugay I</u>, 988 F.2d at 325.

In this case, the loan has been disbursed and the lien has

attached to numerous properties, and the prior lien on the

property receiving the Goldman loan has been released. The

Final DIP Order cannot be altered in the manner the appellant

suggests without impairing the comprehensive terms negotiated

and entered into in the Final DIP Order.  Indeed, as the

appellees point out, removing the lien from the Summerlin

property would be an event of default under the Credit

Agreement.  See In re Gen. Growth Props., 412 B.R. at 225-26

(DIP Credit Agreement, § 11.1(h), attached as Exhibit 1 to

Bankruptcy Court Order).  Removing the Summerlin property from

the scope of the lien would be inequitable because it would undo

collateral on which the DIP financing was made, and threaten to

unravel the intricate DIP financing.  Moreover, the failure to

pursue a stay before the Bankruptcy Court is an important

equitable consideration in concluding that the appellant should

not be allowed to undo the transaction now.  Section 364(e) of

the Bankruptcy Code and equitable principles of jurisprudence

prohibit this type of intervention by the Court, and undoing

these events at this time would be contrary to the Bankruptcy

Code's strong policies favoring finality and settlement.


B


For the sake of completeness, the Court notes that the

appellant's substantive challenges to the Final DIP Order also

fail.  This Court accepts the Bankruptcy Court's findings of
fact unless they are "clearly erroneous."  A finding of fact is
"clearly erroneous when although there is evidence to support
it, the reviewing court on the entire evidence is left with the
definite and firm conviction that a mistake has been committed."
United States v. United States Gypsum Co., 333 U.S. 364, 395
(1948).  Because it was not clearly erroneous for the
Bankruptcy Court to reject the appellant's three central
arguments, the Final DIP Order entered by the Bankruptcy Court
should not be reversed.

First, the appellant claims that the Debtors failed to
prove to the Bankruptcy Court that the financing approved by the
Final DIP Order is necessary to preserve the assets of, or
otherwise provides a benefit to, the estates of the specific
Debtors that hold Summerlin and who were required to grant liens
on their property in favor of the DIP lender.  The appellant
argues that the Debtors failed to make the requisite showing
with respect to the liens imposed upon the Summerlin property in
conjunction with the secured financing approved in the Final DIP
Order.  The appellees respond that the appellant failed to raise
this argument before the Bankruptcy Court and should, thus, be
precluded from raising it before this Court.  The appellant
counters that this issue derives from the basic question of how
the Final DIP Order benefits the estates of the Summerlin

Debtors.  The appellant's argument is without merit, in any event.

Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (1) with priority over any and all administrative expenses as specified in §§ 503(b) or 507(b) of the Bankruptcy Code, (2) secured by a lien on property of the estate that is not otherwise subject to a lien, or (3) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364(c).  "In determining whether to approve such a transaction, the Court acts in its informed discretion." In re Ames Dep't Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

The Debtors established that DIP financing was required to maintain centralized business operations, continue their business uninterrupted and preserve value at each property, including Summerlin.  (Mesterharm Decl. ¶ 64.)  Summerlin, as with all of the Debtor's properties, uses the centralized administrative services of the main debtor, and those administrative services depended on liquidity that could only be obtained through DIP financing.  (See Mesterharm Decl. ¶ 64.) If the appellant contested this evidence, it could have cross-

examined Mesterharm at the hearing, but the appellant failed to do so.  It was not clearly erroneous for the Bankruptcy Court to find that the financing provided by the Final DIP Order was necessary to prevent substantial harm to the Debtors' assets.

Second, the appellant challenges the necessity of repaying the Goldman Facility, arguing that such repayment does not benefit Summerlin.  The appellees argue that the appellant also failed to raise this argument before the Bankruptcy Court and should, thus, be precluded from raising it before this Court. The appellant's argument is once again without merit.

It is true that "proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."  In re Ames Dep't Stores, 115 B.R. at 39.  However, in this case, the Final DIP Order benefits the estate.  The Bankruptcy Court found that "the payment of the Goldman Indebtedness [] reflects the Debtors' exercise of prudent business judgment."  In re Gen. Growth Props., 412 B.R. at 126.  Substantially all of the Debtors' prospective DIP lenders required a first lien on the Goldman collateral.  (See Debtors' Omnibus Reply to Objections to Debtors' Motions for Approval of Debtor in Possession Financing, Use of Cash Collateral and Cash Management System ¶ 68.)  As such, the Goldman loan had to be repaid to allow the Goldman collateral to be used for the DIP loan.  These actions made the

DIP financing possible, which ensured continuous business operations of the Debtors, benefiting the appellant. Therefore, it was not clear error for the Bankruptcy Court to authorize the repayment of the Goldman Facility.

Finally, the appellant claims that requiring the Summerlin Debtors to grant a lien on the Summerlin property to the DIP lender improperly required the Summerlin Debtors to violate their fiduciary and contractual obligations under the CSA. Pursuant to the merger agreement section 6.12, created at the time GGP acquired The Rouse Company, GGP expressly assumed and agreed "to perform the CSA, as successor to [The Rouse Company], in the same manner and to the same extent that [The Rouse Company] would be required to perform it if no such succession had taken place." (Objection at 3.) The appellant argues that section 7.05 of the CSA imposes upon The Rouse Company and, pursuant to Section 6.12 of the merger agreement, GGP, fiduciary duties in its capacity as operator of the properties subject to the CSA. In addition, the appellant argues that section 4.05 of the CSA prohibits the Summerlin Debtors from placing any lien or encumbrance on any of the Hughes assets without approval of the Review Committee.

The appellees correctly point out that the CSA was not designated as part of the Record on appeal, and thus it would be difficult to rely on that document to find clear error by the

Bankruptcy Court.  Moreover, the Bankruptcy Code preempts
prepetition contracts.  See, e.g., In re Enron Corp., 330 B.R.
387, 394 (Bankr. S.D.N.Y. 2005), aff'd, 354 B.R. 652 (S.D.N.Y.
2006) (finding "the fact that [the Debtors'] bankruptcy filing
alters or preempts the Claimant's rights under the contract [at
issue] is a reflection of the overall policy rationale of the
Bankruptcy Code and not a justification for ignoring the plain
language of the [Bankruptcy Code]").  The Bankruptcy Judge
acknowledged this, and found "[i]t is absolutely standard black
letter law that covenants and conditions are inevitably breached
in bankruptcy.  Even agreements designed to govern actions in
bankruptcy are generally unenforceable."  (See Tr. 151.)  Thus,
pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code,
the Bankruptcy Court had the power to "authorize the obtaining
of credit or the incurring of debt . . . secured by lien on
property of the estate that is not otherwise subject to a lien .
. . or secured by a junior lien on property of the estate that
is subject to a lien" and was not constrained by the CSA in
doing so.  11 U.S.C. § 364(c)(2), (3).

Moreover, the appellant's contention that the Final DIP
Order creates a breach of fiduciary duties in connection with
the Summerlin property is without merit.  All of the properties
used the central administrative services of the main debtor, and
those administrative services depended on liquidity that could

only be obtained through DIP financing.  The Bankruptcy Court's

finding that the Final DIP Order was necessary to preserve the

value of and avoid immediate harm to the Debtors' estates was

not clearly erroneous.  See In re Gen. Growth Props., 412 B.R.

at 125.  The appellant's third argument also fails.


## CONCLUSION

The Court has carefully considered all of the parties'

arguments.  To the extent they are not dealt with above, they

are either moot or without merit.  For the reasons explained

above, the appeal from the Bankruptcy Court's Order is **dismissed**

as moot.  The Clerk is directed to close this case.

**SO ORDERED.**

**Dated:     New York, New York
           February 15, 2010**

John G. Koeltl
United States District Judge

22