WEIL, GOTSHAL & MANGES LLP        KIRKLAND & ELLIS LLP
767 Fifth Avenue                  300 North LaSalle
New York, New York 10153          Chicago, Illinois 60654
Telephone: (212) 310-8000         Telephone: (312) 862-2000
Facsimile: (212) 310-8007         Facsimile: (312) 862-2200
Marcia L. Goldstein               James H.M. Sprayregen, P.C.
Gary T. Holtzer                   Anup Sathy, P.C. (*admitted pro hac vice*)
Adam P. Strochak
Stephen A. Youngman (*admitted pro hac vice*)
Sylvia A. Mayer (*admitted pro hac vice*)

Attorneys for Debtors and         Co-Attorneys for Certain Subsidiary
Debtors in Possession             Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                    :
**In re**                           :        **Chapter 11**
                                    :
**GENERAL GROWTH**                  :
**PROPERTIES, INC.,** *et al.*,     :        **Case No. 09-11977 (ALG)**
                                    :
                    **Debtors.**    :        **Jointly Administered**
                                    :
-------------------------------------------------------------x

### NOTICE OF FILING NINETEENTH ADDENDUM TO PLAN SUPPLEMENT TO
### PLAN DEBTORS' JOINT PLAN OF REORGANIZATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

PLEASE TAKE NOTICE that the Plan Debtors[1] hereby file their *Nineteenth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Nineteenth Addendum"). The Nineteenth Addendum amends, supplements, and replaces the Exhibit Bs to the Plans for the Plan Debtors identified therein, and further supplements the *Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 4, 2009 (the "Initial Plan Supplement"), the *First Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 8, 2009 (the "First Addendum"), the *Second Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 9, 2009 (the "Second Addendum"), the *Third Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under*

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 3660], dated December 1, 2009 (as amended, the "Plan").

*Chapter 11 of the Bankruptcy Code*, dated December 9, 2009 (the "<u>Third Addendum</u>"), the *Fourth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 10, 2009 (the "<u>Fourth Addendum</u>"), the *Fifth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 11, 2009 (the "<u>Fifth Addendum</u>"), the *Sixth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 14, 2009 (the "<u>Sixth Addendum</u>"), the *Seventh Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 15, 2009 (the "<u>Seventh Addendum</u>"), the *Eighth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 15, 2009 (the "<u>Eighth Addendum</u>"), the *Amended Ninth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 17, 2009 (the "<u>Ninth Addendum</u>"), the *Tenth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 20, 2009 (the "<u>Tenth Addendum</u>"), the *Eleventh Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 22, 2009 (the "<u>Eleventh Addendum</u>)", the *Twelfth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 22, 2009  (the "<u>Twelfth Addendum</u>"), the *Thirteenth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated December 22, 2009 (the "<u>Thirteenth Addendum</u>"), the *Fourteenth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated  January 19, 2010 (the "<u>Fourteenth Addendum</u>), the *Fifteenth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated February 15, 2010 (the "<u>Fifteenth Addendum</u>"), the *Sixteenth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization*, dated February 24, 2010 (the "<u>Sixteenth Addendum</u>"), the *Seventeenth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization*, dated February 26, 2010 (the "<u>Seventeenth Addendum</u>"), and the *Eighteenth Addendum to Plan Supplement to Plan Debtors' Joint Plan of Reorganization*, dated March 2, 2010 (the "<u>Eighteenth Addendum</u>," and, collectively with the Initial Plan Supplement, the First Addendum, the Second Addendum, the Third Addendum, the Fourth Addendum, the Fifth Addendum, the Sixth Addendum, the Seventh Addendum, the Eighth Addendum, the Ninth Addendum, the Tenth Addendum, the Eleventh Addendum, the Twelfth Addendum, the Thirteenth Addendum, the Fourteenth Addendum, the Fifteenth Addendum, the Sixteenth Addendum, the Seventeenth Addendum, and the Nineteenth Addendum, the "<u>Plan Supplement</u>").

PLEASE TAKE FURTHER NOTICE that, on December 15, 2009, December 23, 2009, January 20, 2010, February 16, 2010, and March 3, 2010, the Bankruptcy Court held hearings to consider confirmation of the Plan, and entered orders confirming the Plan with respect to certain Plan Debtors [Docket Nos. 3915, 4025, 4239, 4394, and 4579].

PLEASE TAKE FURTHER NOTICE that a hearing to consider confirmation of the Plan as to certain additional Plan Debtors shall be held on **March 18, 2010, at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Allan L. Gropper, United States Bankruptcy Judge, in Room 617 of the United States Bankruptcy Court for the Southern District of New

York, One Bowling Green, New York, New York 10004.  This hearing may be continued from time to time without further notice other that the announcement by the Plan Debtors in open court of the adjourned date(s) at the hearing or any continued hearing.

PLEASE TAKE FURTHER NOTICE that the documents contained in the Plan Supplement, a list of which is attached hereto, are integral to and part of the Plan.  The Plan Debtors, subject to the terms of the Plan, reserve the right to alter, amend, modify, or supplement any document in this Plan Supplement.

PLEASE TAKE FURTHER NOTICE that the Plan Supplement may be viewed for free at the website of the Plan Debtors' voting and claims agent, Kurtzman Carson Consultants, LLC ("KCC") at http://www.kccllc.net/GeneralGrowth or for a fee on the Court's website at www.nysb.uscourts.gov.  To access documents on the Bankruptcy Court's website, you will need a PACER password and login, which can be obtained at http://www.pacer.psc.uscourts.gov.  To obtain hard copies of the Plan Supplement, please contact KCC at (888) 830-4665 or by email at ggp_info@kccllc.com.


Dated:  New York, New York
        March 17, 2010

/s/ *James H.M. Sprayregen, P.C.*
Marcia L. Goldstein
Gary T. Holtzer
Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

and

Stephen A. Youngman (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
Telephone:  (214) 746-7700
Facsimile:   (214) 746-7777

and

Sylvia A. Mayer (*admitted pro hac vice*)
Melanie Gray, (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000

Facsimile:  (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

           and

James H.M. Sprayregen, P.C
Anup Sathy, P.C. (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Co-Attorneys for Certain Subsidiary
Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                            :

In re                                       :        Chapter 11

                                            :

GENERAL GROWTH                     :

PROPERTIES, INC., *et al.*,           :        Case No. 09-11977 (ALG)

                                            :

                      Debtors.      :        Jointly Administered

                                            :

----------------------------------------------------------------x


**NINETEENTH ADDENDUM TO PLAN SUPPLEMENT
TO PLAN DEBTORS' JOINT PLAN OF REORGANIZATION
<u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

## INDEX OF PLAN SUPPLEMENT MATERIALS

| SECURED DEBT RELATED DOCUMENTS | | DATE FILED | SUPPLEMENTED OR AMENDED |
|---|---|---|---|
| Exhibit 1 - | Property-Specific Exhibit "B" to the Plan | 12/11/2009 | 12/15/2009 (3); 12/17/2009; 12/20/2009; 12/22/2009 (3); 1/19/2010; 2/15/2010; 2/26/2010; 3/2/2010; 3/17/2010 |
| **CONTRACT RELATED DOCUMENTS** | | | |
| Exhibit 2 - | Executory Contract and Property Document Assumption Schedule | 12/4/2009 | 12/8/2009; 12/9/2009 (2); 12/10/2009; 12/14/2009; 12/17/2009; 12/20/2009; 1/19/2010; 2/24/2010 |
| Exhibit 3 - | Executory Contract and Property Document Rejection Schedule | 12/4/2009 | 12/8/2009; 12/9/2009 (2); 12/10/2009; 12/17/2009; 12/20/2009; 1/19/2010; 2/24/2010 |
| Exhibit 4 - | Executory Contract and Property Document Expired Schedule | 12/4/2009 | 12/8/2009; 12/9/2009 (2); 12/10/2009; 12/14/2009; 12/17/2009; 12/20/2009; 1/19/2010; 2/24/2010 |
| **CORPORATE GOVERNANCE DOCUMENTS** | | | |
| Exhibit 5 - | Forms of Restated Charters, Bylaws, Partnerships, Operating agreements, or Trust Agreements, as applicable to Plan Debtor | 12/10/2009 | |

| | | | |
|---|---|---|---|
| Exhibit 6 - | Plan Debtor's Directors and Officers Following Effective Date | 12/10/2009 | 12/17/2009; 12/20/2009; 1/19/2010; 2/24/2010 |
| Exhibit 7 - | Insiders Employed By Plan Debtor Post Effective Date and Employment Terms | 12/10/2009 | |
| **MISCELLANEOUS** | | | |
| Exhibit 8 - | Disputed Mechanics' Lien Schedule | 12/4/2009 | 12/8/2009; 12/9/2009 (2); 12/10/2009; 12/17/2009; 12/20/2009; 12/22/2009; 1/19/2010; 2/24/2010 |

**EXHIBIT 1**

**<u>PROPERTY-SPECIFIC EXHIBIT "B" TO THE PLAN</u>**

The Plan Debtors expressly reserve the right to alter, amend, modify, or supplement the Property-Specific Exhibit "Bs" to the Plan at any time up to and including the Effective Date.

The Secured Debt Holders shall be treated as set forth on the <u>Exhibit B</u> to the Plan that relates to its specific property, and all terms in such <u>Exhibit B</u> are incorporated by reference in the Plan. If any inconsistency exists between the terms and provisions of <u>Exhibit B</u> to the Plan and those of any part of the Plan, then the terms and provisions of <u>Exhibit B</u> to the Plan shall be controlling.

By this Nineteenth Addendum to the Plan Supplement to the Plan Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, <u>Exhibit B</u> of the Plans for 10000 West Charleston Boulevard, LLC; 1120/1140 Town Center Drive, LLC; and 9901-9921 Covington Cross, LLC is hereby amended and supplemented, and the <u>Exhibit B</u> for the Plan of Beachwood Place Mall, LLC is hereby amended and replaced.

## EXHIBIT B

The following terms apply only to the treatment of those holders of Class B Secured Debt Claims against the above-referenced Plan Debtor as referenced in Section 4.2(b) of the Plan.[1]  If any conflict exists between the terms and provisions of this Exhibit B and those of any other part of the Plan, then the terms and provisions of this Exhibit B shall be controlling. Additional terms agreed upon in the term sheet will be set forth in the exhibits attached hereto.

## ARTICLE I

## CONDITIONS PRECEDENT

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions (in addition to the conditions set forth in Section 9.1 of the Plan) are satisfied in full or waived in accordance with Section 9.2 of the Plan:

(i)      the approval of the board of directors of the Plan Debtor;

(ii)      the approval of the Secured Debt Holders, its credit committees, controlling class representatives, and/or B or junior noteholders, as applicable;

(iii)      the form of documents to be executed on or after the Effective Date, but agreed upon as to form prior to the Confirmation Date shall have been approved by the parties (the "Post-Effective Date Documents");

(iv)      payment of all amounts required to be paid on or before the Effective Date in accordance with Article 4 of the Plan;

(v)      payment of all Deferred Amounts (as defined in Section 2.1 of this Exhibit B) in accordance with Article II of this Exhibit B; and

(vi)      satisfaction of all conditions of effectiveness under the Amended Credit Documents (as defined in Section 2.2 of this Exhibit B).

## ARTICLE II

## ALLOWANCE AND TREATMENT
## OF CLASS B SECURED DEBT CLAIMS

### 2.1    *Allowed Class B Secured Debt Claims*

On the Effective Date, each Secured Debt Claim shall be Allowed in the amount of the outstanding principal balance of the loan, to be referenced in the Loan Modification Agreement (as defined in Section 2.2 of this Exhibit B), plus (i) any accrued and unpaid amortization and (ii) the aggregate amount of all Secured Debt Holder's Expenses that accrue

---

[1]      All capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Plan.

prior to the Effective Date of the Plan ((i) and (ii) collectively, the "Deferred Amounts").  The Plan Debtor shall pay all such Deferred Amounts upon the Effective Date of the Plan.

### 2.2    *Treatment of Class B Secured Debt Claims*

On the Effective Date and in addition to the Deferred Amounts, the Secured Debt Holder shall receive on account of its Allowed Secured Debt Claims (including the Deferred Amounts):  (a) an amended and restated note or notes (the "Amended Note"), which memorializes the new amortization schedule, maintains the current, non-default, non-hyperamortization contract rate of interest that was, or would have been, payable on the loan, taken as a whole, immediately prior to the Plan Debtor's bankruptcy filing, and sets the maturity date as March 3, 2015, in accordance with the schedule attached hereto as Exhibit 1 (the "Amortization and Extended Maturity Date Schedule"), secured by a duly perfected and continuing lien with the same lien priority as of the Commencement Date and subject to Permitted Encumbrances (as defined in the Secured Debt Holder's prepetition loan documents (the "Loan Documents"), as modified by the Loan Modification Agreement), amending and restating the prepetition note(s) that are part of the Loan Documents (collectively, the "Existing Note"), and (b) a loan modification agreement in form mutually acceptable to the Secured Debt Holder and Plan Debtor (the "Loan Modification Agreement") and other amended Loan Documents in the forms agreed upon by the Secured Debt Holder and the Plan Debtor and reflecting terms consistent with the Global Term Sheet attached hereto as Exhibit 2 (together with the Amended Note, the "Amended Credit Documents" and, together with the Loan Documents, the "Secured Debt Loan Documents").

### 2.3    *Acknowledgement of Class B Secured Debt Claims*

The Plan Debtors, on behalf of themselves and all Persons claiming by or through the Plan Debtors, acknowledge that each of the Secured Debt Loan Documents executed in connection with the Secured Debt Claims is the legal, binding and valid obligation of the applicable Plan Debtor and, upon the occurrence of the Effective Date, the applicable Plan Debtor, subject to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and that the Liens on the Collateral securing the Secured Debt Claims are, and following consummation of the transactions contemplated by the Plan, will remain, duly perfected and unavoidable as a continuing lien with the same lien priority as existed on the Commencement Date and subject to Permitted Encumbrances (as defined in the Secured Debt Loan Documents).  Any right to seek the avoidance or subordination of such Lien, pursuant to the Bankruptcy Code or applicable non-bankruptcy law, is irrevocably waived by each of the Plan Debtors on behalf of themselves and all Persons claiming by or through the Plan Debtors. Each of the applicable Plan Debtors does not and, upon the occurrence of the Effective Date, the applicable Plan Debtors will not, have any defenses or offsets (whether by way of setoff, recoupment or otherwise) to the enforceability of the Secured Debt Loan Documents.  Any such defenses or offsets are, effective as of the Confirmation Date but subject to the occurrence of the Effective Date, irrevocably waived by each of the Plan Debtors on behalf of themselves and all Persons claiming by or through the Plan Debtors, and none of the Plan Debtors or any other Person will or may assert such defense (including any right of setoff or recoupment).

## ARTICLE III

## TOPCO EMERGENCE

"TopCo Emergence," as used herein, but referred to in the Loan Modification Agreement as the "Outside Emergence Date," shall mean the earlier of (a) the effective date of confirmed chapter 11 plans of reorganization to be filed by General Growth Properties, Inc. and GGP Limited Partnership (collectively, "TopCo") and (b) December 31, 2010, as the latter date may be extended by the Plan Debtor to March 31, 2011 upon payment to the Secured Debt Holder of an extension fee equal to twenty-five hundredths of a percent (0.25%) of the then current outstanding balance of the Amended Note. Failure of TopCo Emergence to occur by December 31, 2010 (as the same may be extended) shall not constitute an "Event of Default" under the applicable Amended Credit Documents; provided, however, that the failure of any condition, delivery deadline or obligation that must occur with reference to the date of TopCo Emergence will constitute an "Event of Default" if not satisfied within the applicable time frame provided for in the Plan or Amended Credit Documents.

## ARTICLE IV

## FEES AND EXPENSES

**4.1** *Modification Fees*

On the Effective Date, the Plan Debtor shall pay 100 basis points (1.0%) of outstanding unpaid principal balance of the Amended Note ("UPB") as of the Effective Date to the Secured Debt Holder.

**4.2** *Expenses*

(a) The Plan Debtor will reimburse the Secured Debt Holder on the Effective Date, and subsequently as incurred, for all reasonable out of pocket fees, costs and expenses incurred by the Secured Debt Holder in connection with the Chapter 11 Case, Existing Defaults (as defined in the Loan Modification Agreement), Waived Defaults (as defined in the Loan Modification Agreement), modification of the Loan, enforcement of the Secured Debt Holder's rights under the Loan Documents and the Amended Credit Documents and negotiation, drafting and compliance with the Loan Modification Agreement and other Amended Credit Documents, including all reasonable out of pocket attorneys' fees and disbursements incurred by the Secured Debt Holder, title charges and the cost of any appraisal of the Property (as defined in the Loan Modification Agreement) performed on the Secured Debt Holder's behalf, together with all other costs and expenses incurred by or on behalf of the Secured Debt Holder for which Plan Debtor is obligated to reimburse the Secured Debt Holder under the Loan Documents or the Amended Credit Documents (the "Secured Debt Holder's Expenses").

(b) In addition, the Plan Debtor will reimburse the Secured Debt Holder for all of the Secured Debt Holder's Expenses incurred in connection with the modification of the cash management provisions as set forth herein and any other post-modification actions required to ensure compliance with the provisions of the Plan or the requirements of the Amended Credit Documents.

(c)    Except as specifically set forth in the Plan, the Plan Debtor will not be responsible for payment of default interest, late charges, or any other late fees or penalties arising or accruing prior to the Effective Date.

(d)    Any fees and expenses payable by the Plan Debtor shall not be applied to reduce the outstanding indebtedness under the Amended Credit Documents.

## ARTICLE V

## PLAN SUPPORT OBLIGATIONS

(a)    On or before the later of (a) one hundred twenty (120) days after the Effective Date or (b) the TopCo Emergence: (x) Plan Debtor and Secured Debt Holder shall execute and deliver amendments to the Amended Credit Documents as enumerated in Exhibit 2, in the forms agreed upon in writing by the Plan Debtor and the Secured Debt Holder prior to Confirmation Date, as necessary to (i) modify the Amended Credit Documents so that the "Cash Management System" (as defined in the Loan Modification Agreement) will serve as the Cash Management System under the Amended Credit Documents from and after TopCo Emergence and require the Plan Debtor to deliver periodic reporting and such other information as may be reasonably requested by the Secured Debt Holder with respect to such Cash Management System; (ii) modify the reserve requirements set forth in the Loan Modification Agreement to the extent necessary to permit the use of such Cash Management System and to implement the requirement for the Plan Debtor to fund a new "Dark Anchor Reserve" from and after TopCo Emergence in accordance with the terms and conditions set forth in Exhibit C of the Loan Modification Agreement; and (iii) clarify that in calculating the "Debt Service Coverage Ratio" (as defined in the Loan Modification Agreement), any new or increased amortization payable by the Plan Debtor pursuant to the Amended Note shall be included and no loan constant shall be assumed; and (y) the Plan Debtor shall cause one or more Qualified Guarantors who control the funds on deposit in the concentration accounts of the Cash Management System to issue a non-recourse carveout guaranty, substantially in the form to be agreed upon by the Plan Debtor and the Secured Debt Holder prior to the Effective Date, for cash sent up to concentration accounts and not applied toward payment of costs and expenses incurred by or on behalf of the Plan Debtor in connection with the ownership, operation, development, use, alteration, repair, improvement, leasing, maintenance and management of the Property, including real estate taxes, insurance premiums, ground lease payments, capital contributions made to or for the benefit of the Plan Debtor, or the Property (collectively, "Property Expenses") by the controlling entity of such concentration accounts at a time when there is sufficient cash flow from the Property for such purpose, provided that such guaranty shall be limited to any accrued and unpaid Property Expenses.

(b)    A "Qualified Guarantor" shall mean any Affiliate (as defined in the Amended Credit Documents) of the Plan Debtor having a minimum net worth of $250 million as calculated immediately after the date that such Affiliate emerges from bankruptcy.

## ARTICLE VI

## MOST FAVORED NATIONS

### 6.1    *Most Favored Nations Modifications*

In the event that the "most favored nations" proposal that affiliates of the Plan Debtor have provided to the lenders represented by Bryan Cave LLP and Venable LLP (the "<u>MFN Lenders</u>") is triggered, such that the amended loan documents with those MFN Lenders will be amended to address the new terms that triggered such proposal if agreed to by the Secured Debt Holder, then the Loan Documents would be further amended to reflect such new terms if acceptable to the Secured Debt Holder.

### 6.2    *Retention of Jurisdiction*

In addition to any matters set forth in Section 11.1 of the Plan and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction regarding all disputes relating to any matters arising under this Article VI, including disputes in determining the economic impact of agreed economic modified terms and whether the agreed modified economic terms are more favorable than the terms for the Amended Credit Documents.

## ARTICLE VII

## ADDITIONAL SECURED DEBT HOLDER PROTECTIONS

### 7.1    *Revision of Secured Debt Loan Documents Regarding Bankruptcy Remoteness, Automatic Stay, and Other Miscellaneous Provisions.*

As reflected in the Amended Credit Documents or the Post-Effective Date Documents as the case may be, the Loan Documents and the organizational documents of the Plan Debtor will be revised as of the Effective Date to include the following:

(a)    to the extent the Plan Debtor or an equity owner of the Plan Debtor is required to be an SPE Party (as defined in Section 7.2 of this <u>Exhibit B</u>), (i) there shall be at least two duly appointed Independent Directors (as defined in Section 7.3 of this <u>Exhibit B</u>) on the board of managers, directors or trustees, as the case may be, of the SPE Party, (ii) the Secured Debt Holder shall have the right to consent to any new or replacement Independent Directors, which consent (A) shall be deemed given in the event that such Independent Directors are provided by a Corporate Services Provider (as defined in Section 7.4 of this <u>Exhibit B</u>), but the Plan Debtor will be required to give the Secured Debt Holder at least fifteen (15) Business Days' prior written notice of same except to the extent such replacement was effected by the Corporate Services Provider, provided that the Plan Debtor shall instruct any Corporate Services Provider engaged by the Plan Debtor to provide independent notice to the Secured Debt Holder of any such replacement by such Corporate Services Provider, or (B) may not be unreasonably withheld, conditioned, or delayed, in the event that such Independent Directors do not meet the requirements of clause (A); and (iii) the requirement that the Plan Debtors be a Delaware limited liability company and that its organizational documents contain the "<u>Delaware Independent Manager Provisions</u>" (as set forth in Section 7.6 of this <u>Exhibit B</u>);

(b)    upon a "Subsequent Bankruptcy Event" (as defined below in Section 7.7 of this Exhibit B), then (i) relief from the automatic stay arising under section 362 of the Bankruptcy Code shall automatically be granted in favor of the Secured Debt Holder, its successors and/or assigns, and the Plan Debtor (A) shall consent to and not contest or oppose any motion made by the Secured Debt Holder for such relief and shall not seek to reinstate the automatic stay pursuant to section 105 or any other provision of the Bankruptcy Code, and (B) acknowledges and agrees that the occurrence or existence of an Event of Default (as defined in the Loan Modification Agreement) shall, in and of itself, constitute "cause" for relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code, and (ii) the Plan Debtor shall not be entitled to the extension of the maturity date of the Loan provided for in the Loan Modification Agreement; and

(c)    the requirement that upon TopCo Emergence, the ultimate parent of the Plan Debtor (which shall be a Qualified Guarantor) shall deliver one or more non-recourse carveout guarantees (the "Non-Recourse Carveout Guarantees") providing for (i) full recourse to such entity in connection with the Loan following (A) the Plan Debtor filing a voluntary petition, or joining in, soliciting, or instigating the filing of an involuntary petition against the Plan Debtor (other than in participation with the Secured Debt Holder), after the Effective Date under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law; (B) the Plan Debtor failing to secure the dismissal of (within 180 days) an involuntary petition after the Effective Date against the Plan Debtor under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or soliciting or causing to be solicited or petitioning creditors (other than the Secured Debt Holder) for any involuntary petition against the Plan Debtor; (C) the Plan Debtor making a general assignment after the Effective Date for the benefit of creditors, or admitting, in writing or in any legal proceeding, its insolvency or inability to pay its debts as they become due; or (D) intentional interference with the Secured Debt Holder's exercise of remedies, including contesting foreclosure or the assertion of counterclaims, following an Event of Default after the Effective Date, and (ii) liability to the extent of loss for Standard Non-Recourse Carveouts (as defined in Section 7.5 of this Exhibit B), such losses to include the failure to recover all outstanding principal, interest, and other amounts owing to the Secured Debt Holder, including all fees, costs, and expenses (including attorneys' fees and disbursements) resulting from the Plan Debtor's actions.

**7.2    SPE Party**

The term "SPE Party" shall have the meaning ascribed to it in the Loan Modification Agreement.

**7.3    Independent Director**

The term "Independent Director" shall mean an independent manager, independent director or independent trustee, as the case may be, each of which shall be a natural Person who (A) is approved by the Secured Debt Holder, such approval not to be unreasonably withheld, conditioned or delayed or (B) (I) is provided by a Corporate Services Provider (as defined in Section 7.4 of this Exhibit B), and (II) is not at any time while serving as a manager, director or trustee of the Plan Debtor, and has not been at any time during the preceding three (3) years:  (a) a manager, director, trustee (with the exception of serving as an independent manager, independent director or independent trustee, as the case may be, of the Plan Debtor or any Affiliate of the Plan Debtor), stockholder, officer, employee, partner, member, attorney or

counsel of the Plan Debtor or an Affiliate of the Plan Debtor; (b) a creditor, customer, supplier or other Person who derives any of its purchases or revenues from its activities with the Plan Debtor or an Affiliate of the Plan Debtor (except for (i) fees received for acting as an independent manager, independent director or independent trustee of the Plan Debtor or any Affiliate of the Plan Debtor, and (ii) any fees paid by the Plan Debtor or any Affiliate of the Plan Debtor to the Corporate Services Provider for independent manager, director or trustee services or for other miscellaneous corporate services); (c) a Person controlling, controlled by or under common control with the Plan Debtor or any Affiliate of the Plan Debtor or any such stockholder, partner, member, creditor, customer, supplier or other Person (provided that acting as an independent manager, independent director or independent trustee of the Plan Debtor or any Affiliate of the Plan Debtor shall not constitute control of the Plan Debtor or any such Affiliate of the Plan Debtor); or (d) a member of the immediate family by blood, marriage or otherwise, of any such stockholder, director, manager, officer, employee, partner, member, creditor, customer, supplier or other Person.

### 7.4     *Corporate Services Provider*

The term "Corporate Services Provider" shall mean one of the following nationally-recognized companies that provides professional independent managers, directors and/or trustees:  (i) Corporation Services Company, (ii) CT Corporation, (iii) National Registered Agents, Inc., and (iv) Independent Director Services, Inc. (provided that the Plan Debtor and the Secured Debt Holder may add or replace, by mutual agreement, any one or more of the foregoing Corporate Services Providers with other nationally-recognized companies that have been used by other borrowers for commercial mortgage loans).

### 7.5     *Standard Non-Recourse Carveouts*

The term "Standard Non-Recourse Carveouts" shall mean (i) fraud, intentional misrepresentation or willful misconduct, including RICO claims, (ii) misapplication or misappropriation of monies (including failure to pay monies (other than Petty Cash) to Property Lockbox), including insurance proceeds or condemnation awards, (iii) tenant security deposits held by the Plan Debtor not properly applied, returned to tenants when due or delivered to the Secured Debt Holder, any receiver or any person or entity purchasing property in connection with foreclosure, deed in lieu or similar occurrence, (iv) occurrence of transfer other than a permitted transfer, (v) occurrence of ERISA prohibited transaction or the Secured Debt Holder being deemed to be in violation of ERISA regarding the loan, (vi) removal of all or a portion of the property other than (a) obsolete property, (b) in the ordinary course of business, or (c) as otherwise permitted in the Amended Credit Documents, (vii) physical waste to the property resulting from intentional or fraudulent acts or omissions (excluding physical waste resulting from insufficient cash flow from the property), (viii) failure to obey legal requirements (other than a failure resulting from the payment of money) resulting in a forfeiture of a material portion of the property, (ix) material breach of an environmental representation or warranty except with respect to matters disclosed in Phase I or similar reports or other notices delivered to the Secured Debt Holder prior to the Effective Date, (x) breach of SPE provisions to extent such breach results in substantive consolidation, and (xi) failure to obtain the Secured Debt Holder's prior written consent to any subordinate financing or other voluntary lien encumbering the property (other than permitted encumbrances as set forth in the Amended Credit Documents) if required by the terms of the Amended Credit Documents.

### 7.6    *Delaware Independent Manager Provisions*

The term "Delaware Independent Manager Provisions" shall mean the following language:

"Notwithstanding anything to the contrary contained herein, the prior unanimous consent of the Managers of the Company, including both of the Independent Directors, shall be required (provided, however, the Company shall not take any such consent or authorize the taking of any of the actions set forth in this paragraph below unless there are at least two Independent Directors then serving in such capacity) for the Company, or any other Person on behalf of the Company, to:

(i)    file or consent to the filing by or against the company, as debtor, of any bankruptcy, insolvency or reorganization case or proceeding; institute any proceedings by the Company, as debtor, under any applicable insolvency law; or otherwise seek relief for the Company, as debtor, under any laws relating to the relief from debts or the protection of debtors generally;

(ii)    seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for the Company, as debtor, or a substantial portion of the Company's property; or

(iii)    make any assignment for the benefit of creditors of the Company.

In making any determination of whether to consent or authorize a decision contemplated by sections (i), (ii), or (iii) above and pursuant to Section 18-1101(c) of the Delaware Limited Liability Company Act, the duties of the Independent Directors shall, to the extent not prohibited under applicable law, (1) require them to consider only the interest of the Company as a stand-alone business entity; (2) shall not require or permit them to consider the interest of the Member or any direct or indirect beneficial owner of the Member; and (3) require them to consider the interest of the Lender, who shall be a third-party beneficiary to this contractual provision."

### 7.7    *Subsequent Bankruptcy Event*

The term "Subsequent Bankruptcy Event" shall mean (a) the filing of an involuntary petition (by a Person other than the Secured Debt Holder or any Person acting by or on behalf of the Secured Debt Holder) against the Plan Debtor under the Bankruptcy Code and such petition is not dismissed within one hundred eighty (180) days after the date such petition was filed, (b) the filing of a voluntary petition, or the joining in, instigating, or soliciting of an involuntary petition against the Plan Debtor (with a Person other than the Secured Debt Holder or any Person acting by or on behalf of the Secured Debt Holder), by the Plan Debtor under the Bankruptcy Code, (c) the Plan Debtor making a general assignment for the benefit of creditors, (d) the filing of a petition or answer by the Plan Debtor seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (e) the Plan Debtor seeking, consenting to or acquiescing (other than with the Secured Debt Holder or any Person acting by or on behalf of the Secured Debt Holder) in the appointment of a trustee, receiver or liquidator of the Plan Debtor or of all or any substantial part of its properties, or (f) the Plan Debtor admitting, in writing or in any legal proceeding, its

insolvency or inability to pay its debts as they become due or admitting or failing to contest the material allegations of a petition filed against it in any such proceeding.

## ARTICLE VIII

## MONETARY LIENS

The Plan Debtor shall (a) discharge all monetary Liens as and when such Liens are required to be discharged under the Plan and (b) whether or not the Plan requires such Liens to be discharged, pay in full, bond over, cash collateralize or cause a title company to insure over any Mechanics Lien Claim; provided, however, that the Plan Debtor shall have no obligation to remove any monetary Liens to the extent that such Liens constitute Permitted Encumbrances under the Amended Credit Documents.

## ARTICLE IX

## DEADLINE FOR EFFECTIVE DATE

The Secured Debt Holder shall have the right to render the terms and conditions of the Plan null and void in its sole discretion (i) at any time after April 30, 2010, if the Secured Debt Holder satisfies the Performance Condition, but the Plan Debtor does not satisfy the Performance Condition, and (ii) at any time after May 30, 2010, if the Effective Date has not occurred.  The Plan Debtor shall have the right to render the terms and conditions of the Plan null and void in its sole discretion at any time after May 30, 2010, if the Effective Date has not occurred.  As used herein, the term "Performance Condition" shall mean that the applicable party is ready, willing and able to consummate the transactions contemplated by the Plan.

Class B:  327, 335, and 340
Property:  Las Vegas Multiproperty

**EXHIBIT "1" - AMORIZATION AND EXTENDED MATURITY DATE SCHEDULE**

*[******AMORTIZATION AND EXTENDED MATURITY DATE SCHEDULE TO BE FILED AT A LATER DATE WITH THE PLAN SUPPLEMENT, WHICH WILL BE AVAILABLE AT http://www.kccllc.net/generalgrowth******]*

Class B:  327, 335, and 340
Property:  Las Vegas Multiproperty

**EXHIBIT "2" - TERM SHEET**

Class B: 266
Property: Beachwood Place

<u>**EXHIBIT B**</u>

The following terms apply only to the treatment of those holders of Class B Secured Debt Claims against the above-referenced Plan Debtor as referenced in Section 4.2(b) of the Plan.[1] If any conflict exists between the terms and provisions of this <u>Exhibit B</u> and those of any other part of the Plan, then the terms and provisions of this <u>Exhibit B</u> shall be controlling. Additional agreed upon terms are set forth in the exhibits attached hereto and if any conflict exists between the terms and provisions of this <u>Exhibit B</u> or other part of the Plan and those of the Loan Modification Agreement (as defined in Section 2.2 of this <u>Exhibit B</u>) or any of the Post-Effective Date Documents (as defined below), then the terms and provisions of the Loan Modification Agreement or the Post-Effective Date Documents, as applicable, shall be controlling.

**ARTICLE I**

**CONDITIONS PRECEDENT**

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions (in addition to the conditions set forth in Section 9.1 of the Plan) are satisfied in full or waived in accordance with Section 9.2 of the Plan:

(i)  the approval of the board of directors of the Plan Debtor;

(ii)  the approval of the Secured Debt Holders, its credit committees, controlling class representatives, and/or B or junior noteholders, as applicable;

(iii)  receipt of confirmation from any applicable Rating Agency (that currently rates the applicable certificates) that the modifications and waivers set forth herein will not result in the qualification, downgrade, or withdrawal of the ratings currently assigned to the applicable certificates but only to the extent such confirmation is required under any applicable pooling and servicing agreement or any existing loan document in connection with any such modification or waiver;

(iv)  delivery to the Secured Debt Holder of satisfactory REMIC opinions from the Secured Debt Holder's counsel, as and to the extent the Secured Debt Holder deems necessary, the cost of which shall be the Secured Debt Holder's Expenses (as defined in Section 4.3 of this <u>Exhibit B</u>);

(v)  the form of documents to be executed on or after the Effective Date, but agreed upon as to form prior to the Confirmation Date as set forth on <u>Exhibit 3</u> shall have been approved by the parties (the "<u>Post-Effective Date Documents</u>");

(vi)  payment of all amounts required to be paid on or before the Effective Date in accordance with Article 4 of the Plan; and

---

[1]  All capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Plan.

(vii)    satisfaction of all conditions of effectiveness under the Amended Credit Documents (as defined in Section 2.2 of this <u>Exhibit B</u>).

## ARTICLE II

## ALLOWANCE AND TREATMENT
## OF CLASS B SECURED DEBT CLAIMS

**2.1**    *Allowed Class B Secured Debt Claims*

On the Effective Date, each Secured Debt Claim shall be Allowed in the amount of the outstanding principal balance as referenced in the Loan Modification Agreement (as defined in Section 2.2 of this <u>Exhibit B</u>), plus (i) any accrued and unpaid amortization and (ii) the aggregate amount of all Secured Debt Holder's Expenses that accrue prior to the Effective Date of the Plan ((i) and (ii) collectively, the "<u>Deferred Amounts</u>").  The Plan Debtor shall pay all such Deferred Amounts upon the first Payment Date (as defined in the Secured Debt Loan Documents) immediately after the Effective Date of the Plan and thereafter as set forth in the Loan Modification Agreement.

**2.2**    *Treatment of Class B Secured Debt Claims*

On the Effective Date and in addition to the Deferred Amounts, the Secured Debt Holder shall receive on account of its Allowed Secured Debt Claims (including the Deferred Amounts):  (a) amended and restated notes (collectively, the "<u>Amended Notes</u>"), which memorialize the new amortization schedule, maintain the current, non-default, non-hyperamortization contract rate of interest that was, or would have been, payable on the loan, taken as a whole, immediately prior to the Plan Debtor's bankruptcy filing, and set the maturity date as October 6, 2017, in accordance with the schedule attached hereto as Exhibit 1 (the "<u>Amortization and Extended Maturity Date Schedule</u>"), secured by a duly perfected and continuing lien with the same lien priority as of the Commencement Date and subject to Permitted Encumbrances (as defined in the Secured Debt Holder's prepetition loan documents (the "<u>Loan Documents</u>"), as modified by the Loan Modification Agreement (as defined below)), amending and restating the prepetition notes that are part of the Loan Documents (collectively, the "<u>Existing Notes</u>"), and (b) a loan modification agreement in the form attached hereto as <u>Exhibit 2</u> (the "<u>Loan Modification Agreement</u>") and other amended Loan Documents in the forms agreed upon by the Secured Debt Holder and the Plan Debtor as listed in <u>Exhibit 3</u> (together with the Amended Notes, the "<u>Amended Credit Documents</u>" and, together with the Loan Documents, the "<u>Secured Debt Loan Documents</u>").

**2.3**    *Acknowledgement of Class B Secured Debt Claims*

The Plan Debtors, on behalf of themselves and all Persons claiming by or through the Plan Debtors, acknowledge that each of the Secured Debt Loan Documents executed in connection with the Secured Debt Claims is the legal, binding and valid obligation of the applicable Plan Debtor and, upon the occurrence of the Effective Date, the applicable Plan Debtor, subject to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and that the Liens on the Collateral securing the Secured Debt Claims are, and following consummation of the transactions contemplated by the Plan, will remain, duly perfected and unavoidable as a continuing lien with the same lien priority as existed on the

Commencement Date and subject to Permitted Encumbrances (as defined in the Secured Debt Loan Documents).  Any right to seek the avoidance or subordination of such Lien, pursuant to the Bankruptcy Code or applicable non-bankruptcy law, is irrevocably waived by each of the Plan Debtors on behalf of themselves and all Persons claiming by or through the Plan Debtors. Each of the applicable Plan Debtors does not and, upon the occurrence of the Effective Date, the applicable Plan Debtors will not, have any defenses or offsets (whether by way of setoff, recoupment or otherwise) to the enforceability of the Secured Debt Loan Documents.  Any such defenses or offsets are, effective as of the Confirmation Date but subject to the occurrence of the Effective Date, irrevocably waived by each of the Plan Debtors on behalf of themselves and all Persons claiming by or through the Plan Debtors, and none of the Plan Debtors or any other Person will or may assert such defense (including any right of setoff or recoupment).

## ARTICLE III

## TOPCO EMERGENCE

"TopCo Emergence," as used herein, but referred to in the Loan Modification Agreement as the "Outside Emergence Date,"  shall mean the earlier of (a) the effective date of confirmed chapter 11 plans of reorganization to be filed by General Growth Properties, Inc. and GGP Limited Partnership (collectively, "TopCo") and (b) December 31, 2010, as the latter date may be extended by the Plan Debtor to March 31, 2011 upon payment to the Secured Debt Holder of an extension fee equal to twenty-five hundredths of a percent (0.25%) of the then current aggregate outstanding balance of the Amended Notes.  Failure of TopCo Emergence to occur by December 31, 2010 (as the same may be extended) shall not constitute an "Event of Default" under the applicable Amended Credit Documents; provided, however, that the failure of any condition, delivery deadline or obligation  that must occur with reference to the date of TopCo Emergence will constitute an "Event of Default" if not satisfied within the applicable time frame provided for in the Plan or Amended Credit Documents.

## ARTICLE IV

## FEES AND EXPENSES

**4.1**   *Modification Fees*

On the first Payment Date immediately after the Effective Date, the Plan Debtor shall pay 100 basis points (1.0%) of outstanding unpaid principal balance of the Amended Note ("UPB") as of the Effective Date to the Secured Debt Holder.

**4.2**   *Special Servicing Fees*

On the first Payment Date immediately after the Effective Date, the Plan Debtor shall pay the Secured Debt Holder the special servicing fees that accrued under the applicable servicing agreement pursuant to which the "Loan" (as defined in the Loan Modification Agreement) is serviced (the "Servicing Agreement") between the date of the transfer of the Loan to special servicing and the Effective Date (the "Special Servicing Fees").  On a Payment Date promptly following demand by Secured Debt Holder, the Plan Debtor shall pay, as incurred, the Special Servicing Fees for the Loan that accrue under the Servicing Agreement during the period commencing on the first day after the Effective Date and ending on the earlier of (a) the date the

Loan is transferred back to the Master Servicer under and as defined in the Servicing Agreement (the "Master Servicer") and (b) the date that is ninety (90) days after the Effective Date. The Secured Debt Holder shall use commercially reasonable efforts to cause the Loan to be transferred back to the Master Servicer as soon as reasonably practicable. Solely for purposes of this Section 4.2, if the special servicing fee rate applicable to the Loan is greater than 0.25% per annum of the then unpaid principal balance of the Loan, then the special servicing fee rate will be deemed to be 0.25% per annum.

**4.3** *Expenses*

(a)	The Plan Debtor will reimburse the Secured Debt Holder on the first Payment Date immediately after the Effective Date, and on subsequent Payment Dates as incurred, for all reasonable out of pocket fees, costs and expenses incurred by the Secured Debt Holder in connection with the Chapter 11 Case, Existing Defaults (as defined in the Loan Modification Agreement), Waived Defaults (as defined in the Loan Modification Agreement), modification of the Loan, enforcement of the Secured Debt Holder's rights under the Loan Documents and the Amended Credit Documents and negotiation, drafting and compliance with the Loan Modification Agreement, including all reasonable out of pocket attorneys' fees and disbursements incurred by the Secured Debt Holder, rating agency fees, title charges and the cost of any appraisal of the Property (as defined in the Loan Modification Agreement) performed on the Secured Debt Holder's behalf, together with all other costs and expenses incurred by or on behalf of the Secured Debt Holder for which Plan Debtor is obligated to reimburse the Secured Debt Holder under the Loan Documents or the Amended Credit Documents (the "Secured Debt Holder's Expenses").

(b)	In addition, the Plan Debtor will reimburse the Secured Debt Holder for all of the Secured Debt Holder's Expenses incurred in connection with the modification of the cash management provisions as set forth herein and any other post-modification actions required to ensure compliance with the provisions of the Plan or the requirements of the Amended Credit Documents.

(c)	Except as specifically set forth in the Plan, the Plan Debtor will not be responsible for payment of default interest, late charges, or any other late fees or penalties arising or accruing prior to the Effective Date.

(d)	Any fees and expenses payable by the Plan Debtor shall not be applied to reduce the outstanding indebtedness under the Amended Credit Documents.

## ARTICLE V

## MOST FAVORED NATIONS

**5.1**	*Most Favored Nations Modifications*

The most favored nations provisions set forth in Exhibit 4 attached hereto are applicable to the Plan Debtor and are incorporated herein by reference.

Class B: 266
Property: Beachwood Place

**5.2** **_Limitation on Modification_**

The provisions set forth in this Article V shall only apply to the specific Group A Loans and Group B Loans identified in <u>Exhibit 4</u>, as applicable.

**5.3** **_Retention of Jurisdiction_**

In addition to any matters set forth in Section 11.1 of the Plan and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction regarding all disputes relating to any matters arising under this Article V, including disputes in determining the economic impact of agreed economic modified terms and whether the agreed modified economic terms are more favorable than the terms for the Amended Credit Documents.

**ARTICLE VI**

**ADDITIONAL SECURED DEBT HOLDER PROTECTIONS**

**6.1** **_Revision of Secured Debt Loan Documents Regarding Bankruptcy Remoteness, Automatic Stay, and Other Miscellaneous Provisions._**

As reflected in the Amended Credit Documents or the Post-Effective Date Documents as the case may be, the Loan Documents and the organizational documents of the Plan Debtor will be revised as of the Effective Date to include the following:

(a) to the extent the Plan Debtor or an equity owner of the Plan Debtor is required to be an SPE Party (as defined in Section 6.2 of this <u>Exhibit B</u>), (i) there shall be at least two duly appointed Independent Directors (as defined in Section 6.3 of this <u>Exhibit B</u>) on the board of managers, directors or trustees, as the case may be, of the SPE Party, (ii) the Secured Debt Holder shall have the right to consent to any new or replacement Independent Directors, which consent (A) shall be deemed given in the event that such Independent Directors are provided by a Corporate Services Provider (as defined in Section 6.4 of this <u>Exhibit B</u>), but the Plan Debtor will be required to give the Secured Debt Holder at least fifteen (15) Business Days' prior written notice of same except to the extent such replacement was effected by the Corporate Services Provider, provided that the Plan Debtor shall instruct any Corporate Services Provider engaged by the Plan Debtor to provide independent notice to the Secured Debt Holder of any such replacement by such Corporate Services Provider, or (B) may not be unreasonably withheld, conditioned, or delayed, in the event that such Independent Directors do not meet the requirements of clause (A); and (iii) the requirement that the Plan Debtors be a Delaware limited liability company and that its organizational documents contain the "<u>Delaware Independent Manager Provisions</u>" (as set forth in Section 6.6 of this <u>Exhibit B</u>);

(b) upon a "<u>Subsequent Bankruptcy Event</u>" (as defined below in Section 6.7 of this <u>Exhibit B</u>), then (i) relief from the automatic stay arising under section 362 of the Bankruptcy Code shall automatically be granted in favor of the Secured Debt Holder, its successors and/or assigns, and the Plan Debtor (A) shall consent to and not contest or oppose any motion made by the Secured Debt Holder for such relief and shall not seek to reinstate the automatic stay pursuant to section 105 or any other provision of the Bankruptcy Code, and (B) acknowledges and agrees that the occurrence or existence of an Event of Default (as defined in

the Loan Modification Agreement) shall, in and of itself, constitute "cause" for relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code, and (ii) the Plan Debtor shall not be entitled to the extension of the maturity date of the Loan provided for in the Loan Modification Agreement; and

(c)     the requirement that upon TopCo Emergence, the ultimate parent of the Plan Debtor (which shall be a Qualified Guarantor) shall deliver one or more non-recourse carveout guaranties (the "Non-Recourse Carveout Guaranties") providing for (i) full recourse to such entity in connection with the Loan following (A) the Plan Debtor filing a voluntary petition, or joining in, soliciting, or instigating the filing of an involuntary petition against the Plan Debtor (other than in participation with the Secured Debt Holder), after the Effective Date under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law; (B) the Plan Debtor failing to secure the dismissal of (within 180 days) an involuntary petition after the Effective Date against the Plan Debtor under the Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or solicits or causes to be solicited petitioning creditors (other than the Secured Debt Holder) for any involuntary petition against the Plan Debtor; (C) the Plan Debtor making a general assignment after the Effective Date for the benefit of creditors, or admits, in writing or in any legal proceeding, its insolvency or inability to pay its debts as they become due; or (D) intentional interference with the Secured Debt Holder's exercise of remedies, including contesting foreclosure or the assertion of counterclaims, following an Event of Default after the Effective Date, and (ii) liability to the extent of loss for Standard Non-Recourse Carveouts (as defined in Section 6.5 of this Exhibit B), such losses to include the failure to recover all outstanding principal, interest, and other amounts owing to the Secured Debt Holder, including all fees, costs, and expenses (including attorneys' fees and disbursements) resulting from the Plan Debtor's actions.

**6.2**     *SPE Party*

The term "SPE Party" shall have the meaning ascribed to it in the Loan Modification Agreement.

**6.3**     *Independent Director*

The term "Independent Director" shall mean an independent manager, independent director or independent trustee, as the case may be, each of which shall be a natural Person who (A) is approved by the Secured Debt Holder, such approval not to be unreasonably withheld, conditioned or delayed or (B) (I) is provided by a Corporate Services Provider (as defined in Section 6.4 of this Exhibit B), and (II) is not at any time while serving as a manager, director or trustee of the Plan Debtor, and has not been at any time during the preceding three (3) years:  (a) a manager, director, trustee (with the exception of serving as an independent manager, independent director or independent trustee, as the case may be, of the Plan Debtor or any Affiliate of the Plan Debtor), stockholder, officer, employee, partner, member, attorney or counsel of the Plan Debtor or an Affiliate of the Plan Debtor; (b) a creditor, customer, supplier or other Person who derives any of its purchases or revenues from its activities with the Plan Debtor or an Affiliate of the Plan Debtor (except for (i) fees received for acting as an independent manager, independent director or independent trustee of the Plan Debtor or any Affiliate of the Plan Debtor, and (ii) any fees paid by the Plan Debtor or any Affiliate of the Plan Debtor to the Corporate Services Provider for independent manager, director or trustee services or for other miscellaneous corporate services); (c) a Person controlling, controlled by or under common

control with the Plan Debtor or any Affiliate of the Plan Debtor or any such stockholder, partner, member, creditor, customer, supplier or other Person (provided that acting as an independent manager, independent director or independent trustee of the Plan Debtor or any Affiliate of the Plan Debtor shall not constitute control of the Plan Debtor or any such Affiliate of the Plan Debtor); or (d) a member of the immediate family by blood, marriage or otherwise, of any such stockholder, director, manager, officer, employee, partner, member, creditor, customer, supplier or other Person.

### 6.4     *Corporate Services Provider*

The term "<u>Corporate Services Provider</u>" shall mean one of the following nationally-recognized companies that provides professional independent managers, directors and/or trustees: (i) Corporation Services Company, (ii) CT Corporation, (iii) National Registered Agents, Inc., and (iv) Independent Director Services, Inc. (provided that the Plan Debtor and the Secured Debt Holder may add or replace, by mutual agreement, any one or more of the foregoing Corporate Services Providers with other nationally-recognized companies that have been used by other borrowers for commercial mortgage loans).

### 6.5     *Standard Non-Recourse Carveouts*

The term "<u>Standard Non-Recourse Carveouts</u>" shall mean (i) fraud, intentional misrepresentation or willful misconduct, including RICO claims, (ii) misapplication or misappropriation of monies (including failure to pay monies (other than Petty Cash) to Property Lockbox), including insurance proceeds or condemnation awards, (iii) tenant security deposits held by the Plan Debtor not properly applied, returned to tenants when due or delivered to the Secured Debt Holder, any receiver or any person or entity purchasing property in connection with foreclosure, deed in lieu or similar occurrence, (iv) occurrence of transfer other than a permitted transfer, (v) occurrence of ERISA prohibited transaction or the Secured Debt Holder being deemed to be in violation of ERISA regarding the loan, (vi) removal of all or a portion of the property other than (a) obsolete property, (b) in the ordinary course of business, or (c) as otherwise permitted in the Amended Credit Documents, (vii) physical waste to the property resulting from intentional or fraudulent acts or omissions (excluding physical waste resulting from insufficient cash flow from the property), (viii) failure to obey legal requirements (other than a failure resulting from the payment of money) resulting in a forfeiture of a material portion of the property, (ix) material breach of an environmental representation or warranty except with respect to matters disclosed in Phase I or similar reports or other notices delivered to the Secured Debt Holder prior to the Effective Date, (x) breach of SPE provisions to extent such breach results in substantive consolidation, and (xi) failure to obtain the Secured Debt Holder's prior written consent to any subordinate financing or other voluntary lien encumbering the property (other than permitted encumbrances as set forth in the Amended Credit Documents) if required by the terms of the Amended Credit Documents.

### 6.6     *Delaware Independent Manager Provisions*

The term "<u>Delaware Independent Manager Provisions</u>" shall mean the following language:

"Notwithstanding anything to the contrary contained herein, the prior unanimous consent of the Managers of the Company, including both of the Independent Directors, shall be

required (provided, however, the Company shall not take any such consent or authorize the taking of any of the actions set forth in this paragraph below unless there are at least two Independent Directors then serving in such capacity) for the Company, or any other Person on behalf of the Company, to:

    (i)  file or consent to the filing by or against the company, as debtor, of any bankruptcy, insolvency or reorganization case or proceeding; institute any proceedings by the Company, as debtor, under any applicable insolvency law; or otherwise seek relief for the Company, as debtor, under any laws relating to the relief from debts or the protection of debtors generally;

    (ii)  seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official for the Company, as debtor, or a substantial portion of the Company's property; or

    (iii)  make any assignment for the benefit of creditors of the Company.

    In making any determination of whether to consent or authorize a decision contemplated by sections (i), (ii), or (iii) above and pursuant to Section 18-1101(c) of the Delaware Limited Liability Company Act, the duties of the Independent Directors shall, to the extent not prohibited under applicable law, (1) require them to consider only the interest of the Company as a stand-alone business entity; (2) shall not require or permit them to consider the interest of the Member or any direct or indirect beneficial owner of the Member; and (3) require them to consider the interest of the Lender, who shall be a third-party beneficiary to this contractual provision."

  **6.7**  *Subsequent Bankruptcy Event*

    The term "<u>Subsequent Bankruptcy Event</u>" shall mean (a) the filing of an involuntary petition (by a Person other than the Secured Debt Holder or any Person acting by or on behalf of the Secured Debt Holder) against the Plan Debtor under the Bankruptcy Code and such petition is not dismissed within one hundred eighty (180) days after the date such petition was filed, (b) the filing of a voluntary petition, or the joining in, instigating, or soliciting of an involuntary petition against the Plan Debtor (with a Person other than the Secured Debt Holder or any Person acting by or on behalf of the Secured Debt Holder), by the Plan Debtor under the Bankruptcy Code, (c) the Plan Debtor making a general assignment for the benefit of creditors, (d) the filing of a petition or answer by the Plan Debtor seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (e) the Plan Debtor seeking, consenting to or acquiescing (other than with the Secured Debt Holder or any Person acting by or on behalf of the Secured Debt Holder) in the appointment of a trustee, receiver or liquidator of the Plan Debtor or of all or any substantial part of its properties, or (f) the Plan Debtor admitting, in writing or in any legal proceeding, its insolvency or inability to pay its debts as they become due or admitting or failing to contest the material allegations of a petition filed against it in any such proceeding.

## ARTICLE VII

## RATING AGENCIES

The Plan Debtor shall reasonably cooperate with the Secured Debt Holder to make disclosures requested in connection with rating agency review of the Amended Credit Documents.

## ARTICLE VIII

## MONETARY LIENS

The Plan Debtor shall (a) discharge all monetary Liens as and when such Liens are required to be discharged under the Plan and (b) whether or not the Plan requires such Liens to be discharged, pay in full, bond over, cash collateralize or cause a title company to insure over any Mechanics Lien Claim; provided, however, that the Plan Debtor shall have no obligation to remove any monetary Liens to the extent that such Liens constitute Permitted Encumbrances under the Amended Credit Documents.

## ARTICLE IX
## DEADLINE FOR EFFECTIVE DATE

The Secured Debt Holder shall have the right to render the terms and conditions of the Plan null and void in its sole discretion (i) at any time after April 30, 2010, if the Secured Debt Holder satisfies the Performance Condition, but the Plan Debtor does not satisfy the Performance Condition, and (ii) at any time after May 30, 2010, if the Effective Date has not occurred.  The Plan Debtor shall have the right to render the terms and conditions of the Plan null and void in its sole discretion at any time after May 30, 2010, if the Effective Date has not occurred.  As used herein, the term "Performance Condition" shall mean that the applicable party is ready, willing and able to consummate the transactions contemplated by the Plan.

Class B:  266
Property:  Beachwood Place

# EXHIBIT "1" - AMORTIZATION AND EXTENDED MATURITY DATE SCHEDULE

*[******AMORTIZATION AND EXTENDED MATURITY DATE SCHEDULE TO BE FILED AT A LATER DATE WITH THE PLAN SUPPLEMENT, WHICH WILL BE AVAILABLE AT http://www.kccllc.net/generalgrowth******]*

## EXHIBIT "2" - LOAN MODIFICATION AGREEMENT

*[******LOAN MODIFICATION AGREEMENT TO BE FILED AT A LATER DATE WITH THE PLAN SUPPLEMENT, WHICH WILL BE AVAILABLE AT http://www.kccllc.net/generalgrowth******]*

**EXHIBIT "3" POST-EFFECTIVE DATE DOCUMENTS**

*[\*\*\*\*\*\*DOCUMENTS TO BE AGREED AS TO FORM ON OR PRIOR TO THE
CONFIRMATION DATE, SOME OF WHICH MAY BE FILED WITH THE PLAN
SUPPLEMENT, WHICH WILL BE AVAILABLE AT
http://www.kccllc.net/generalgrowth \*\*\*\*\*\*\*]*

Amended and Restated Notes

Amendment to Mortgage

Dark Anchor Guaranty

Amended and Restated Cash Management Agreement

Non-Recourse Carveout Guaranty

Deposit Account and Control Agreements (to the extent required)

Subsequent Amendment to Amended Credit Documents to incorporate new CM system, and new
DSCR triggers

Cash Management Guaranty

Amendment to Assignment of Leases and Rents

## EXHIBIT "4" - MOST FAVORED NATIONS PROVISIONS

### *[******FILED UNDER SEAL*******]*