| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP | KIRKLAND & ELLIS LLP |
| 767 Fifth Avenue | 300 North LaSalle |
| New York, New York 10153 | Chicago, Illinois 60654 |
| Telephone: (212) 310-8000 | Telephone: (312) 862-2000 |
| Facsimile: (212) 310-8007 | Facsimile: (312) 862-2200 |
| Marcia L. Goldstein | James H.M. Sprayregen, P.C. |
| Gary T. Holtzer | Anup Sathy, P.C. |
| Adam P. Strochak | |
| Stephen A. Youngman (*admitted pro hac vice*) | |
| Sylvia A. Mayer (*admitted pro hac vice*) | |
| | |
| Attorneys for Reorganized Debtors | Co-Attorneys for Certain Subsidiary Reorganized Debtors |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                                :
**In re**                                                       :   **Chapter 11**
                                                                :
**GENERAL GROWTH**                                              :
**PROPERTIES, INC.**, *et al.*,                                 :   **Case No. 09-11977** (**ALG**)
                                                                :
            **Reorganized Debtors.**                            :   **Jointly Administered**
                                                                :
---------------------------------------------------------------x

**SUPPLEMENTAL STATEMENT BY REORGANIZED DEBTORS**
**IN CONNECTION WITH THE OBJECTION**
**OF THE COMPTROLLER OF THE STATE OF**
**NEW YORK, AS TRUSTEE OF THE COMMON RETIREMENT FUND**
**TO CURE AMOUNT IN CONNECTION WITH ITS CLAIM**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

South Street Seaport Limited Partnership, its parent, General Growth Properties,

Inc. ("**GGP**"), and their reorganized debtor affiliates (collectively, "**General Growth**" or the

"**Debtors**" or the "**Reorganized Debtors**"),[1] submit this supplemental statement (the

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, was originally filed with the Court at Docket No. 593 and is also available for free online at www.kccllc.net/GeneralGrowth. The Debtors identified therein are now Reorganized Debtors.

"**Statement**") in connection with *Objection of the Comptroller of the State of New York as Trustee of the Common Retirement Fund to Cure Amount In Connection With Its Claim,* dated October 7, 2010 [Docket No. 6121] (the "**Objection**") and the *Reply to GGP's Response to Objection of the Comptroller of the State of New York as Trustee of the Common Retirement Fund to Cure Amount In Connection With Its Claim,* dated February 22, 2011 [Docket No. 6712], (the "**Reply**") filed by the Comptroller of the State of New York as Trustee of the Common Retirement Fund (the "**NYSCRF**"), lender under that certain Promissory Note dated February 8, 2008 (the "**Homart Note**").  In support of the Statement, the Reorganized Debtors respectfully represent as follows:[2]

      1.     At a status conference conducted before this Court on February 8, 2011, the Reorganized Debtors advised the court that the parties had reached an agreement in principle concerning the request by NYSCRF for payment of default interest on the Homart Note, which was cured and reinstated in connection with the TopCo Plan.  The Reorganized Debtors further advised the Court that the agreement was subject to final approval by the NYSCRF, pending which the parties agreed to adjourn the disputes to a hearing to be conducted on February 24, 2011.

      2.     During the week of February 14, 2011, the NYSCRF advised the Reorganized Debtors that the agreement was not approved and that it desired to continue to litigate its disputes concerning default interest.  On February 22, 2011, NYSCRF filed the Reply raising, for the first time, an argument that section 1123(d) of the Bankruptcy Code requires payment of postpetition interest at the default rate under the Homart Note (the "**Default Rate**") in a situation where it is undisputed that the only asserted "default" under the note was triggered

---

[2] Terms not otherwise defined herein shall have the meaning ascribed to them in the TopCo Plan (as defined below).

through an *ipso facto* clause by the filing of the chapter 11 cases. NYSCRF's newly-offered interpretation stretches section 1123(d) far beyond its language and the legislative intent behind its 1994 enactment. Nothing speaks more clearly about the lack of merit in NYSCRF's newfound theory than the simple fact that it did not even cite this 17-year-old section of the Bankruptcy Code in its original objection papers. Section 1123(d) of the Bankruptcy Code, in actuality, confirms that NYSCRF is not entitled to interest at the Default Rate.

3. Specifically, section 1123(d) provides, "Notwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Enacted in 1994, the legislative history of section 1123(d) clarifies that the purpose of section 1123(d) was to overrule the Supreme Court's decision in *Rake v. Wade,* 508 U.S. 464 (1993), which held that the Bankruptcy Code required compound interest be paid by debtors defaulting on their mortgage notwithstanding applicable state law. Congress enacted section 1123(d) so as to ensure that a creditor would not receive "a court contrived windfall." 140 Cong. Rec. H. 10,770 (October 4, 1994). To that end, Congress further clarified that the purpose of section 1123(d) was to ensure that "a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred." *Id.* NYSCRF cannot dispute that if the "default" of the debtor's chapter 11 filing had not occurred, there is no circumstance under which the Reorganized Debtors would have been required to pay interest at the Default Rate under the Homart Note (*i.e.*, the Homart Note was not otherwise in default, had not matured prepetition, nor had it been accelerated by NYSCRF prepetition).

US_ACTIVE:\43638890\03\47658.0008                      3

4. Interpreting section 1123(d) of the Bankruptcy Code, courts have held that payment of postpetition interest at the default rate is not required *even where* the debtor had defaulted prepetition. In *In re Schatz,* 426 B.R. 24 (Bankr. D.N.H. 2009), the debtor filed a plan pursuant to which he proposed to cure and reinstate an impaired secured creditor's claim by deaccelerating the obligations owed to the creditor (which had become delinquent prepetition), curing the arrearages, and paying the claim at the original non-default contractual rate. The creditor objected to the proposed treatment contending that it was entitled to default interest under section 1123(d). The court concluded that, under section 1123(d), the creditor was entitled to collect the default rate for the prepetition arrearage, but not the postpetition arrearage. The court reasoned that it would be inequitable to award interest on the postpetition arrearage at the default rate when the creditor would be recovering costs and attorneys' fees pursuant to section 506(b). Further, it stated that "awarding [the creditor] default interest for the post-petition arrearage would go against the Bankruptcy Code's commitment to providing debtors with a 'fresh start.' In accordance with § 1123(d) and § 506(b), the Court finds that the Debtor may "cure" and "reinstate" [the creditor's] loans under 1123(d) over the life of the Plan, and [the creditor] is not entitled to the default interest on its claim for postpetition arrearage." *Id.* at 28. Tellingly, even under a set of circumstances whereby the debtor had defaulted prepetition, he was not obligated to "cure" postpetition arrearages at the default rate.

5. NYSCRF argues that under *In re Moody Nat'l Houston H, LLC,* 426 B.R. 667 (Bankr. S.D. Tex. 2010), the court must award NYSCRF interest at the Default Rate. However, in *In re Moody,* the debtor had defaulted prepetition on its note, which had, in turn, been accelerated prepetition. *See id.* at 669. At the time the creditor's claim came into the estate, interest at the default rate already was due and owing. The court concluded that because

the default rate already had been in effect prepetition, section 1123(d) required payment of the both the prepetition and postpetition interest at the default rate. Indeed, the *In re Moody* decision differs from that of *In re Schatz,* but in each case, a default had existed prepetition. The defaults at issue in those cases did not stem solely from the debtor's bankruptcy filing.

6.  The only other case NYSCRF cites in support of its section 1123(d) argument, *K&J Properties,* is similarly distinguishable because the loan there had matured *before* commencement of the bankruptcy and was not cured and reinstated by the plan. *See In re K&J Properties, Inc.,* 338 B.R. 450, 461 (Bankr. D. Colo. 2005) (noting that cure requirements were inapplicable to the matter before it because "no reorganization plan of these Debtors could cure these loans and reinstate the original maturity, as the maturity date of these loans predated the filing of these Debtors' bankruptcies."). The district court's decision in *In re 139-141 Owners Corp.,* 313 B.R. 364 (S.D.N.Y. 2004) also offers no support for NYSCRF's section 1123(d) argument. Like NYSCRF's original objection papers, the *139-141 Owners* decision does not even cite section 1123(d). It holds only that section 1124(2) does not nullify the effect of a prepetition default accelerating the loan and triggering default-rate interest – a factual situation distinct from the Homart Note.

7.  Here, no default existed under the Homart Note prepetition. The sole "default" claimed by NYSCRF is the Reorganized Debtors' chapter 11 filing. Coupling the legislative history of section 1123(d) with the analysis employed by the court in *In re Schatz,* requires the logical conclusion that default interest is not required here under section 1123(d), where the Reorganized Debtors were not in default under the Homart Note prepetition, such note was not accelerated prepetition, and the Reorganized Debtors have cured and reinstated the Homart Note under the TopCo Plan. Section 1123(d) does not require this Court to award

NYSCRF interest at the Default Rate. To the contrary, the legislative intent of the provision demonstrates that it does not, as NYSCRF now argues, constitute a bankruptcy toll that effectively would require *every* debtor to pay postpetition default rate interest to *every* oversecured lender reinstated under a plan due to the triggering of *ipso facto* clauses.

8.     Though it references other sections of the Bankruptcy Code, section 1123(d) does not address the interplay between its provisions and those of section 1124(2)(A).[3] And, although the payment of default interest may be required under section 1124(2) in some circumstances, where the default at issue is one that need not be cured under the Bankruptcy Code, it stands to reason that the consequences stemming from that default are not enforceable. Nothing in section 1123(d) of the Bankruptcy Code compels a contrary result.

---

[3] Ultimately, section 1124(2)(A) states that, to unimpair a claim, a debtor need not cure "a default of a kind specified in section 365(b)(2) [of the Bankruptcy Code] or of a kind that section 365(b)(2) does not require to be cured." To the extent that, under section 1124(2), the *ipso facto* "default" is not required to be cured, it seems to defy reason that the Reorganized Debtors nonetheless should be required to pay interest at the Default Rate on such types of defaults. The *In re Moody* court touched on this issue, but its analysis there is largely dicta. Though the court examined whether the exception contained in section 365(b)(2))(D) (concerning the satisfaction of penalty rates arising from a debtor's failure to perform non-monetary obligations under a contract or lease) could apply to a mortgage note, the default before it was not one relating to non-monetary obligations, but rather non-payment of prepetition obligations.

WHEREFORE General Growth respectfully requests that the Court overrule the Objection and the Reply and grant the relief requested in the Response, and such other and further relief as it deems just and proper.

Dated: February 23, 2011
      New York, New York

/s/ Gary T. Holtzer
Marcia L. Goldstein
Gary T. Holtzer
Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

and

Stephen A. Youngman *(admitted pro hac vice)*
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7777

and

Sylvia A. Mayer *(admitted pro hac vice)*
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Reorganized Debtors

and

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

Co-Attorneys for Certain Subsidiary
Reorganized Debtors